**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| POWDER SPRINGS LOGISTICS, LLC, AND MAGELLAN MIDSTREAM PARTNERS, L.P., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sunoco Partners Marketing & Terminals L.P. ("Plaintiff" or "Sunoco") files this Complaint for Patent Infringement against Defendants Powder Springs Logistics, LLC and Magellan Midstream Partners, L.P. (collectively, "Defendants"), as set forth below:

**PARTIES**

1.      Plaintiff Sunoco Partners Marketing & Terminals L.P. is a limited partnership organized under the laws of the State of Texas, with its principal place of business in the United States located at 3807 W. Chester Pike, Newton Square, Pennsylvania 19073. Plaintiff Sunoco Partners Marketing & Terminals L.P. is the owner, by assignment, of all right, title and interest to U.S. Patent Nos. 9,494,948 and 9,606,548.

2.      On information and belief, Powder Springs Logistics, LLC ("Powder Springs") is a joint venture that was formed for the purpose of constructing a facility near Atlanta, Georgia that now has the capacity to blend butane into gasoline product flowing through an interstate pipeline. Powder Springs is a limited liability company organized under the laws of the State of Delaware.

3.      On information and belief, Magellan Midstream Partners, L.P. ("Magellan") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located in Tulsa, Oklahoma.

## NATURE OF THIS ACTION

4.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## JURISDICTION AND VENUE

5.      This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Powder Springs because Powder Springs resides in this District.  Specifically, Powder Springs is a limited liability company organized under the laws of the State of Delaware.

7.      This Court has personal jurisdiction over Magellan because Magellan resides in this District.  Specifically, Magellan is a limited partnership organized under the laws of the State of Delaware.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because Powder Springs and Magellan reside in this District.  Specifically, Powder Springs and Magellan are both organized under the laws of the State of Delaware.

9.      Joinder of Defendants in this case is proper under 35 U.S.C. § 299 because (1) certain infringing acts of Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, and (2) there exist questions of fact common to all Defendants that will arise in the action.

## FACTS COMMON TO EACH CLAIM FOR RELIEF

10. An interstate pipeline system that traverses across thirteen states is owned, operated, maintained by Colonial Pipeline Company ("Colonial"). This Colonial pipeline system originates in Houston, Texas and terminates in Linden, New Jersey.

11. Colonial does not own the products it transports in its pipeline. Instead, Colonial is a common carrier that is simply the "bailee" of the products it transports on behalf of Sunoco and other third-party shippers. Shippers have used the Colonial pipeline for decades to inject petroleum products into the Colonial pipeline in Houston, Texas, and at certain other points of entry along the pipeline, and to remove the product from the pipeline at various destination points along the pipeline (sometimes called "terminals" or "tank farms").

12. When the customer receives the product at a terminal or tank farm, the gasoline is typically transferred to large storage tanks for later distribution. The terminal can distribute the gasoline from the storage tank to tanker trucks for final delivery at retail gas stations, or place the gasoline back into the pipeline for further distribution at another terminal.

13. Some terminals along the Colonial pipeline are owned and operated by Colonial itself. For example, Colonial owns and operates a terminal along the Colonial Pipeline called the Atlanta Junction facility in Austell, Georgia. However, other terminals along the Colonial pipeline are owned and operated by various third-party shippers, including Sunoco and Sunoco's licensees.

14. When Sunoco and Sunoco's licensees receive their gasoline at terminals, they often blend the gasoline with butane—using Sunoco's patented technology—before the gasoline is distributed to other locations.

15. Blending butane with gasoline raises the gasoline's volatility, or its ability to combust, and proper gasoline volatility is important to the proper performance of car engines. For example, because gasoline is more difficult to combust in colder temperatures, it is generally

desirable to increase the volatility of gasoline in colder months to keep cars performing at a consistent level year-around.  Adding butane also reduces the cost for the gasoline provider because butane is generally less expensive than gasoline bought at the wholesale level.  Blending butane with gasoline is therefore desirable to a gasoline supplier because doing so increases the overall volume of the gasoline, which reduces the cost of gasoline on a volumetric basis.

16.     The Reid vapor pressure ("RVP") is a common measure of and generic term for gasoline volatility.  The U.S. Environmental Protection Agency ("EPA"), as well as states across the nation, regulate the maximum allowable RVP of gasoline that will be sold at retail gas stations.  These regulations vary by regions, state and locality throughout the year.  For example, in some areas, conventional gasoline sold between May 1 and September 15 may not exceed an RVP of 7.8 to 9.0 pounds-per-square-inch ("psi"), but in other months, it may reach as high as 15.0 psi in some states.

