**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| POWDER SPRINGS LOGISTICS, LLC, AND MAGELLAN MIDSTREAM PARTNERS, L.P., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

# EXHIBIT 1

**TO**
**SUNOCO PARTNERS MARKETING & TERMINALS L.P.'S**
**COMPLAINT FOR PATENT INFRINGEMENT**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ 07962-1997
Tel: (973) 538-4006
Fax: (973) 538-5146
Vito A. Gagliardi, Jr., Esq.
vagagliardi@pbnlaw.com

*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| George E. Warren Corporation, | CIVIL ACTION NO. 2:17-cv-01205-KM-JBC |
| *Plaintiff*, | |
| v. | **COLONIAL PIPELINE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES** |
| Colonial Pipeline Company, | |
| *Defendant*. | |

COMES NOW Defendant Colonial Pipeline Company ("Colonial") and pursuant to Federal Rule of Civil Procedure 12, responds to Plaintiff George E. Warren Corporation's ("GEW" or "Plaintiff") Complaint, as modified by the Court's Order Granting Colonial's Motion to Dismiss, as follows:

## ANSWER

## RESPONSES TO NUMBERED PARAGRAPHS OF THE COMPLAINT

1.    Colonial admits the allegations of Paragraph 1 of the Complaint.

2.      With respect to Paragraph 2 of the Complaint, Colonial admits only that it provides transportation services with respect to the products tendered for shipment on its pipeline, and that each shipper retains ownership of a non-specific portion of the gasoline within a fungible batch in the pipeline corresponding to the quantity of gasoline the shipper tendered for shipment on its the pipeline. However, because Colonial ships products of the same type and specification in fungible batches, meaning that the products of multiple shippers mix inside the pipeline, Colonial denies that any shipper owns any particular barrels of gasoline or any particular molecules of the gasoline in the pipeline.  The final sentence of Paragraph 2 contains a legal conclusion to which no response is required.  Any allegation in Paragraph 2 not expressly admitted herein is denied.

3.      With respect to Paragraph 3 of the Complaint, Colonial admits only that Powder Springs Logistics LLC is a Joint Venture that has constructed a facility in Georgia to enable in-line blending of butane into gasoline flowing through Colonial's pipeline. It is intended that customers of the Joint Venture will purchase and ship to designated destinations on the pipeline such quantities of gasoline as are created as a result of the Joint Venture's butane injections. Colonial admits that affiliates of Colonial and of Magellan Midstream Partners, LLP participate in the Joint Venture. Colonial denies the remaining allegations of Paragraph 3.

3739022

4.      Colonial denies the allegations of Paragraph 4 of the Complaint, and to the extent that Paragraph 4 purports to re-characterize the allegations of Paragraph 3, Colonial incorporates herein its response to Paragraph 3 above.

5.      With respect to Paragraph 5 of the Complaint, Colonial admits that Plaintiff purports to bring a declaratory judgment action against Colonial pursuant to the Carmack Amendment, and that it seeks permanent injunctive relief. Colonial admits that Plaintiff attempted to state a claim for conversion under state law, but that claim was dismissed pursuant to the Court's Order of July 17, 2017. [*See* Doc. No. 20.] However, Colonial denies that Plaintiff's claims have merit or that Plaintiff is entitled to any relief.

6.      With respect to Paragraph 6 of the Complaint, Colonial admits that Plaintiff is incorporated in the State of Massachusetts; that Plaintiff transports its product from the Gulf Coast to New York Harbor through Colonial's pipeline, and that Colonial delivers Plaintiff's product to the New York Harbor in Linden, New Jersey.  Colonial is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 6 and therefore denies those allegations.

7.      Colonial admits the allegations of Paragraph 7 of the Complaint.

8.      Paragraph 8 of the Complaint contains a legal conclusion to which no response is required.  To the extent a response is required, Colonial denies the allegations of Paragraph 8.

9. Colonial admits the allegations of Paragraph 9 of the Complaint.

10. With respect to Paragraph 10 of the Complaint, Colonial admits that this court has jurisdiction over this matter because Plaintiff has attempted to state a claim against Colonial under federal law

11. Colonial admits that venue is proper in this judicial district but denies the remaining allegations of Paragraph 11 of the Complaint.

