## PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

ATTORNEYS AT LAW
JOHN C. PHILLIPS, JR.  PENNSYLVANIA AVE. AND BROOM ST.
ROBERT S. GOLDMAN  1200 N. BROOM STREET
LISA C. MCLAUGHLIN  WILMINGTON, DE 19806
JAMES P. HALL  _____
DAVID A. BILSON
MEGAN C. HANEY  (302) 655-4200 (P)
(302) 655-4210 (F)

October 26, 2018

**VIA HAND DELIVERY AND CM/ECF**

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street – Unit 28
Room 2325
Wilmington, DE 19801-3555

Re:  *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC, and Magellan Midstream Partners, L.P.*, **Civil Action No. 17-cv-1390-LPS-CJB**

Dear Judge Burke:

We write jointly on behalf of the parties in accordance with the Court's Oral Order of Friday, October 19, 2018. The parties met and conferred and do have competing positions as to the specific scope and timing for both reductions, as set forth below.

**Plaintiff's Proposal:**

Plaintiff has asserted 96 claims from 5 patents against Defendants' blending systems located at 10 different terminals. Some terminals contain several different blending systems on the same site. None of these systems appear to be identical. Attempting to group them, you have at least five fundamentally different configurations,[1] each configuration directly impacts what claims can and cannot be asserted against that particular system.

Plaintiff has agreed to a two stage reduction. **Stage One:** 45 asserted claims by 4/8/2019 with its Final Infringement Contentions (with corresponding reduction to 50 invalidity references) and **Stage Two:** 25 asserted claims by 5/3/2019 (with corresponding reduction to 30 asserted references), which is 3 days after the close of fact discovery and 10 days prior to opening expert reports on 5/13/2019. Plaintiff also agreed to reduce the asserted claims within two weeks of the close of expert discovery (8/30/19). Dkt. 155, at 4. Plaintiff has also offered to include an earlier stage reduction to 65 asserted claims with one requirement from Defendants—to complete its production of core technical documents. Defendants declined.

Defendants likewise proposed a two stage reduction. Defendants initially proposed that Plaintiff select 30 claims by 11/7/18 and 15 claims by 8/30/19 (two weeks after close of expert discovery

---

[1] For example, certain blending systems: (1) blend from tanks to outgoing pipelines, (2) blend into pipelines as it goes by a terminal, (3) blend into incoming pipeline to tank, no distribution to a rack, (4) blend into incoming pipelines to tank, distributes at a rack, and (5) blend from a tank, distributes at a rack.

The Honorable Christopher J. Burke                                                                                                                  Page 2
October 26, 2018

8/16/19). Dkt. 155, at 2. Prior to exchanging drafts of this letter today, Defendants asked Plaintiff to select 45 claims by 10/31/18 and 15 claims by 4/29/19 (2 weeks before expert reports). *See* Email from Fiorella to Krill, dated Oct. 24, 2018. Now, Defendants appear to have settled on 45 claims by 11/6/18 and 15 claims by 4/29/19. Either proposal is untenable.

First, selecting 15 claims by 4/29/19, would require a substantial reduction of claims the day *before* the close of fact discovery (4/30/19). Conceivably, Defendants could produce documents (timely) that prove relevant to claims that had just been dropped from the case.

Second, reducing 96 claims to either 30 in 12 days, 45 in 5 days, or 45 in 11 days would not meaningfully conserve resources. Unlike cases cited in the Oral Order, the parties have already exchanged initial contentions and proposed claim constructions. Much of Defendants' contention work is done, and under Plaintiff's proposed schedule, the asserted claims will be reduced to 45 before Defendants chart their Final Invalidity Contentions. From this point forward, Defendants presumably narrow their invalidity case, not expand it. Moreover, even with 96 claims, the parties have identified only 12 claim phrases in dispute. *See* Dkt. 156, 157. Those claim terms appear across a variety of claims and patents. The Defendants' invalidity references also extend across multiple claims and patents. Defendants readily acknowledge this overlapping nature below, so why is there a need to reduce these claims now? Any reduction in claims at this time will not lead to a meaningful reduction of discovery or claim construction briefing.

Third, Defendants' reliance on the pending case of *Sunoco Partners Mktg. & Terminals L.P. vs. U.S. Venture, Inc. et al.*, Case No. 15 C 8178, D.I. 251 (N.D. Ill.) to justify its proposal is misplaced. The accused systems, which were built and operated by different companies, and the analysis and decisions regarding what claims to assert are not the same.

