IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 17-1390-LPS-CJB |
| POWDER SPRINGS LOGISTICS, LLC and MAGELLAN MIDSTREAM PARTNERS, L.P., | ) ) ) ) ) |
| Defendants. | ) ) |

**REPORT AND RECOMMENDATION**

Pending before the Court in this patent infringement case is Defendants Powder Springs Logistics, LLC ("Powder Springs") and Magellan Midstream Partners, L.P.'s ("Magellan," and collectively with Powder Springs, "Defendants") Motion for Summary Judgment of Non-Infringement and Invalidity (the "Motion"). (D.I. 381) Defendants make a number of different arguments in support of this Motion; this Report and Recommendation will address the Motion only as it relates to Defendants' argument that certain asserted claims are directed to patent-ineligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101").[1] For the reasons that follow, the Court recommends that the Motion be GRANTED in that respect.

### I. BACKGROUND

Plaintiff Sunoco Partners Marketing & Terminals L.P. ("Plaintiff") alleges that Defendants infringe five of Plaintiff's patents. Those patents are United States Patent Nos. 9,494,948 (the "'948 patent"), 9,606,548 (the "'548 patent"), 9,207,686 (the "'686 patent"), 6,679,302 (the "'302 patent") and 7,032,629 (the "'629 patent") (collectively, "the asserted

---

[1] The Court will address the remaining portions of the Motion in subsequent Reports and Recommendations.

patents" or "the patents-in-suit"). The patents-in-suit relate to systems and methods for the automated blending of butane and gasoline.

The Court hereby incorporates its summary of the technology at issue and certain of the patents-in-suit set out in the Court's January 8, 2018 Report and Recommendation, (D.I. 68 at 1-8); further information about these subjects relevant to the pending Motion will be set out in Section III below. The Court also incorporates its summary of the procedural background of this matter, as set out in the Court's August 7, 2019 Report and Recommendation, (D.I. 322 at 2-3), and its January 16, 2020 Report and Recommendation, (D.I. 447 at 2).

Defendants filed the instant Motion on October 11, 2019, (D.I. 381), and briefing was completed on November 1, 2019, (D.I. 414). The Court heard oral argument on the Motion (as well as other summary judgment and *Daubert* motions) on November 13, 2019. (D.I. 441 (hereinafter, "Tr."))

## II. STANDARD OF REVIEW

This portion of the instant Motion for Summary Judgment asserts that certain asserted claims of the '302 patent are directed to patent-ineligible subject matter. The Court has recently set out the relevant legal standards for review of a summary judgment motion brought on Section 101 grounds in *S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A v. Rhapsody Int'l Inc.*, Civil Action No. 18-69-MN-CJB, Civil Action No. 18-70-MN-CJB, 2019 WL 1102683, at *2-4 (D. Del. Mar. 8, 2019). The Court hereby incorporates its discussion of these legal standards in *S.I.SV.EL.* and will follow those standards herein. To the extent consideration of this portion of Defendants' Motion necessitates discussion of other, related legal principles, the Court will set out those principles in Section III below.

## III. DISCUSSION

Defendants previously filed two motions to dismiss in this case, which challenged 75 claims from the five asserted patents on the grounds that all of those claims were patent ineligible pursuant to *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). (D.I. 27; D.I. 138; *see also* D.I. 354 at 3)[2] The Court considered Defendants' motions together and recommended that they be denied because, in the Court's view, the motions were premised on an overly-broad recitation of the abstract idea at *Alice*'s step one: "data gathering and processing." (*See* D.I. 354)[3] Defendants' current Motion targets only three of those previously-challenged claims—claims 23, 24, and 30[4] of the '302 patent—as patent ineligible. (D.I. 382 at 32) Below, the Court will first consider claims 23 and 24 together, and then will turn to claim 30.

### A. Claims 23 and 24

Defendants first challenge claims 23 and 24. Those claims read as follows:

> **23.** A method for simplifying record keeping requirements for butane use at a petroleum products tank farm comprising:
>
> a) drawing a gasoline stream from a tank of gasoline;
>
> b) drawing a butane stream from a tank of butane;
>
> c) blending the butane stream and the gasoline stream to form a blend;
>
> d) monitoring the volatility of the gasoline stream and the butane stream;

---

[2] Those challenged claims are claims 17-33 of the '629 patent, claims 18-35 of the '302 patent, claims 1-16 of the '548 patent, claims 1-17 of the '686 patent, and claims 1-7 of the '948 patent. (D.I. 354 at 3)

[3] Defendants filed Objections to the Report and Recommendation, (D.I. 368), to which Plaintiff responded, (D.I. 386). The Objections are currently pending.