17.     Gasoline components including butane are first blended at refineries by third-party shippers, before the gasoline is injected into the pipeline and transported to terminals.  However, because gasoline pipelines serve multiple regions that have variable RVP requirements, the refinery is limited to modifying the RVP of the gasoline to an amount below the lowest maximum RVP allowed for the regions served by the pipeline, and has to account for other limiting factors such as octane numbers.  As such, the gasoline in a pipeline being transported from a refinery to a specific terminal will have a lower RVP than the maximum allowable RVP for the particular state or locality intended to be served by that terminal.

18.     Using Sunoco's patented butane blending technology, Sunoco and its licensees blend butane with the gasoline received at their terminals to raise the gasoline's RVP up to the maximum RVP allowable by law for the specific location to be served.  This allows Sunoco and

its licensees to maximize the amount of butane that they blend with gasoline, and thereby minimize their cost basis for the gasoline sold while also increasing the total volume.

19.     On information and belief, Powder Springs is a joint venture between Colonial and Magellan that was formed to construct and develop a butane blending system at the Atlanta Junction facility.  **Exhibit 1** at 6, ¶ 26; **Exhibit 2** at 4.  Through Powder Springs, Magellan and Colonial have "invested millions of dollars" in the construction of this butane blending system at the Atlanta Junction facility.  **Exhibit 1** at 6, ¶ 26 ("Colonial admits that the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia.").

20.     Magellan acted as the construction manager for the blending system, and also acts (or will act) as the operator of the system.  **Exhibit 2** at 4 ("We own a 50% interest in Powder Springs Logistics, LLC ('Powder Springs'), which was formed to construct and develop a butane blending system, including 120,000 barrels of butane storage, near Atlanta, Georgia. We served as construction manager and serve as operator of the Powder Springs facility, which we expect to begin operating in first quarter 2017").

21.     The newly-installed blending system now enables Defendants to inject butane into the gasoline product, as the gasoline product passes through the Atlanta Junction facility and continues on to the various third-party customers (such as Sunoco and its licensees) at terminals downstream of the Atlanta Junction facility.  **Exhibit 1** at 18, ¶ 22 ("Beginning in December 2014, Colonial, through a subsidiary entity, invested in the Joint Venture, which now has the capacity to inject butane into product flowing through Colonial's pipeline in Atlanta, Georgia.").

22.     For example, on information and belief, the newly-installed blending system will inject butane into various gasoline pipelines passing through the Atlanta Junction facility, such as

the "spur pipelines" destined for Knoxville, Bainbridge, Nashville, and Doraville (among others). Upon information and belief, the blending system will also inject butane into the "Line 1 pipeline" as it passes through the Atlanta Junction facility and continues northbound.

23.     Upon information and belief, through the newly-created entity Powder Springs, Magellan and Colonial intend to sell the additional volume of gasoline that will be created by its unauthorized use of Sunoco's patented technology to customers of Powder Springs, with the profits accruing solely to the entity Powder Springs.  **Exhibit 1** at 2, ¶ 3 ("It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections."); at 5-6, ¶ 20 ("Colonial admits that it allows the Joint Venture to inject butane into the pipeline in Atlanta, Georgia which results in the creation of gasoline the Joint Venture sells to customers, with any profit or loss resulting from such sales accruing to the Joint Venture."); **Exhibit 3**.

24.     On information and belief, this butane blending system has already been constructed and is already operational for at least testing purposes.  **Exhibit 1** at 18, ¶ 22 ("Beginning in December 2014, Colonial, through a subsidiary entity, invested in the Joint Venture, which now has the capacity to inject butane into product flowing through Colonial's pipeline in Atlanta, Georgia.").

25.     As explained below, Defendants' newly-installed butane blending system and butane blending activities infringe one or more claims of Sunoco's butane blending patents. Defendants' infringement will cause irreparable harm to Sunoco and its licensees, which have been blending butane into gasoline at terminals downstream of the Atlanta Junction facility, because Defendants' unauthorized blending will raise the gasoline RVP to or near the maximum allowable RVP.  As a result, Defendants' blending will effectively prevent Sunoco and its licensees from

blending butane, at least beyond minimal amounts, drastically diminishing the value of Sunoco's patented butane blending systems downstream and harming Sunoco's ability to further develop its butane blending market along the Colonial pipeline and elsewhere. The infringement will result not just in financial harm at the terminals, but in a loss of market share and market opportunities, as well as a loss of business relationships and harm to Sunoco's reputation with respect to its patented technology, that cannot be adequately accounted for with money damages.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 9,494,948**

26. Sunoco re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

27. On November 15, 2016, U.S. Patent No. 9,494,948 ("the '948 patent") was duly and legally issued by the U.S. Patent and Trademark Office ("PTO") to Mattingly et al. for an invention relating to "Versatile Systems for Continuous In-Line Blending of Butane and Petroleum." A true and correct copy of the '948 patent is attached hereto as **Exhibit 4**. The '948 patent is presumed valid pursuant to 35 U.S.C. § 282.

28. Mattingly et al. assigned all right, title and interest in the '948 patent to Plaintiff Sunoco Partners Marketing & Terminals L.P.