12. Colonial admits the allegations of Paragraph 12 of the Complaint.

13. Colonial admits the allegations of Paragraph 13 of the Complaint.

14. The allegations of Paragraph 14 are denied as stated, except that Colonial admits that it ships gasoline of various published specifications in "fungible batches," meaning that products sharing a common specification are tendered by different shippers and are commingled within the pipeline in a defined "batch" for transport and delivery to the shippers at their specified destination points. Each published product specification includes a range of acceptable values for a number of physical and chemical characteristics of the particular grade of gasoline described in the given specification. Under the fungible batch delivery system, no shipper receives delivery of the identical product molecules it tenders at an origin point on the pipeline. Because like-kind product placed into the pipeline is commingled with other shippers' product, no shipper has the right to receive precisely the same molecule, or molecules with precisely the same chemical

characteristics as that which they placed into the pipeline. Shippers have only the right to receive at their designated destination point the volume of product meeting the same product specification that they provided to the pipeline.

15. Colonial admits the allegations in Paragraph 15 of the Complaint.

16. Colonial is without sufficient knowledge or information to form a belief as to the allegations of Paragraph 16 of the Complaint and therefore denies those allegations.

17. Colonial is without sufficient knowledge or information to form a belief as to the allegations of Paragraph 17 of the Complaint and therefore denies those allegations.

18. Based upon information and belief, Colonial admits the allegations of Paragraph 18 of the Complaint.

19. Colonial denies the allegations of Paragraph 19 of the Complaint as stated, but admits that in general, depending upon the particular physical and chemical properties of a specific quantity of gasoline, various petroleum blendstocks can potentially be blended into gasoline of a given specification to varying degrees.

20. Colonial denies the allegations in Paragraph 20 of the Complaint, except that Colonial admits that it allows the Joint Venture to inject butane into the pipeline in Atlanta, Georgia which results in the creation of gasoline the Joint

Venture sells to customers, with any profit or loss resulting from such sales accruing to the Joint Venture.

21.     Colonial denies the allegations of Paragraph 21 of the Complaint.

22.     Colonial denies the allegations of Paragraph 22 of the Complaint.

23.     Colonial denies the allegations of Paragraph 23 of the Complaint.

24.     Colonial denies the allegations of Paragraph 24 of the Complaint.

25.     With respect to Paragraph 25 of the Complaint, Colonial denies the characterization of the Tariff alleged in Paragraph 25 and states that the Tariff is the best evidence of its contents. In further response to Paragraph 25, Colonial states that the activities undertaken by the Joint Venture will in no way result in any violation by Colonial of the terms of its Tariff because shippers will continue to receive delivery of gasoline that meets the same published specification and in the same quantities as the gasoline the shippers tender for transport in the pipeline. Any allegations of Paragraph 25 not expressly admitted above are denied.

26.     In response to the allegations of Paragraph 26 of the Complaint, Colonial admits that the Joint Venture has invested millions of dollars in the construction of facilities to enable butane injections into the Colonial pipeline in Atlanta, Georgia.

27.     Colonial denies the allegations of Paragraph 27 of the Complaint.

## COUNT I
### (Declaratory Judgement/Damages – Carmack Amendment)

28.     Colonial hereby restates and realleges each and every allegation, defense, and response set forth above in Paragraphs 1 through 27 as though fully set forth herein.

29.     The allegations of Paragraph 29 of the Complaint are legal conclusions to which no response is required. Colonial further states that the statute itself is the best evidence of its contents and denies the allegations of Paragraph 29 to the extent that they mischaracterize the statute, its meaning, or its application.

30.     Colonial denies the allegations of Paragraph 30 of the Complaint.

31.     Colonial denies the allegations of Paragraph 31 of the Complaint.

32.     With respect to the allegations in Paragraph 32 of the Complaint, Colonial admits that Plaintiff purports to seek a declaratory judgment under the Carmack Amendment, but denies that Plaintiff is entitled to any relief whatsoever. To the extent not expressly admitted herein, any remaining allegations in Paragraph 32 are hereby denied.

33.     Colonial admits that an actual case or controversy exists between the parties, but otherwise denies the allegations of Paragraph 33 of the Complaint.

34.     Colonial denies the allegations of Paragraph 34 of the Complaint.

## COUNT II
### (Alternative Claim for Declaratory Judgment/Damages – Conversion)

35. Count II of the Complaint has been dismissed pursuant to the Court's Order dated July 17, 2017. [Doc. No. 20.] Accordingly, no response to the allegations of Paragraph 35 is necessary.

36. Count II of the Complaint has been dismissed pursuant to the Court's Order dated July 17, 2017. [Doc. No. 20.] Accordingly, no response to the allegations of Paragraph 36 is necessary.