Moreover, a reduction here will inevitably result in cutting claims that later discovery establishes are infringed. To date, Defendants have produced two types of documents for the accused systems: (1) schematics showing how components are connected; and (2) "operating procedures," typically 2 to 3 pages that provide high level details, such as verifying that the system is turned on and that the proper RVP target is entered. MAG-SUN_00011219. These documents do not provide critical details on *how* the accused systems operate. For example, nearly every independent claim requires the calculation of a blend ratio based on certain inputs or parameters, as specified in the claims. *See, e.g.*, '302 claims 16, 27; '629 claims 17, 24, 31; '686 claims 1, 7, 16; '948 claims 1, 7; '548 claims 1, 6, 9, 14. While Plaintiff can conclude that *some* blend ratio is calculated by the accused systems, Plaintiff is unable to determine *how* that blend ratio is calculated and *what inputs or parameters* are used (despite serving discovery requests on this issue). Moreover, the documents are missing other important details relevant to the claims, such as: whether *reports* are generated and the type of reports ('302 claims 18, 23; '629 claims 20–23, 32–31); whether measurements or other data are stored in a *database* ('686 claims 5, 6, 9, 12); etc. While Defendants, regrettably, refer to these as "trivial features" or "trivial variations," they do matter. They are different asserted claims, and only further discovery will provide the information necessary to enable Plaintiff to select which claims it will pursue in this case.

Finally, Defendants have produced documents from their *own* mid-1990s systems that they assert as prior art, which provide much more detail than its own recent systems, including with blend ratio calculations. *See, e.g.*, MAG-SUN_00000608; MAG-SUN_00009485. It is reasonable to

The Honorable Christopher J. Burke                                                                                          Page 3
October 26, 2018

assume that more detailed documents exist for their recent systems.  Plaintiff has repeatedly asked for these documents.[2]  Any reduction now would be prejudicial as it would require Plaintiff to eliminate claims without the benefit of Defendants' core technical documents.  If the Court disagrees, Plaintiff respectfully reserves its right to later seek relief from the court.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 n.9 (Fed. Cir. 2011) ("It is also conceivable that a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses.").

**Defendants' Proposal:**

The 96 claims that Sunoco currently asserts far exceeds the number it will assert at trial, or that the parties could reasonably litigate during fact and expert discovery.  In another litigation involving four of the five patents at issue here, Sunoco has already narrowed the asserted claims from 116 to 33.  *See Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc. et al.*, Case No. 15 C 8178, D.I. 251 (N.D. Ill.).  Sunoco should do the same thing now in this case.  Defendants propose that Sunoco reduce to no more than 45 claims by November 6 (two weeks before claim construction briefing begins), and then reduce to no more than 15 claims two weeks before expert reports are due.  Defendants will likewise reduce the number of prior art references within two weeks of Sunoco's claim reduction to 50 references for the initial reduction and 20 references for the subsequent reduction.[3]  Sunoco's proposal to wait until fact discovery is over to do any claim reduction will result in a significant waste of resources, and is inconsistent with what the Court has done in other cases.

Defendants' proposal is consistent with this Court's practice of streamlining litigation early in the case, often before claim construction briefing begins, and again later in the case.  For example, in a recent case, the Court ordered plaintiff to reduce claims from 150 to 40 two months before opening claim construction briefs and then to reduce to 15 claims with final infringement contentions.  *Thermo Fisher Scientific Inc. et al v. Agilent Techs., Inc.*, No. 17-600 (D. Del. Feb. 5, 2018).  In another case, the Court ordered claims reduced from 52 to 30 one month before the exchange of proposed constructions, and to 18 with final infringement contentions.  *Ethicon LLC et al v. Intuitive Surgical, Inc. et al.*, No. 17-871 (D. Del. Jan. 9, 2018).  These cases are merely examples of many in which the Court has required early claim reduction.  *See Collegium Pharm., Inc. v. Teva Pharm. USA, Inc.*, No. 18-300 (D. Del. Aug. 6, 2018) (ordering claims reduced from 129 to 66 two weeks before submission of joint claim construction chart, and reduced to 33 one month before opening expert reports); *Tessera, Inc. et al v. Broadcom Corp.*, No. 16-380 (D. Del. Oct. 27, 2016) (ordering claims reduced from 138 to 46 two weeks before exchange of proposed constructions, and reduced to 24 with final infringement contentions).