[4] Because claim 30 depends from claim 27, claim 27 will also be discussed below.

3

> e) monitoring the rate at which the butane stream is blended with the gasoline stream;
>
> f) inputting the monitored volatilities and monitored blend rate to an information processing unit; and
>
> g) generating a report that tabulates the monitored volatilities and monitored blend rate, or a summary thereof.
>
> **24.** The method of claim **23**, wherein the report is used for complying with regulatory requirements.

('302 patent, col. 15:31-48)

### 1.  *Alice*'s Step One

At step one, Defendants assert that claims 23 and 24 are directed to the abstract idea of "gathering and monitoring blending data and using it to generate reports with a computer." (D.I. 382 at 35; *see also* D.I. 414 at 19 (same))[5] Plaintiff does not necessarily disagree that this is an abstract idea; instead, it argues that at step one, the claims are directed to *more* than this idea. (D.I. 405 at 37-38) For the following reasons, the Court agrees with Defendants that the claims are directed to the proffered abstract idea at issue.

First, simply by looking at the language of the claims themselves, it is apparent that claims 23 and 24 demonstrate a different, data-analytics-based focus, as compared to other claims of the '302 patent, which instead focus much more significantly on the physical components of systems and methods used to actually blend butane with gasoline. (*Compare* '302 patent, col. 13:12-24 (claim 1), *with id.*, col. 15:31-46 (claim 23)) This modified focus is evident

---

[5]   The "blending data" at issue here is a reference to data regarding the blending of butane with gasoline. Thus, in this way, Defendants have now incorporated reference to the concept of "blending of butane and gasoline" into their proffered abstract idea (whereas they had failed to do so when filing their earlier motions to dismiss). (D.I. 354 at 22)

4

from the preamble of claim 23, which states that the claim is to a "method for simplifying record keeping requirements[,]" (*id.*, col. 15:31), rather than, for example, a "system for blending gasoline and butane[,]" (*id.*, col. 13:12). *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (noting that it was not error for the district court to cite "to the preamble in its review of whether the claims are directed to an abstract idea" where the court's inquiry was "centered on determining the 'focus' of the claims").[6] To be sure, the method *relates* to blending butane and gasoline, ('302 patent, col. 15:31-32 ("method for simplifying record keeping requirements *for butane use at a petroleum products tank farm*") (emphasis added)), but the words of the claims suggest that their *focus* is on the aspect of report generation based on monitored and gathered data.

Next, the body of claim 23 and its various claim limitations help demonstrate that the claims' focus is on data collection and report generation, rather than the blending process itself. Only the first three limitations (out of seven) are directed to the blending itself, and those limitations describe the blending only at the highest level of generality—"drawing" gasoline and butane streams from tanks and "blending [them] . . . to form a blend[.]" ('302 patent, col. 15:35-38) The bulk of claim 23 is directed to monitoring certain properties of the gasoline and butane

---

[6] In a previously-issued Report and Recommendation, the Court determined that the "simplifying" term in the preamble of claim 23 is non-limiting. (D.I. 331 at 15-20) In doing so, the Court concluded that this term was not necessary to give life and meaning to the claim, in significant part because the body of the claim itself recited a structurally complete method, while the preamble simply provided context, indicating a use that one could put the claimed invention to. (*Id.* at 18-19) The Court does not see a tension between its prior finding and its conclusion here. Even though the "simplifying" phraseology from the preamble is non-limiting, that language can still be a helpful piece of evidence that enables the factfinder to understand that the basic thrust of the claims is to generating reports that make use of monitored and gathered data (a concept that is also discussed in the body of the claim itself, as will be further underscored below).

5

and sending those gathered values to an "information processing unit" in order to "generat[e] a report[.]" (*Id.*, col. 15:39-46) These are the types of information-gathering-focused claims that have been repeatedly found to be directed to an abstract idea. *Cf. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (finding the claims to be focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis[,]" and that "collecting [and analyzing] information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas") (citing cases); *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (finding the challenged claim to be "the sort of data gathering and processing claim that is directed to an abstract idea under step one of the *Alice* analysis").