29. In violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, Defendants are infringing one or more claims of the '948 patent by making, using, selling and/or offering to sell, without authority, the claimed systems for the blending of butane and gasoline, and/or by performing the claimed methods for the blending of butane and gasoline.

30. **Claim 7, Preamble**. The preamble of claim 7 recites "[a] system for blending butane with gasoline in a pipe to form a blend of butane and gasoline, wherein the gasoline and the blend of gasoline and butane each have a vapor pressure."

31.     Defendants have made, used, and/or are using systems for blending butane with gasoline in a pipe to form a blend of butane and gasoline, wherein the gasoline and the blend of gasoline and butane each have a vapor pressure, at the Atlanta Junction facility.

32.     For example, in Colonial's Answer and Affirmative Defenses in the litigation *George E. Warren Corporation v. Colonial Pipeline Company*, No. 2:17-cv-01205-KM-JBC (D.N.J. July 31, 2017), ECF No. 24 ("*GEW* litigation"), Colonial admitted that "Powder Springs Logistics LLC is a Joint Venture that has constructed a facility in Georgia to enable in-line blending of butane into gasoline flowing through Colonial's pipeline.  It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections.  Colonial admits that affiliates of Colonial and of Magellan Midstream Partners, LLP participate in the Joint Venture." **Exhibit 1** at 2, ¶ 3.

33.     In addition, in Magellan's Special Land Use Permit application ("SLUP application"), Magellan stated that "the facility will provide butane blending capabilities that effectively increase the supply of gasoline distributed from Colonial's pipeline that is distributed along the east coast. The new facility will be used to blend a small percentage of butane into gasoline which will meet all federal, state and industry specifications and can be used in all vehicles with spark ignition engines." **Exhibit 5** at 4.

34.     Accordingly, Defendants' butane blending systems satisfy the preamble of claim 7.

35.     **Claim 7, Limitation (a)**.   Claim 7 further recites "a butane reservoir in fluid connection with said gasoline."

36.     Defendants' butane blending systems include a butane reservoir in fluid connection with the gasoline.

37.     For example, in its SLUP application, Magellan stated that "[t]he Injection System will be supplied from the Storage System which consists of two (2) 60,000 bbl (working volume) spheres and eight (8) vertical can pumps."  **Exhibit 5** at 12.

38.     In addition, the Risk Management Plan ("RMP") for the Powder Springs facility states that "Powder Springs Logistics is [a] butane storage and blending terminal which stores butane and blends into refined products pipelines. . . . The equipment which handles butane includes two pressure vessels, ten injection pumps and associated piping. The butane pressure vessel and associated piping may contain as much as 27,821,556 lbs of butane."  **Exhibit 6**.

39.     Further, U.S. Patent No. 9,080,111 to Magellan ("the Magellan patent") provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: one or more, preferably a plurality of, butane bullet tanks 6 or other pressurized butane storage vessels; one or more butane injection pump(s) 8 which deliver butane from the tank(s) 6 to the gasoline line 4 via a butane injection line 10 . . . ."  **Exhibit 7** at 8:25-45.

40.     On information and belief, the butane reservoirs are located in the following image, and identified as butane tanks:

| Butane Tanks |
|---|
| **Before Construction (8/24/2015)** <br><br> **After Construction (3/31/2017)** <br>  |

**Exhibit 8**.

     41.    Accordingly, Defendants' butane blending systems satisfy limitation (a) of claim 7.

42.     **Claim 7, Limitation (b)**.  Claim 7 further recites "an injector valve for discharging butane into said gasoline."

43.     Defendants' butane blending systems include an injector valve for discharging butane into the gasoline.

44.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "Powder Springs Logistics LLC is a Joint Venture that has constructed a facility in Georgia to enable in-line blending of butane into gasoline flowing through Colonial's pipeline.  It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections.  Colonial admits that affiliates of Colonial and of Magellan Midstream Partners, LLP participate in the Joint Venture." **Exhibit 1** at 2, ¶ 3.

45.     In its SLUP application, Magellan stated that "[e]ight (8) vertical can pumps . . . will be installed to transfer butane from the spheres through the Injection System to the Injection Point." **Exhibit 5** at 12.

46.     The RMP from the Powder Springs facility states that "Powder Springs Logistics is [a] butane storage and blending terminal which stores butane and blends into refined products pipelines. . . . The equipment which handles butane includes two pressure vessels, ten injection pumps and associated piping.  The butane pressure vessel and associated piping may contain as much as 27,821,556 lbs of butane." **Exhibit 6** at 2.

47.     Further, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . one or more butane injection pump(s) 8 which deliver butane from the tank(s) 6 to the gasoline line 4 via

a butane injection line 10; . . . a flow control valve 16 or other controller (e.g., a variable frequency drive) provided in the butane injection line 10 . . . ." **Exhibit 7** at 8:25-45.