37. Count II of the Complaint has been dismissed pursuant to the Court's Order dated July 17, 2017. [Doc. No. 20.] Accordingly, no response to the allegations of Paragraph 37 is necessary.

### DENIAL OF ALL ALLEGATIONS NOT OTHERWISE ADMITTED

Colonial denies each and every allegation of the Complaint not specifically admitted herein. Colonial denies that Plaintiff is entitled to any form of relief, including any of the relief included within its prayer for relief.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred by the Rules and Regulations Tariff Governing the Transportation of Petroleum Products filed by Colonial (the "Tariff") that governs the shipments of Plaintiff's products tendered for shipment on Colonial's pipeline. Specifically, under the Tariff, Plaintiff is only entitled to receive product

- 8 -

3739022

within bargained-for specifications. Plaintiff at all times shall receive the benefit of its bargain with Colonial because its product will continue to meet the applicable specifications before and after Powder Springs Logistics, LLC (the "Joint Venture") has commenced in-line blending.

## SECOND DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted under the Carmack Amendment.

## THIRD DEFENSE

Plaintiff's claims are barred because any alleged loss or damage that may be sustained to the product Plaintiff tenders for shipment on Colonial's pipeline system will be the result of the inherent nature of its product.

## FOURTH DEFENSE

Plaintiff's claims are barred because any alleged loss or damage that may be sustained to Plaintiff's product is the result of Plaintiff's knowing tender of that product into a fungible batch of products shipped by Colonial, which is a known risk accepted by Plaintiff under the Tariff.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, for failure to mitigate its alleged damages.

3739022

## SIXTH DEFENSE

Plaintiff's claims are barred in whole or in part by the affirmative defense of waiver.

## SEVENTH DEFENSE

Plaintiff's claims are barred or lessened by any amounts that Plaintiff recouped or underpaid.

## EIGHTH DEFENSE

Colonial has neither damaged nor converted GEW's product, nor has it authorized any other person or entity to do so.

## NINTH DEFENSE

Plaintiff's claims should be reduced, modified and/or barred by the doctrine of unclean hands.

## TENTH DEFENSE

Colonial's conduct was not the proximate cause of the alleged injuries or damages, if any.

## ELEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part by lack of standing because Plaintiff cannot assert claims as to any alleged loss or damage to products that Plaintiff does not itself tender  for shipment on Colonial's pipeline.

3739022

Colonial reserves the right to amend this Answer to include any additional defense which may become known or available during this litigation.

## COUNTERCLAIM

Colonial submits its Counterclaim for declaratory judgment against GEW as follows:

### Jurisdiction and Venue

1.     By commencing this civil action against Colonial in this Court, GEW has submitted to the jurisdiction and venue of this Court with regard to this Counterclaim.

2.     Federal question jurisdiction exists pursuant to 28 U.S.C. § 2201, because the parties have an actual controversy in which they are seeking a judicial declaration of their rights.  In addition, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### Factual Allegations

A.     Background on the Operation of the Pipeline and the Batch System

4.     Colonial is a common carrier that operates a pipeline through which it transports gasoline and other petroleum products on behalf of shippers from various points of origin on the pipeline for delivery to various destination points on

the pipeline. Colonial's pipeline system originates in Houston, Texas and terminates in the New York harbor at Linden, New Jersey. The pipeline has various intermediate stations between Houston and New York harbor at which shippers' products may be received into, or delivered from, the pipeline. As a common carrier, Colonial files tariffs with the Federal Energy Regulatory Commission that govern its shipments of products on behalf of shippers, including a Rules and Regulations Tariff Governing the Transportation of Petroleum Products (the "Tariff").

5.    Colonial provides transportation service for a number of distinct petroleum products including various grades of gasoline, diesel, and jet fuel.

6.    The different types and grades of petroleum products that Colonial ships must meet Colonial's published product specifications, which set forth the minimum and maximum requirements for each type and grade of product admissible into the pipeline, *e.g.*, regular gasoline, premium gasoline, diesel, jet fuel, etc.. These specifications include acceptable ranges for various chemical attributes of the product, such as octane rating and measures of volatility, including Reid Vapor Pressure ("RVP") and vapor-to-liquid ratio. Accordingly, one shipper's product within a given product specification may have, *e.g.*, a slighter higher or lower RVP compared with another shipper's product , while both shipper's products may still meet the same product specification , *e.g.*, A1

gasoline. For the products that it ships, Colonial publishes its specifications, which are incorporated into the Tariff and are available to shippers like GEW at all times.