---

[2]      April 10, 2018 Email from Krill to Fiorella; April 17, 2018 Letter from Replogle to Moreland; August 28, 2018 Letter from Replogle to McCann; Sept. 11, 2018 Letter from Replogle to Fiorella; September 28, 2018 Letter from Replogle to Fiorella; October 23, 2018 Letter from Replogle to McCann; Oct. 24, 2018 Email from Replogle to Fiorella.

[3]      This reduction of prior art is consistent with the reduction that Sunoco proposed during the parties' meet and confer.

The Honorable Christopher J. Burke                                                                                    Page 4
October 26, 2018

Sunoco cannot distinguish these cases based on the number of accused systems in this case. First, while the cases described above vary in terms of the accused products at issue, they consistently required early claim reduction—in some instances, earlier than the reduction Defendants propose. Second, Sunoco itself refers to the accused systems in this case as "reasonably similar butane blending systems" in its infringement contentions. (*See* First Amended Claim Charts on Infringement at 2; Second Amended Claim Charts on Infringement at 4). Sunoco cannot use the accused systems' purported similarities to its advantage for purposes of infringement, but then say they are not similar enough to avoid claim reduction.

The overlapping nature of the claims in this case makes early reduction particularly appropriate. For example, some claims focus on elements that are completely overlapping between patents. *Compare* claim 7 of the '548 patent (reciting "wherein the injection device includes a valve that controls the butane flow rate into the gasoline stream") *with* claim 9 of the '302 patent (reciting "wherein the blending unit comprises one or more valves for regulating the ratio of butane and gasoline blended by the blending unit"). Other asserted claims cover essentially the same thing using synonymous language. For example, claim 5 of the '629 patent recites a "butane stream," while claim 13 of the '629 patent recites a "volatility modifying agent." Because "butane stream" is synonymous with "volatility modifying agent," the scope of both claims is identical for all practical purposes. Still other claims recite trivial features that differ only slightly from other dependent claims. *See, e.g.*, claims 24 and 26 of the '302 patent (specifying that the generated report be used for "complying with regulatory requirements" as opposed to "including data concerning weather conditions"); *see also* claim 11 of the '302 patent (requiring nothing more than the "gasoline" of claim 1 be "reformulated gasoline"). And at least one asserted claim, claim 1 of the '302 patent, has already been invalidated by the Northern District of Illinois in a pending litigation involving Sunoco. *See Sunoco Partners Mktg. & Terminals LP v. US Venture, Inc. et al.*, No. 15 C 8178, D.I. 429 at 23 (N.D. Ill.). At bottom, the technology in this case relates to blending butane into gasoline. While Sunoco's patents claim trivial variations around that core concept, those differences are not the heart of the parties' dispute and will only serve to unduly complicate this case for all involved.

Sunoco's contention that it needs more discovery in order to reduce claims is similarly misguided. Defendants have provided Sunoco with the core technical documents for the accused systems, including drawings, schematics, and operating manuals that show how the systems work. This information was sufficient for Sunoco to serve over 340 pages of infringement contentions, which cite extensively to internal technical documents. Having accused Defendants of infringement based on these documents, it is hardly credible for Sunoco to resist claim reduction based on an argument that it does not know how Defendants' systems work. While Sunoco, like every plaintiff, may want additional discovery before trial, that is not a barrier to a timely narrowing of this case. Defendants' proposal, consistent with the Court's previous orders, leaves Sunoco with 45 claims, a number that Defendants increased during the parties' meet and confer (from 30) to accommodate Sunoco's discovery concerns. To the extent Sunoco believes there are fact questions that it needs to seek further discovery on, it can keep those claims in the case and drop others (such as the redundant or invalid claims outlined above). If Sunoco has good cause to later add claims back, it can seek leave of Court to do so. There is thus no undue prejudice to Sunoco in reducing the number of claims to manageable number now.

The Honorable Christopher J. BurkePage 5
October 26, 2018

                                      Respectfully submitted,

                                      */s/ John C. Phillips, Jr.*

                                      John C. Phillips, Jr. (No. 110)