Additionally, the portions of the patent specification discussing the subject matter of claims 23 and 24 show that the focus of those claims is on the concept of gathering and monitoring data about blended gasoline, and generating useful reports containing such data. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F3d 1343, 1347-48 (Fed. Cir. 2015) (examining the patent's specification at step one, in order to determine what the claims at issue were "directed to"). This is clear when the patent explains that the "data required for the process control unit to properly blend butane and gasoline . . . can also be used to generate useful operational data" and that by "properly manipulating the data obtained from [that unit] one is able to generate reports for gasoline sold from a particular tank farm as required by federal and state laws or regulations." ('302 patent, col. 4:1-12; *see also id.*, col. 9:39-46 (noting that certain embodiments take data gathered by an "information processing unit" of the present invention and "manipulate[ it] to generate reports of . . . the vapor pressure of butane[ and] gasoline" to help assure regulatory compliance))

6

In making the contrary argument that the claims are not directed to an abstract idea, Plaintiff emphasizes that the claims: (1) include "tangible limitations" and (2) describe the mixing of certain substances together, demonstrating that they meet the definition of a patent-eligible "process"—i.e., "'an act, or a mode of acting[.]'" (D.I. 405 at 37 (quoting *Tilghman v. Proctor*, 102 U.S. 707, 728 (1880))) These arguments are unpersuasive.

With regard to Plaintiff's argument about tangibility, of course it is true that the claims make reference to some tangible, physical elements or processes (e.g., "gasoline stream," "butane stream," "blending the butane stream and the gasoline stream" and "information processing unit"). But the United States Court of Appeals for the Federal Circuit has repeatedly made clear that "the mere physical nature of [a patent's] claim elements . . . is not enough to save the claims from abstractness, where the claimed advance is directed to [an abstract idea] using off-the-shelf technology for its intended purpose." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019); *see also Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (noting that the "physicality of the paper checks being processed and transported [referenced in the claims] is not by itself enough to exempt the claims from being directed to an abstract idea"); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1161 (Fed. Cir. 2018). Thus, the fact that claims 23 and 24 make reference to some tangible components does not save the claims from abstractness at step one, when those components clearly are not the focus of the claims.

Regarding whether the claimed method can be called a "process," of course it can. The real question is whether this "process" is patent eligible (i.e., whether it is directed to one of the judicially-created exceptions to patentability, here an abstract idea). As described above,

7

Defendants have shown why the claimed process is directed to ineligible content—an abstract idea.

For these reasons, the Court agrees with Defendants that, at step one, claims 23 and 24 of the '302 patent are directed to the abstract idea of "gathering and monitoring blending data and using it to generate reports with a computer." Thus, the Court proceeds to step two.

### 2. *Alice*'s Step Two

At step two, the Court examines the claims to determine if they contain "significantly more" than the abstract idea to which the claims are directed—i.e., an "inventive concept." *Alice*, 573 U.S. at 218 (internal quotation marks and citation omitted). Although the inventive concept at issue must actually be evident in the claims, *Two-Way Media*, 874 F.3d at 1338 (finding a claim ineligible where "the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept") (emphasis in original), the unconventional nature of a particular claimed feature or its benefits over the prior art need not be described in the claims themselves, *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) (looking to both the "claims [and] the specification" in the step two inquiry); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (finding "plausible and specific factual allegations that aspects of the claims are inventive" in a complaint to be sufficient to survive *Alice* step two, where the allegations are not "wholly divorced from the claims or the specification[,]" and noting that "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional").

Defendants assert that claims 23 and 24 contain no inventive concept because they "use broad, functional language without any technical details for how the tangible components

8

operate" and because they "recite only the use of decades-old processes, tabulating data measured during these processes (using 'an information processing unit'), and supplying said tabulations for 'regulatory requirements.'" (D.I. 382 at 36-37) The Court agrees.