48.     On information and belief, the injector valves (such as, a control valve or a valve in combination with a pump) for discharging butane into the gasoline product, identified as flow control devices in the image below, are installed next to the butane tanks and butane transfer meters:

| Butane Injector Valves / Devices |
|---|
| **After Construction (3/31/2017)**  |

**Exhibit 8**.

49.     On information and belief, butane injection lines are installed from the butane injection devices to the gasoline pipelines and identified in the images below for both the spur lines and Line 1:

| Spur Injection Lines | |
|---|---|
| **Before Construction (5/7/2016)** |  |
| **After Construction (3/31/2017)** |  |

| Line 1 Pipeline Injection Line |
| --- |



**Before Construction (5/7/2016)** / **After Construction (3/31/2017)**

**Exhibit 8**.

50. Accordingly, Defendants' butane blending systems satisfy limitation (b) of claim 7.

51. **Claim 7, Limitation (c)**.  Claim 7 further recites "a vapor pressure analyzer connected to said pipe, said analyzer configured to determine the vapor pressure of the blend of gasoline and butane, and to transmit said vapor pressure to a processor."

52. On information and belief, Defendants' butane blending systems include a vapor pressure analyzer connected to the pipe and configured to determine the vapor pressure of the blend of gasoline and butane.

53. On information and belief, Defendants' butane blending systems include a vapor pressure analyzer connected to the pipe and configured to transmit the vapor pressure to a processor.

54. For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial stated that "[t]he injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification." **Exhibit 1** at 18, ¶ 25.

55. One of the specifications for which the system is "calibrated" is the vapor pressure of the gasoline.  For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial explained that the various grades of gasoline in its pipeline must meet certain specifications, and that "[t]hese specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ('RVP') and vapor-to-liquid ratio.  Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product, while both shipper's products may still meet the same product specification, *e.g.*, A1 gasoline." **Exhibit 1** at 12-13, ¶ 6.

56. Further, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia." **Exhibit 1** at 6, ¶ 26.

57. In addition, Magellan stated in its SLUP application that "[t]he site will consist of three (3) buildings (control building, testing facility, and office), six (6) offloading spots for offloading butane into the storage system, two (2) 60,000 bbl (working capacity) spheres each 90 feet in diameter, and eight (8) vertical can pumps." **Exhibit 5** at 4.

58. Further, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . an online sampler and RVP analyzer 14 which automatically samples and determines the RVP of the gasoline/butane blend in the gasoline line 4 at a point downstream of the butane injection point 5 and downstream of the mixer 12; . . . and a programmable logic controller (PLC) or other automated controller 18 which receives the RVP data from the downstream analyzer 14 . . . ." **Exhibit 7** at 8:25-45.

59. On information and belief, the vapor pressure analyzers connected to the pipe are located in the following building identified as analyzer building for the spur lines and Line 1 images below:

| Spur Injection Lines |
|---|
| **Before Construction (5/7/2016)**  |
| **After Construction (3/31/2017)**  |

| Line 1 Pipeline Injection Line | |
|---|---|
| **Before Construction (5/7/2016)** |  |
| **After Construction (3/31/2017)** |  |

**Exhibit 8**.

60.    Accordingly, on information and belief, Defendants' butane blending systems satisfy limitation (c) of claim 7.

61.    **Claim 7, Limitation (d)**.  Claim 7 further recites "a programmable logic controller governing the flow of butane through said injector valve."

62.     On information and belief, Defendants' butane blending systems include a programmable logic controller ("PLC") governing the flow of butane through the injector valve.

63.     For example, Magellan stated in its SLUP application that "[e]ight (8) vertical can pumps . . . will be installed to transfer butane from the spheres through the Injection System to the Injection Point." **Exhibit 5** at 12.

64.     The RMP for the Powder Springs facility states that "Powder Springs Logistics is [a] butane storage and blending terminal which stores butane and blends into refined products pipelines. . . . The equipment which handles butane includes two pressure vessels, ten injection pumps and associated piping. The butane pressure vessel and associated piping may contain as much as 27,821,556 lbs of butane." **Exhibit 6** at 2.

65.     Further, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: one or more, preferably a plurality of, butane bullet tanks 6 or other pressurized butane storage vessels; . . . a programmable logic controller (PLC) or other automated controller 18 which receives the RVP data from the downstream analyzer 14, determines an appropriate butane blend ratio based upon the RVP data, and implements the calculated blending ratio by automatically operating the butane control valve 16 and/or the butane pump 8." **Exhibit 7** at 8:25-45.