7.     To move the various types and grades of petroleum products through the pipeline, Colonial operates what is known as a "batched system," meaning that products of like kind and specification are transported in batches that are segregated from other batches consisting of products of different type and specification.   Batches are pushed through the pipeline in succession, with principles of hydraulics keeping batches of different specifications of product from blending into each other, except at "interface" points where the successive batches meet.  An illustration of the batching of different specifications of product is as follows:



8.     Colonial moves product in both "fungible" and "segregated" batches. A segregated batch is a quantity of petroleum product belonging solely to a single

shipper.  A fungible batch is a quantity of like-kind product of the same specification, *e.g.*, A1 gasoline, belonging to multiple shippers.

9.    A shipper of product placed in a fungible batch does not receive back the exact molecules of product at the destination point that were placed into the pipeline at the point of origin.  Instead, the shipper receives back the same volume and grades of product, *e.g.*, X number of barrels of A1 gasoline, that it tendered to Colonial for shipment.  Within a fungible batch shipment, each shipper's product may vary in chemical composition within defined parameters set forth in the relevant product specification, but all of the product is required to meet the published specification for the grade of product of which the particular fungible batch is comprised.  Furthermore, within a fungible batch shipped in the pipeline, it is impossible to identify what molecules of product belong to a particular shipper at any point in time.

10.    The fungible batch concept works in the industry because the market price for a particular grade of product does not vary based on variances in the chemical properties of product, provided, the product continues to meet the specification.  Thus, the price of, *e.g.*, a batch of A1 gasoline trades at the same market price regardless of measurable variances in octane rating or RVP, as long as those values fall within the defined ranges of values set forth in the product specification for A1 gasoline.

- 14 -

B.     Blending Is a Common and Entirely Lawful Industry Practice

11.     In the petroleum industry, the practice of "blending within a specification" is common and is a way to maximize the monetary value of the product.  Blending within a specification is a practice whereby a less costly petroleum product, *e.g.*, butane, is combined with product of a certain specification, *e.g.*, premium gasoline, to increase the overall volume of the product while still keeping the resulting product "on specification."  Blending therefore increases the amount of available product at an average  unit cost that is lower than the unit cost of the unblended petroleum product.

12.     Blending within a specification is a commercially valuable process in the industry because a particular product type, *e.g.*, premium gasoline, trades at the same market price regardless of whether that product has been blended to the maximum extent of the product specification.  Stated differently, market price changes only when the product grade changes *e.g.*, ceases to be premium gasoline and becomes regular gasoline, as a result of blending (or otherwise). Market price does not change based on the chemical characteristics of the product within a given product grade.

13.     Blending within specification can take place at any point in the transportation cycle.  For instance, shippers may blend gasoline before it is tendered for transport.  And shippers on Colonial's pipeline have the right to take

product off of the pipeline at various points, blend the product in tankage, and then re-tender the product for further transportation.

14.  Furthermore, product may be blended after delivery to the shipper's final destination on the pipeline.  The purpose of post-destination blending is the same – to increase overall volume by the introduction of cheaper blending components thus achieving a lower average unit cost.  The volume of gasoline created by blending ("swell") can be sold at the same market price as the product prior to the injection of butane.

15.  Upon information and belief, a number of common carriers, either directly or indirectly through their subsidiaries and affiliates, have become involved in blending operations.  Upon information and belief, GEW is aware that other pipeline carriers have engaged in blending operations.

C.  **So Long As GEW Receives at Destination the Volume and Specification of Product That it Tendered to Colonial for Shipment, There Is No Legally Cognizable Damage to GEW's Product**

16.  GEW is a shipper that historically has tendered product to Colonial for shipment at various points of origin in the Gulf Coast for delivery to destination points, including Linden, New Jersey.

17.  Prior to tendering volume to Colonial for shipment, GEW submits a "nomination" that indicates the grade and volume of product to be shipped, from what point of origin, and to the destination on the pipeline where the product

should be delivered. Even after the product has been "lifted," (inserted) into the pipeline, GEW has the ability to change the destination point, as long as the change in destination does not adversely affect the operation of the pipeline and certain advance notice is given to Colonial.

18. At all times relevant to this Counterclaim, and since GEW initially filed a lawsuit against Colonial on October 24, 2016, GEW has been aware: (a) of Colonial's movement of GEW's product in the fungible batch system as described above; (b) of the requirement that GEW must provide products meeting Colonial's product specifications; (c) that GEW's product has been commingled within the fungible batch with other shippers' products of different molecular composition that meet the same product specification; and (d) that GEW does not receive the same molecules of product at GEW's designated destination points that GEW nominated for shipment and inserted into the pipeline at GEW's points of origin.