The claims surely are written using expansive, functional language that provides little narrowing detail about how, for example, the required "monitoring" or "inputting" or "generating" must occur. *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (noting that the patent claims at issue "fail[] to provide any technical details for the tangible components, . . . instead predomina[ntly] describ[ing] the system and methods in purely functional terms") (internal quotation marks and citation omitted, certain brackets in original, certain brackets added); *see also* ('302 patent, col. 11:23-24 (explaining that the "flow of the butane and gasoline samples is monitored by flow transmitters **285**" without further explanation of the flow transmitters or how they work)). And as to conventionality, the '302 patent admits that blending butane with gasoline was commonplace before the '302 patent. ('302 patent, cols. 1:65-2:11, 2:53-65; *see also* D.I. 28 at ¶¶ 33-35) Likewise, Defendants assert (and Plaintiff does not attempt to refute) that monitoring volatilities and flow rates of gasoline streams were "conventional steps," (D.I. 382 at 36 (citing D.I. 385, ex. 22, cols. 3:5-8, 5:47-50[7]); *see also* '302 patent, 1:29-51 (describing gasoline volatility and how it is measured), 2:53-65 (describing a "Grabner unit" used to measure volatility)), as was providing reports to show compliance with regulatory requirements, (D.I. 382 at 36 (citing '302 patent, col. 9:39-46 (explaining that "reports of butane consumption, gasoline consumption, and the vapor pressure

---

[7] Exhibit 22 is U.S. Patent No. 5,223,714 issued to Steven Maggard and titled, "PROCESS FOR PREDICTING PROPERTIES OF MULTI-COMPONENT FLUID BLENDS[;]" this patent issued on June 29, 1993.

9

of butane, gasoline, and blended gasoline sold" are "typically required by regulatory officials"), 1:52-64 (describing federal regulatory guidelines), 4:8-12 (explaining how reports regarding gasoline are generated to meet such guidelines))).

To all this, Plaintiff responds only in conclusory fashion, arguing that "genuine fact issues preclude summary judgment." (D.I. 405 at 40) Plaintiff points to nothing in the claims that it asserts to be unconventional or amount to an "inventive concept." (*See id.*) Instead it argues that the "claims go much farther than . . . reciting 'decades old processes' (as explained above)[,]" (*id.*), without actually explaining *how* the claims *do* go "much farther" and without identifying any limitations (or combinations of limitations) in claims 23 and 24 that it believes to amount to an inventive concept.[8] And the "as explained above" portion of its answering brief that Plaintiff references is simply Plaintiff's step one analysis; yet in that analysis, Plaintiff did not actually explain why it believed the claim limitations were unconventional. Instead, there it argued that the fact that certain limitations are *conventional* should not disqualify them from consideration at step one. (*Id.* at 36 (urging the Court to "disregard [Defendants'] flawed arguments" that "elements should be disregarded *in step one* because (in Defendants' opinion) they are 'well known,' not an 'improvement,' and 'conventional,' among other irrelevant (and incorrect) arguments.") (emphasis in original); *see also id.* at 38-39)

---

[8] The only explanation Plaintiff gives as to why "Defendants' opinions about what is 'known' or 'conventional'" were purportedly "incorrect" is that "Defendants have not identified a single alleged anticipatory reference for claims 23-24, and only one [alleged anticipatory reference] for claims 27 and 30[.]" (D.I. 405 at 38 n.30, 40) But such an argument does not identify with specificity anything unconventional about the technology in the claims. And it erroneously conflates novelty with eligibility. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[Plaintiff] equates the inventive concept inquiry with novelty and contends that the Asserted Claims contain an inventive concept because they were not shown to have been anticipated by . . . or obvious over . . . the prior art. . . . That position misstates the law.") (citations omitted).

10

Because the record indicates no inventive concept in claims 23 and 24, the Court finds that those claims fail *Alice*'s step two and are patent ineligible. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, [and] conventional to a skilled artisan in the relevant field, this [Section 101] issue can be decided on summary judgment as a matter of law.").

### B. Claim 30

Next, Defendants challenge claim 30, which depends from claim 27. The two claims are reproduced below:

> 27. A method for blending butane and gasoline using a processor comprising:
>
> a) receiving a gasoline volatility measurement at the processor;
>
> b) receiving a butane volatility measurement at the processor;
>
> c) receiving a target gasoline volatility value at the processor; and
>
> d) calculating a butane blend rate from the gasoline volatility measurement, the butane volatility measurement, and the target gasoline volatility value.
>
> 30. The method of claim 27 wherein the processor uses the butane blend rate to control an injector that regulates the flow of butane.