66.     Accordingly, on information and belief, Defendants' butane blending systems satisfy limitation (d) of claim 7.

67.     **Claim 7, Limitation (e)**.  Claim 7 further recites "a processor programmed to receive the vapor pressure from the analyzer, calculate an amount of butane to inject into the gasoline based on a maximum preprogrammed volatility limit, and provide a control signal to said programmable logic controller according to said maximum preprogrammed volatility limit;

wherein the programmable logic controller is configured to adjust the injector valve to govern the flow of butane through said injector valve into said gasoline based on the signal from the processor."

68.     On information and belief, Defendants' butane blending systems include a processor programmed to receive the vapor pressure from the analyzer, calculate an amount of butane to inject into the gasoline based on a maximum preprogrammed volatility limit, and provide a control signal to the PLC according to the maximum preprogrammed volatility limit.

69.     On information and belief, Defendants' butane blending systems include a PLC configured to adjust the injector valve to govern the flow of butane through the injector valve into the gasoline based on the signal from the processor.

70.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial stated that "[t]he injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification." **Exhibit 1** at 18, ¶ 25.

71.     One of the specifications for which the system is "calibrated" is the vapor pressure of the gasoline.  For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial explained that the various grades of gasoline in its pipeline must meet certain specifications, and that "[t]hese specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ('RVP') and vapor-to-liquid ratio.  Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product, while both shipper's products may still meet the same product specification, *e.g.*, A1 gasoline." **Exhibit 1** at 12-13, ¶ 6.

72. Further, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia." **Exhibit 1** at 6, ¶ 26.

73. Magellan stated in its SLUP application that "the facility will provide butane blending capabilities that effectively increase the supply of gasoline distributed from Colonial's pipeline that is distributed along the east coast. The new facility will be used to blend a small percentage of butane into gasoline which will meet all federal, state and industry specifications and can be used in all vehicles with spark ignition engines." **Exhibit 5** at 4.

74. In addition, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . a programmable logic controller (PLC) or other automated controller 18 which receives the RVP data from the downstream analyzer 14, determines an appropriate butane blend ratio based upon the RVP data, and implements the calculated blending ratio by automatically operating the butane control valve 16 and/or the butane pump 8." **Exhibit 7** at 8:25-45.

75. Accordingly, on information and belief, Defendants' butane blending systems satisfy limitation (e) of claim 7.

76. On information and belief, Defendants will continue to infringe one or more claims of the '948 patent unless enjoined by this Court.

77. Magellan and Powder Springs, through joint venturer Magellan, have had knowledge, or should have had knowledge, of the earlier-issued U.S. Patent No. 6,679,302 ("the '302 patent") and the '302 patent family, and commercial embodiments thereof, since at least 2013. For example, the following patents in the '302 patent family are cited on the face of the Magellan

patent: the '302 patent; U.S. Patent No. 7,032,629 ("the '629 patent"); U.S. Patent No. 7,631,671 ("the '671 patent"); and U.S. Patent Publication No. 2010/0084047 A1 (now U.S. Patent No. 8,176,951 ("the '951 patent")). **Exhibit 7**, References Cited.

78. Magellan and Powder Springs, through joint venturer Magellan, have had further knowledge of the earlier-issued '671 patent since at least 2014 when the Examiner rejected various claims of the Magellan patent as anticipated and/or rendered obvious by the '671 patent (U.S. Patent Publication No. 2006/0278304 A1).

79. Magellan and Powder Springs, through joint venturer Magellan, have had further knowledge of the earlier-issued '302 patent and the '302 patent family, and commercial embodiments thereof, since at least May 2015. Such knowledge was obtained through commercial dealings between Sunoco and Magellan.

80. Powder Springs, through joint venturer Colonial, has had knowledge, or should have had knowledge, of Sunoco's butane blending patents and Sunoco's patented systems and methods, and commercial embodiments thereof, since at least its formation in 2014. Such knowledge was obtained during or in relation to various presentations given by Sunoco to Colonial in 2013 regarding the licensing of Sunoco's patented blending systems.

81. The '948 patent is part of the same patent family as the '302, '629, '671, and '951 patents. The '948 patent shares a nearly identical specification with the '671 patent.[1] Like the '302, '629, and '671 patents, the '948 patent claims its earliest priority date to Provisional Application No. 60/267,844, filed February 9, 2001.

---

[1] The '948 patent contains one additional figure from the '302 patent, which was incorporated by reference in its entirety, and a disclosure related to this figure. *See* **Exhibit 4**, '948 Patent, Fig. 6, 16:21-17:7.

82.     On information and belief, Defendants have been on notice of the claims of the '948 patent since they first published as U.S. Patent Publication No. 2016/0068775 on March 10, 2016, and have had knowledge of the '948 patent since its date of issuance on November 15, 2016, or at least as of the date of this Complaint.

83.     Despite this knowledge, Defendants continued to make, use, sell and/or offer to sell gasoline blended with butane, and/or systems or methods for the blending of butane and gasoline. As a result, Defendants' infringement of the '948 patent has been willful and deliberate.