19. As a shipper, GEW has the right to receive, at destination, the volume and specification of product that it tenders to Colonial for shipment. Concomitantly, Colonial meets its obligations to GEW as a common carrier by delivering to GEW at its nominated destination the same volume and specification of product as GEW tendered to Colonial for shipment.

20. By contrast, GEW has no rights vis-à-vis Colonial regarding product tendered for shipment on Colonial's pipeline by *other* shippers.

21.  As a common carrier, Colonial has no rights or obligations with respect to any product either before the product is placed into the pipeline or after it has delivered the product.

D.  The Blending Conducted by the Joint Venture Will Not Change the Product's Grade

22.  Beginning in December 2014, Colonial, through a subsidiary entity, invested in the Joint Venture, which now has the capacity to inject butane into product flowing through Colonial's pipeline in Atlanta, Georgia.

23.  The Joint Venture's injection of butane into the fungible batch increases the volume of the fungible batch, creating "swell."

24.  The Joint Venture presells the swell created by its blending to shippers.  GEW, like any other shipper, could enter into an agreement with the Joint Venture to buy the swell.

25.  The injection of butane by the Joint Venture into fungible batches flowing through the pipeline is calibrated so that the product remains within the applicable product specification.  In other words, the blending conducted by the Joint Venture does not change the grade of the shippers' product in the fungible batch.

26.  Thus, regardless of the Joint Venture's blending operations, shippers who have placed products in the fungible batch will receive at their nominated

destination point exactly what they were entitled to receive – the volume of product meeting the same product specification that they provided to the pipeline.

27.     Because the blending conducted by the Joint Venture will not change the grade of the in-transit product, the market price of the barrels that shippers—including GEW—withdraw upon delivery also will be unaltered by the Joint Venture's blending operations.

28.     With its Complaint, GEW incorrectly posits that its product will be "damaged" by any in-line butane blending conducted on Colonial's pipeline.  At all times, GEW's product will be delivered "on specification" and GEW will be able to sell that product at the same market price as if the Joint Venture had not commenced blending.

**COUNT I**
**(Declaratory Judgment)**

29.     Colonial incorporates by reference the allegations of each preceding paragraph of its Counterclaim as if fully set forth herein.

30.     An actual controversy exists between Colonial and GEW within the meaning of 28 U.S.C. § 2201, in that GEW has challenged the ability of Colonial to permit the injection of butane into the pipeline under the Carmack Amendment.

31.     Colonial seeks a declaration that GEW's products shipped through the pipeline as part of a fungible batch incur no legally cognizable "damage" as a consequence of the Joint Venture's blending because GEW receives at its

- 19 -

designated destination product of the same volume and the same grade that GEW nominated and delivered for shipment through the pipeline.

## Relief Requested

WHEREFORE, Colonial prays that:

(a)     judgment be entered in its favor on the foregoing Counterclaim;

(b)     judgment be entered in Colonial's favor on GEW's claim, and that GEW be denied any relief; and

(c)     the Court grant any further relief to Colonial that it deems just and proper.

Dated:     July 31, 2017          By:  /s/ *Vito A. Gagliardi, Jr.*
                                       Vito A. Gagliardi, Jr.
                                       100 Southgate Parkway
                                       P.O. Box 1997
                                       Morristown, NJ 07962-1997
                                       Phone: (973) 538-4006
                                       Email: vagagliardi@pbnlaw.com

                                  OF COUNSEL:

                                  ARNALL GOLDEN GREGORY LLP
                                  Kevin B. Getzendanner, Ga. Bar No. 292425
                                  (*admitted pro hac vice*)
                                  Henry M. Perlowski, Ga. Bar No. 572393
                                  (*admitted pro hac vice*)
                                  Theresa Y. Kananen, Ga. Bar No. 478998
                                  (*admitted pro hac vice*)
                                  171 17th Street NW, Suite 2100
                                  Atlanta, GA  30363-1031
                                  Telephone:    404.873.8684
                                  Facsimile:    404.873.8685

                                  *Attorneys for Defendant*
                                  *Colonial Pipeline Company*

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Court using the CM/ECF filing system, which will automatically send notice of the filing to all counsel of record.


*/s/ Vito A. Gagliardi*
Vito A. Gagliardi

3739022