('302 patent, cols. 15:54-65, 16:5-7)

#### 1. *Alice*'s Step One

Defendants articulate the abstract idea for claim 30 in slightly different ways. The cleanest example of an articulation is the following: "The focus of claims 27 and 30 is receiving [data] and calculating a butane blend rate." (D.I. 414 at 17) This largely aligns with Defendants' argument elsewhere that claim 27 "is directed to the abstract idea of gathering data . . . and

11

manipulating the data . . . to determine the amount of butane to add to gasoline[,]" and that claim 30 "merely adds . . . add[ing] the butane to gasoline." (D.I. 382 at 33-34; *see also id.* ("Claims 27 and 30 are directed to . . . calculating a blend rate and blending butane into gasoline[.]")) In response, again Plaintiff does not argue that this is not an abstract idea; instead, it asserts that the claim is "directed to" more than this. (D.I. 405 at 37-38) Therefore, at step one, the Court will consider whether claim 30 is actually directed to the abstract idea of "receiving data and calculating a butane blend rate."[9]

Although Defendants only challenge claim 30 in their Motion, because claim 30 is dependent from claim 27, some analysis of claim 27 is also necessary. The preamble to claim 27 instructs that the claim is broadly about "[a] method for blending butane and gasoline using a processor[.]" ('302 patent, col. 15:54-55); *Two-Way Media*, 874 F.3d at 1340. And the claim limitations themselves do not provide much more in terms of specificity. As the Court previously noted, "[e]ach of the four steps of [claim 27] is set out in functional language, and each recites data manipulation steps performed on a generic 'processor'[.]" (D.I. 354 at 21 (reasoning that, for Section 101 purposes, the claim is "framed at a dangerously-high level of generality")) Notably, claim 27 itself does not actually require butane to be blended with gasoline, only that a "blend rate" is calculated from the "receiv[ed]" volatility measurements of the butane and gasoline based on a "target" volatility. ('302 patent, col. 15:54-65) Thus, from the claim language itself, it appears claim 27 is focused on calculating the butane blend rate, with the claim reciting other preliminary steps necessary to make such a calculation (i.e., "receiving" data, including volatility measurements and a "target" value). Claim 30 merely adds that "the

---

[9] This articulation of the abstract idea also captures the concept that the claim relates in some way to the "blending of butane and gasoline." *See supra* at 4 n.5.

processor uses the butane blend rate to control an injector that regulates the flow of butane." (*Id.*, col. 16:5-7) No details are given in the claim itself regarding the "injector," or how it "regulates the flow of butane," or how it is "control[led]" by the processor of claim 27. Thus, the language of claims 27 and 30 indicate that claim 30 is directed to "receiving data and calculating a butane blend rate"—and the level of specificity in the claims themselves does not warrant a more specific articulation.

Moreover, it appears that the process of receiving volatility measurements and a target volatility, calculating a blend rate, and blending butane with gasoline was something that was previously done manually in the art. (D.I. 382 at 34 (Defendants arguing that "[t]here is no dispute that all of the steps in [claims 27 and 30, including those relating to calculating a blend rate and blending butane into gasoline] could be, used to be, and, indeed still are, performed by humans in a non-computerized context"); *see also id.* at 34-35 (citing D.I. 385, ex. 27 at ¶ 117; *id.*, ex. 15 at 188, 191, 197-99, 200-01; D.I. 45 at 5; D.I. 368 at 7; D.I. 28 at ¶¶ 32-35; '302 patent, cols. 2:23-33, 6:30-65))[10] And as Defendants assert, "'[c]laims are often found abstract when all of the steps of the claim could be performed by humans in non-computerized ... contexts.'" (*Id.* (citing *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 452 (D. Del. 2018) (internal quotation marks and citation omitted)) Thus, it appears that claim 30 of the '302 patent simply recites the computerized automation of a previously manual process, suggesting that it is directed to an abstract idea (and not the real-world application of such an idea).

---

[10] Although Plaintiff broadly argues that "Defendants' opinions on what was done before" are "not true," (D.I. 405 at 39), Plaintiff cites to no evidence in support of that statement. And the statement is in conflict with the numerous documents cited by Defendants (and referenced above) showing that this manual process was well known.