84.     As a result of Defendants' infringement, Sunoco has suffered and will continue to suffer damages in an amount to be proven at trial and irreparable harm.

85.     On information and belief, the conduct of Defendants presents an exceptional case such that Sunoco is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 9,606,548

86.     Sunoco re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

87.     On March 28, 2017, U.S. Patent No. 9,606,548 ("the '548 patent") was duly and legally issued by the U.S. Patent and Trademark Office ("PTO") to Mattingly et al. for an invention relating to "Versatile Systems for Continuous In-Line Blending of Butane and Petroleum."  A true and correct copy of the '548 patent is attached hereto as **Exhibit 9**.  The '548 patent is presumed valid pursuant to 35 U.S.C. § 282.

88.     Mattingly et al. assigned all right, title and interest in the '548 patent to Plaintiff Sunoco Partners Marketing & Terminals L.P.

89.     In violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, Defendants are infringing one or more claims of the '548 patent by making, using, selling and/or offering to sell, without authority, the claimed systems for the blending of butane and gasoline, and/or by performing the claimed methods for the blending of butane and gasoline.

90.     **Claim 1, Preamble**.  The preamble of claim 1 recites "[a] system for blending butane with a gasoline stream having a gasoline flow rate."

91.     Defendants have been and/or still are utilizing systems for blending butane with a gasoline stream having a gasoline flow rate at Colonial's Atlanta Junction facility.

92.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "Powder Springs Logistics LLC is a Joint Venture that has constructed a facility in Georgia to enable in-line blending of butane into gasoline flowing through Colonial's pipeline.  It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections.  Colonial admits that affiliates of Colonial and of Magellan Midstream Partners, LLP participate in the Joint Venture."  **Exhibit 1** at 2, ¶ 3.

93.     In addition, Magellan stated in its SLUP application that "the facility will provide butane blending capabilities that effectively increase the supply of gasoline distributed from Colonial's pipeline that is distributed along the east coast.  The new facility will be used to blend a small percentage of butane into gasoline which will meet all federal, state and industry specifications and can be used in all vehicles with spark ignition engines."  **Exhibit 5** at 4.

94.     Accordingly, Defendants' butane blending systems satisfy the preamble of claim 1.

95.     **Claim 1, Limitation (a)**.  Claim 1 further recites "an injection device injecting the butane into the gasoline stream at a butane flow rate."

96. Defendants' butane blending systems include an injection device injecting the butane into the gasoline stream at a butane flow rate.

97. For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "Powder Springs Logistics LLC is a Joint Venture that has constructed a facility in Georgia to enable in-line blending of butane into gasoline flowing through Colonial's pipeline. It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections. Colonial admits that affiliates of Colonial and of Magellan Midstream Partners, LLP participate in the Joint Venture." **Exhibit 1** at 2, ¶ 3.

98. In its SLUP application, Magellan stated that "[e]ight (8) vertical can pumps . . . will be installed to transfer butane from the spheres through the Injection System to the Injection Point." **Exhibit 5** at 12.

99. The RMP from the Powder Springs facility states that "Powder Springs Logistics is [a] butane storage and blending terminal which stores butane and blends into refined products pipelines. . . . The equipment which handles butane includes two pressure vessels, ten injection pumps and associated piping. The butane pressure vessel and associated piping may contain as much as 27,821,556 lbs of butane." **Exhibit 6**.

100. Further, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . one or more butane injection pump(s) 8 which deliver butane from the tank(s) 6 to the gasoline line 4 via a butane injection line 10; . . . a flow control valve 16 or other controller (e.g., a variable frequency drive) provided in the butane injection line 10 . . . ." **Exhibit 7** at 8:25-45.

101.     On information and belief, the injection devices (such as, a control valve or a valve in combination with a pump) for discharging butane into the gasoline product, identified as flow control devices in the image below, are installed next to the butane storage tanks and butane transfer meters:

| Butane Injector Valves / Devices |
| --- |

| After Construction (3/31/2017) |  |
| --- | --- |

**Exhibit 8**.

102.     On information and belief, butane injection lines are installed from the butane injection devices to the gasoline pipelines and identified in the images below for both the spur lines and Line 1:

| Spur Injection Lines |
|:---:|



| | |
|:---|:---|
| **Before Construction (5/7/2016)** | |
| **After Construction (3/31/2017)** | |



| Line 1 Pipeline Injection Line | |
| --- | --- |
| **Before Construction (5/7/2016)** | |
| **After Construction (3/31/2017)** | |

**Exhibit 8**.

103. Accordingly, Defendants' blending systems satisfy limitation (a) of claim 1.

104. **Claim 1, Limitation (b)**. Claim 1 further recites "a volatility measurement device in communication with the gasoline stream, the volatility measurement device configured to output data representative of a volatility measurement."

105.     On information and belief, Defendants' butane blending systems include a volatility measurement device in communication with the gasoline stream and configured to output data representative of a volatility measurement.

106.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial stated that "[t]he injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification." **Exhibit 1** at 18, ¶ 25.

107.     One of the specifications for which the system is "calibrated" is the vapor pressure of the gasoline. For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial explained that the various grades of gasoline in its pipeline must meet certain specifications, and that "[t]hese specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ('RVP') and vapor-to-liquid ratio. Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product, while both shipper's products may still meet the same product specification, *e.g.*, A1 gasoline." **Exhibit 1** at 12-13, ¶ 6.

108.     Further, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia." **Exhibit 1** at 6, ¶ 26.

109.     In addition, Magellan stated in its SLUP application that "[t]he site will consist of three (3) buildings (control building, testing facility, and office), six (6) offloading spots for

offloading butane into the storage system, two (2) 60,000 bbl (working capacity) spheres each 90 feet in diameter, and eight (8) vertical can pumps." **Exhibit 5** at 4.

110.　　Further, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . an online sampler and RVP analyzer 14 which automatically samples and determines the RVP of the gasoline/butane blend in the gasoline line 4 at a point downstream of the butane injection point 5 and downstream of the mixer 12; . . . and a programmable logic controller (PLC) or other automated controller 18 which receives the RVP data from the downstream analyzer 14 . . . ." **Exhibit 7** at 8:25-45.

111.　　On information and belief, the volatility measurement device in communication with the gasoline stream is located in the analyzer building identified below for the spur lines and Line 1:

| Spur Injection Lines |
|---|

| **Before Construction (5/7/2016)** |  |
|---|---|
| **After Construction (3/31/2017)** | |

| Line 1 Pipeline Injection Line |
|---|
| **Before Construction (5/7/2016)**  |
| **After Construction (3/31/2017)** |

**Exhibit 8**.

112.    Accordingly, on information and belief, Defendants' butane blending systems satisfy limitation (b) of claim 1.

113.    **Claim 1, Limitation (c)**.  Claim 1 further recites "a processor in connection with the injection device and the volatility measurement device, the processor configured to: receive

the volatility measurement; receive a target volatility value; determine an adjustment to the butane flow rate based on the volatility measurement and the target volatility value; and output a signal representative of the adjustment to the injection device."

114.     On information and belief, Defendants' butane blending systems include a processor in connection with the injection device and the volatility measurement device.

115.     On information and belief, Defendants' butane blending systems include a processor configured to: receive the volatility measurement; receive a target volatility value; determine an adjustment to the butane flow rate based on the volatility measurement and the target volatility value; and output a signal representative of the adjustment to the injection device.

116.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial stated that "[t]he injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification." **Exhibit 1** at 18, ¶ 25.

117.     One of the specifications for which the system is "calibrated" is the vapor pressure of the gasoline.  For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial explained that the various grades of gasoline in its pipeline must meet certain specifications, and that "[t]hese specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ('RVP') and vapor-to-liquid ratio.  Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product, while both shipper's products may still meet the same product specification, *e.g.*, A1 gasoline." **Exhibit 1** at 12-13, ¶ 6.

118.    Further, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial admitted that "the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia." **Exhibit 1** at 6, ¶ 26.

119.    Magellan stated in its SLUP application that "the facility will provide butane blending capabilities that effectively increase the supply of gasoline distributed from Colonial's pipeline that is distributed along the east coast. The new facility will be used to blend a small percentage of butane into gasoline which will meet all federal, state and industry specifications and can be used in all vehicles with spark ignition engines." **Exhibit 5** at 4.

120.    In addition, the Magellan patent provides that "[b]y way of example, in terms of blending butane with gasoline, the inventive blending system 2 preferably comprises: . . . a programmable logic controller (PLC) or other automated controller 18 which receives the RVP data from the downstream analyzer 14, determines an appropriate butane blend ratio based upon the RVP data, and implements the calculated blending ratio by automatically operating the butane control valve 16 and/or the butane pump 8." **Exhibit 7** at 8:25-45.

121.    Accordingly, on information and belief, Defendants' butane blending systems satisfy limitation (c) of claim 1.

122.    **Claim 3**.  Furthermore, claim 3 of the '548 patent recites:  "The system of claim 1, further comprising a plurality of gasoline streams each associated with a different type of gasoline, at least one gasoline stream being selectable for blending with the butane."

123.    On information and belief, Defendants' butane blending systems include a plurality of gasoline streams each associated with a different type of gasoline, at least one gasoline stream being selectable for blending with the butane.

124.     For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial stated that "[t]he injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification." **Exhibit 1** at 18, ¶ 25.

125.     One of the specifications for which the system is "calibrated" is the vapor pressure of various types of gasoline.  For example, in Colonial's Answer and Affirmative Defenses in the *GEW* litigation, Colonial explained that "[t]he different types and grades of petroleum products that Colonial ships must meet Colonial's published product specifications, which set forth the minimum and maximum requirements for each type and grade of product admissible into the pipeline, *e.g.*, regular gasoline, premium gasoline, diesel, jet fuel, etc.  These specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ('RVP') and vapor-to-liquid ratio. Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product, while both shipper's products may still meet the same product specification, *e.g.*, A1 gasoline." **Exhibit 1** at 12-13, ¶ 6.

126.     Further, Magellan stated in its SLUP application that "the facility will provide butane blending capabilities that effectively increase the supply of gasoline distributed from Colonial's pipeline that is distributed along the east coast. The new facility will be used to blend a small percentage of butane into gasoline which will meet all federal, state and industry specifications and can be used in all vehicles with spark ignition engines." **Exhibit 5** at 4.

127.     Accordingly, on information and belief, Defendants' butane blending systems also satisfy claim 3.

128.     On information and belief, Defendants will infringe one or more claims of the '548 patent unless enjoined by this Court.

129.     Magellan and Powder Springs, through joint venturer Magellan, have had knowledge, or should have had knowledge, of the earlier-issued '302 patent and the '302 patent family, and commercial embodiments thereof, since at least 2013.  For example, the following patents in the '302 patent family are cited on the face of the Magellan patent:  the '302 patent; the '629 patent; the '671 patent; and U.S. Patent Publication No. 2010/0084047 A1 (now the '951 patent).  **Exhibit 7**, References Cited.

130.     Magellan and Powder Springs, through joint venturer Magellan, have had further knowledge of the earlier-issued '671 patent since at least 2014 when the Examiner rejected various claims of the Magellan patent as anticipated and/or rendered obvious by the '671 patent (U.S. Patent Publication No. 2006/0278304 A1).

131.     Magellan and Powder Springs, through joint venturer Magellan, have had further knowledge of the earlier-issued '302 patent and the '302 patent family, and commercial embodiments thereof, since at least May 2015.  Such knowledge was obtained through commercial dealings between Sunoco and Magellan.

132.     Powder Springs, through joint venturer Colonial, has had knowledge, or should have had knowledge, of Sunoco's butane blending patents and Sunoco's patented systems and methods, and commercial embodiments thereof, since at least its formation in 2014.  Such knowledge was obtained during or in relation to various presentations given by Sunoco to Colonial in 2013 regarding the licensing of Sunoco's patented blending systems.

133. The '948 patent is part of the same patent family as the '302, '629, '671, and '951 patents. The '948 patent shares a nearly identical specification with the '671 patent.[2] Like the '302, '629, and '671 patents, the '948 patent claims its earliest priority date to Provisional Application No. 60/267,844, filed February 9, 2001.

134. On information and belief, Defendants have been on notice of the claims of the '548 patent since they first published as U.S. Patent Publication No. 2016/0075958 on March 17, 2016, and have had knowledge of the '548 patent since its date of issuance on March 28, 2017, or at least as of the date of this Complaint.

135. Despite this knowledge, Defendants continued to make, use, sell and/or offer to sell gasoline blended with butane and/or systems or methods for the blending of butane and gasoline. As a result, Defendants' infringement of the '548 patent has been willful and deliberate.

136. As a result of Defendants' infringement, Sunoco has suffered and will continue to suffer damages in an amount to be proven at trial and irreparable harm.

137. On information and belief, the conduct of Defendants presents an exceptional case such that Sunoco is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## PRAYER FOR RELIEF

138. WHEREFORE, Sunoco prays for judgment and seeks relief against Defendants Powder Springs and Magellan as follows:

(a) For a judgment that one or more claims of the '948 and '548 patents have been and continue to be infringed by Defendants;

---

[2] The '948 patent contains one additional figure from the '302 patent, which was incorporated by reference in its entirety, and a disclosure related to this figure. *See* **Exhibit 4,** '948 Patent, Fig. 6, 16:21-17:7.

(b)     For a judgment that Defendants' infringement of the '948 and '548 patents has been willful;

(c)     For a judgment and an award of all damages sustained by Sunoco as the result of Defendants' acts of infringement, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

(d)     For a permanent injunction enjoining Defendants from infringing one or more claims of the '948 and '548 patents;

(e)     For a judgment and an award of enhanced damages pursuant to 35 U.S.C. § 284;

(f)     For a judgment and an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(g)     For a judgment and an award of all interest and costs; and

(h)     For a judgment and an award of such other and further relief as the Court may deem just and proper.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38 and 39, Sunoco asserts its rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues that may be so tried.

Dated: October 4, 2017

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Attorneys for Plaintiff Sunoco Partners Marketing & Terminals, L.P.*

Of Counsel:

John Keville
Michelle Replogle
Richard McCarty
Michael Krill

Winston & Strawn LLP
1111 Louisiana St., 25th Floor
Houston, Texas 77002
(713) 651-2600 (phone)
(713) 651-2700 (fax)