13

Plaintiff's contrary argument at step one gives the Court no pause. Here, Plaintiff argues (as it did with claims 23 and 24) that claim 30 is "directed to [a] patent-eligible process[] under step 1" because it "include[s] tangible limitations" and meets the broad definition of a "process[.]" (D.I. 405 at 36-39 (certain emphasis in original, certain emphasis omitted) (citation omitted)) As discussed above, however, the fact that the claims recite tangible limitations does not necessarily (without more) save them from abstractness. And whether the claims can be generally described as a "process" (as opposed to a *patent eligible* process) is beside the point.

More specifically, regarding claim 30, Plaintiff points to the "injector" limitation, suggesting that its presence in the claim helps show that the claim is not directed to an abstract idea. (D.I. 405 at 37-38) Here, Plaintiff points to a portion of the specification that states that "'injectors 275'" that are depicted in an embodiment of the invention "'typically comprise[s] pneumatic valves and meters[,]'" as evidence that such injectors amount to more than "'generic computer components.'"[11] (*Id.* at 38 (quoting '302 patent, col. 12:31-34)) Again, however, Plaintiff's argument misses the point. It is not dispositive that the claim makes reference to a physical, tangible item that is something other than a computer component (here, an "injector"). What matters is that the "injector" is described generically in the specification in a way that

---

[11] A schematic diagram of an "injector[] 275" is shown in the "exemplary butane blending system" of Figure 2 (below):

![Schematic diagram showing injector 275 with labels 270, INJECTOR, M-103]

('302 patent, FIG. 2)

14

provides no indication that it (either standing alone, or in combination with other elements in this claim) is the key focus or basic thrust of the claim. (*See* D.I. 65 at 281-82 (Plaintiff's counsel admitting that "[t]aken individually, certain elements certainly were within the prior art[,]" including "injector valves"); *see also* '302 patent, cols. 5:31-33; 11:33-38, 12:31-34)

In light of the above, the Court finds that claim 30 is directed to the abstract idea of "receiving data and calculating a butane blend rate." Thus, the Court proceeds to step two.

### 2. *Alice*'s Step Two

Defendants assert that claims 27 and 30 contain no inventive concept because they simply "[r]eplac[e] the human operator with a 'processor'" and this type of claim, according to Defendants, "is the quintessential example of computerizing manual steps of the past with no further invention." (D.I. 382 at 35) Again, the Court agrees.

As was noted above, Defendants provide ample evidence, including from the patent itself, showing that the claimed steps of receiving volatility measurements, calculating a blend rate, and blending butane with gasoline were all conventional processes that were previously conducted manually. (D.I. 382 at 34-35 (citing evidence); *see, e.g.*, D.I. 385, ex. 15 at 197-199 (Plaintiff's expert testifying that "[t]he invention is essentially the automation, and I think the prior art is these manual types of systems . . . that didn't practice the automated method" and admitting that "blending butane into gasoline . . . in a partially-automated manner, at a terminal . . . was in the prior art"); *see also* D.I. 414 at 18) Mere automation of the process of calculating a butane blend rate, however, surely cannot provide the inventive concept here. *Solutran, Inc.*, 931 F.3d at 1169 ("Merely using a general-purpose computer . . . to perform conventional activities in the way they always have, as the claims do here, does not amount to an inventive concept."); *cf. Cellspin Soft*, 927 F.3d at 1316 ("[T]he need to perform tasks

15

automatically is not a unique technical problem."). This is particularly so where, as here, the claim does not describe the particular manner in which the automation is accomplished and instead merely recites the end result. ('302 patent, cols. 15:54-16:7 (claims 27 and 30 not describing how the measurements are "receiv[ed,]" how the rate is "calculat[ed]" or how the processor "control[s]" the injector)); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (finding "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention" at step two); *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a disembodied concept. The asserted claims of the [challenged] patent recite the concept, but not the way to implement it.").

Plaintiff's step two response is the same as it was for claims 23 and 24, and thus the Court rejects this argument for the same reasons explained above.

## IV. CONCLUSION

For all of the above reasons, the Court recommends that the District Court GRANT Defendants' Motion for Summary Judgment as it relates to Section 101 and find '302 patent claims 23, 24 and 30 to be ineligible.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections by no later than **January 30, 2020**, with responses being due no later than **February 7, 2020**. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 22, 2020

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE