IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P.,<br><br>                Plaintiff,<br><br>       v.<br><br>POWDER SPRINGS LOGISTICS, LLC and MAGELLAN MIDSTREAM PARTNERS, L.P.,<br><br>                Defendants. | Civil Action No. 17-1390-LPS-CJB |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff Sunoco Partners Marketing & Terminals, L.P. ("Sunoco") against Defendants Powder Springs Logistics, LLC ("PSL") and Magellan Midstream Partners, L.P.'s ("Magellan" and collectively with Powder Springs, "Defendants"), Sunoco alleges infringement of United States Patent Nos. 6,679,302 (the "'302 patent"), 7,032,629 (the "'629 patent"), 9,207,686 (the "'686 patent"), 9,494,948 (the "'948 patent") and 9,606,548 (the "'548 patent" and collectively with the other patents, "the asserted patents"). Presently before the Court is Defendants' Motion for Summary Judgment of Noninfringement and Invalidity (the "Motion"). (D.I. 381) Defendants make a number of different arguments in support of this Motion; this Report and Recommendation will address the Motion only as it relates to Defendants' argument that summary judgment of noninfringement should be granted with respect to certain asserted claims.[1] For the reasons that follow, the Court recommends that the Motion be DENIED in that respect.[2]

---

[1] The Court has addressed one portion of the Motion in a prior Report and Recommendation, (D.I. 453), and will address the remaining portions in subsequent Reports and Recommendations.

[2] Defendants filed the instant Motion on October 11, 2019, (D.I. 381), and briefing was completed on November 1, 2019, (D.I. 414). The Court heard oral argument on the Motion

## I. BACKGROUND

### A. Factual Background

In this case, Sunoco alleges that Defendants' butane blending system, which allows Defendants to inject butane into gasoline product flowing through an interstate pipeline maintained by Colonial Pipeline Company at the PSL facility, and Defendants' related butane blending activities, infringe claim 30 of the '302 patent, claim 3 of the '686 patent, claims 3 and 7 of the '948 patent and claims 3 and 8 of the '548 patent. (D.I. 149 at ¶¶ 2, 19-25; D.I. 404, ex. 5 at ¶¶ 52, 67; D.I. 440 at 1) Sunoco further alleges that Magellan's blending systems and butane blending activities at nine other locations infringe claims 3, 16, 17, 23 and 24 of the '302 patent, and claims 18, 22, 31 and 32 of the '629 patent. (D.I. 149 at ¶¶ 26-33; D.I. 404, ex. 5 at ¶¶ 52, 67; D.I. 440 at 1) The asserted patents relate to systems and methods for the blending of butane into gasoline. (*See* D.I. 171 at 1; D.I. 176 at 1)

Any additional facts relevant to this Report and Recommendation will be discussed in Section III below.

### B. Procedural History

The Court incorporates by reference its summary of the procedural history of this case set out in its January 16, 2020 Report and Recommendation ("January 16 R&R"). (D.I. 447 at 2)

## II. STANDARD OF REVIEW

---

(as well as other summary judgment and *Daubert* motions) on November 13, 2019. (D.I. 441 (hereinafter, "Tr."))

The Court incorporates by reference its prior discussion of the legal standards for resolving summary judgment motions and for establishing patent infringement, which were also found in its January 16 R&R. (*Id.* at 3-5)

## III. DISCUSSION

With their Motion, Defendants seek summary judgment of noninfringement of 14 of the 15 currently-asserted claims (directed to both systems and methods) (the "relevant claims"): claims 16, 17, 23, 24 and 30 of the '302 patent;[3] claims 18, 22, 31 and 32 of the '629 patent; claim 3 of the '686 patent; claims 3 and 7 of the '948 patent; and claims 3 and 8 of the '548 patent.[4] (D.I. 382 at 3, 13) For purposes of Defendants' Motion, it is not disputed that Defendants' accused systems, in normal operating mode, operate as follows: (1) before injecting butane, the systems take one or two samples of gasoline downstream of the butane injection point; (2) an analyzer measures the vapor pressure of the samples; (3) a processor compares the vapor pressure of the samples of gasoline with the target, and calculates a blend ratio to determine the change in butane flow required to reach the target;[5] (4) the systems adjust the injector valves to the desired blend ratio and inject butane; (5) the processor compares the blended gasoline vapor pressure to the target and calculates an adjustment to the blend ratio if necessary. (D.I. 385, ex. 28 at ¶ 224; D.I. 382 at 8-9; D.I. 405 at 8; Tr. at 158-59, 161)

---

[3] The Court notes that it recently recommended that claims 23, 24 and 30 of the '302 patent be found to be directed to patent-ineligible subject matter pursuant to 35 U.S.C. § 101. (D.I. 453 at 16)

[4] Claims 3 and 7 of the '948 patent and claims 3 and 8 of the '548 patent are system claims; claims 16, 17, 23, 24 and 30 of the '302 patent, claims 18, 22, 31 and 32 of the '629 patent and claim 3 of the '686 patent are method claims. (*See* D.I. 405 at 12, 14 & n.12)

[5] Defendants refer to the first three steps as the "initiation step" or the "initiation phase." (D.I. 414 at 3, 5 n.7)

Defendants characterize their accused systems as using "feedback control" since: (1) the analyzer is downstream of the butane injection point; and (2) it generally measures the vapor pressure of the blended gasoline to determine whether the blend ratio must be adjusted. (D.I. 382 at 7-9; D.I. 414 at 5; Tr. at 157-58)

In contrast, Defendants characterize the relevant claims as being directed to "feedforward control." (*See, e.g.*, D.I. 382 at 1, 6-7, 14; D.I. 414 at 1-2 & n.1) And they describe feedforward control systems and methods as ones where the analyzer is placed upstream of the butane injection point, where the analyzer takes vapor pressure measurements of the unblended gasoline, and then it uses such measurements to calculate a blend ratio at which to blend butane. (D.I. 382 at 1, 6-7; Tr. at 157)

It is also undisputed, for purposes of this Motion, that Defendants' systems: (1) only take a measurement representative of the unblended gasoline stream when the systems are not blending butane, and, therefore, (2) do not measure the vapor pressure of the unblended gasoline stream while the systems are blending butane into gasoline. (D.I. 382 at 3)[6] Defendants argue that their accused systems do not infringe the relevant claims because such claims recite a "feedforward system [in which] the analyzer continuously samples and measures the unblended gasoline *and* injects butane into gasoline *at the same time*"—but "[t]hat is not possible in Defendants' feedback systems" (since those systems measure the unblended gasoline only at a

---

[6] While Defendants do in fact dispute that they ever actually take a measurement of the "unblended" gasoline—since their analyzer is downstream of the injection device (and thus, according to Defendants, it is always measuring the blended gasoline)—for purposes of their Motion, Defendants accept Sunoco's premise that they do in fact at times measure unblended gasoline. (D.I. 382 at 14 n.6; D.I. 414 at 2 n.2; Tr. at 162-63) In light of this, they note that even if the Court disagrees with Defendants' position in this Motion, "it is not as if [the Court] could grant summary judgment against [Defendants] that [they] do infringe because [Defendants] have accepted one of [Sunoco's] premises." (Tr. at 163)

4

time when the systems are not injecting butane). (D.I. 382 at 17 (certain emphasis in original, certain emphasis added); *see also* Tr. at 161-62 (Defendants' counsel asserting that Defendants' systems do not infringe the relevant claims as a matter of law because "we cannot blend the butane while we are taking a measurement of the gasoline stream"))

The problem with Defendants' argument, however, is that it is premised on the assumption that the relevant claims require *simultaneous* (1) measurement of the unblended gasoline and (2) injection of butane into gasoline. (D.I. 405 at 3, 12; Tr. at 168, 171-73)[7] Yet (as will be shown in more detail below) the relevant claims recite no such limitation. (D.I. 405 at 12, 14, 15; Tr. at 168, 171-72) Nor do the claims (or the patent specifications) recite the terms "feedforward" or "feedback". (D.I. 405 at 1, 5)

With respect to the system claims, for example, claim 1 of the '948 patent (from which asserted claim 3 depends) recites:

> 1. A system for blending butane with gasoline in a pipe, wherein the gasoline has a vapor pressure, comprising:

---

[7] Defendants argue in their reply brief that "[t]his is [] not a question of whether Defendants' systems and methods *simultaneously* measure the unblended gasoline and blend butane into gasoline . . . . [t]he question is whether Defendants' systems and methods satisfy each and every limitation of the claims." (D.I. 414 at 4-5 (certain emphasis in original, certain emphasis omitted); Tr. at 159) But that is exactly what they are arguing—that their systems and methods cannot infringe as a matter of law because it is not possible for their systems to "continuously sample[] and measure[] the unblended gasoline *and* inject[] butane into gasoline *at the same time*[.]" (D.I. 382 at 17 (certain emphasis in original, certain emphasis added); *see also, e.g.*, Tr. at 161-62 (Defendants' counsel asserting that their systems cannot infringe because "we cannot blend the butane *while we are taking a measurement of the gasoline stream*") (emphasis added); *id.* at 164 ("[W]e physically cannot measure the vapor pressure of the gasoline *while we are blending butane*.") (emphasis added); *id.* at 175 (Defendants' counsel asserting that the Motion should be granted because "we cannot physically do one step *while we are doing the other*") (emphasis added); D.I. 414 at 1-2 ("There is no dispute that Defendants' systems in normal operation mode *do not meet* the limitation requiring measuring the '*unblended*' gasoline stream . . . *when they blend butane into gasoline*") (certain emphasis in original, certain emphasis added))

5

> a) a butane reservoir in fluid connection with said gasoline;
>
> b) *an injector valve for discharging butane into said gasoline*;
>
> c) *a vapor pressure analyzer connected to said pipe, said analyzer configured to determine the vapor pressure of the gasoline and to transmit said vapor pressure to a processor*;
>
> d) a programmable logic controller governing the flow of butane through said injector valve; and
>
> e) a processor programmed to receive the vapor pressure from the analyzer, calculate an amount of butane to inject into the gasoline based on seasonal and/or regional data and a maximum preprogrammed volatility limit, and provide a control signal to said programmable logic controller according to said seasonal and/or regional data and maximum preprogrammed volatility limit; wherein the programmable logic controller is configured to adjust the injector valve to govern the flow of butane through said injector valve into said gasoline based on the signal from the processor.

('948 patent, col. 17:9-32 (emphasis added))[8] Claim 3 adds that "said processor receives the vapor pressure of a blend of gasoline and butane." (*Id.*, col. 17:35-36)

Defendants assert that their systems do not infringe claim 3 of the '948 patent as a matter of law because: (1) the analyzer used in their systems is configured to determine the vapor pressure of unblended gasoline and transmit said vapor pressure to a processor only "during the initiation step and periods of no blending" and (2) their systems are configured to satisfy other claim elements (i.e., those requiring an injector valve for discharging butane into gasoline and that the processor receives the vapor pressure of a blend of gasoline and butane) only "when they are blending." (D.I. 414 at 3) Although it is not always made explicit in their briefing,

---

[8] Claim 7 of the '948 patent also recites a system comprising, *inter alia*, a vapor pressure analyzer that is "configured to determine the vapor pressure *of the blend of gasoline and butane*[.]" ('948 patent, col. 18:20-22 (emphasis added))

Defendants' argument seems to be that because the claims are directed to systems "for blending butane with gasoline[,]" then for an accused system to infringe, every claim element must be capable of being performed *only while the system is actually blending butane with gasoline*. (*See, e.g.*, D.I. 382 at 3 ("Sunoco accuses Defendants of infringing claims directed to blending butane into gasoline *only when Defendants are not blending* butane into gasoline.") (certain emphasis in original); D.I. 414 at 1 ("When Defendants blend—*which is the only time they could possibly infringe Sunoco's claims for blending butane into gasoline*—the analyzer measures the vapor pressure of the blended gasoline and not the unblended gasoline.") (certain emphasis omitted; certain emphasis added))  And Defendants assert that since Sunoco's theory of infringement "pieces" the "initiation phase 'prior to blending' . . . together with the system once it begins blending[,]" (D.I. 414 at 5-6), Sunoco's infringement read must fail as a matter of law.

Yet claim 3 of the '948 patent (and the other relevant system claims) contains no requirement that the system must be configured such that the analyzer can *only* determine the vapor pressure of the gasoline *while the injector valve is actually discharging butane into gasoline* (i.e., blending).  Just because the claims recite systems "for blending butane with gasoline" does not mean that, in order to infringe, every piece of equipment making up such a system (or every piece of equipment referred to in the claim limitations) must be capable of operating only while actual blending is occurring.  Defendants never expressly explain—e.g., by way of a detailed analysis of the claim language—why the asserted system claims would actually require this.  Nor do they point the Court to any caselaw that stands for such a proposition.

Perhaps Defendants' position would be more persuasive if, for example, certain components of Defendants' systems that Sunoco identifies as reading on particular claim limitations had absolutely nothing to do with blending butane into gasoline.  But that is not the

7

case here. The parts of Defendants' systems that are said by Sunoco to perform the "initiation phase" articulated in the claims are necessary in order for Defendants' systems to actually blend butane. (*See* D.I. 382 at 8-9; Tr. at 169 ("How did [Defendants' systems] start to blend if they weren't figuring out what is the amount [of butane] we need to add in by testing the gasoline?"); Tr. at 171) Indeed, Defendants' own documents describe this phase as part of the "[b]lending [p]rocess" and the "[b]lending [m]ethod[.]" (D.I. 385, ex. 19 at MAG-SUN_00040630 (cited in D.I. 382 at 9))

With Defendants' arguments thus based on claim limitations that do not exist in the relevant system claims, the Court cannot recommend grant of summary judgment of noninfringement with respect to those claims.

The same is true with respect to the relevant method claims. The claims recite a method for blending gasoline and butane that includes, in part: (1) receiving a vapor pressure of unblended gasoline at a processor; (2) using that processor to calculate a blend ratio; (3) blending at the blend ratio; and (4) (for some claims) receiving a vapor pressure of the blended gasoline and butane at the processor. (D.I. 405 at 14; D.I. 414 at 3-4 & n.4) "Infringement of a method claim occurs when a party performs all of the steps of the process." *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) (internal quotation marks and citation omitted); *see also Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001). Defendants' systems perform steps (1) and (2) during the "initiation" phase or when they are not injecting butane, and they additionally perform steps (3) and (4) when they are injecting butane. (D.I. 414 at 4) Defendants assert that, in light of this, their systems do not infringe these claims as a matter of law because:

> Never do Defendants perform *every step* of the method: either they perform a method to initiate the system where they measure the "unblended" gasoline vapor pressure and calculate a blend ratio (but do not blend butane and/or receive a vapor pressure of the blend) *or* they perform a method of blending in which they blend butane into gasoline and measure the blended gasoline vapor pressure (but do not receive the vapor pressure of the unblended gasoline and/or calculate a blend ratio).

(D.I. 414 at 4 (certain emphasis in original); *see also* D.I. 382 at 16)

But here again, Defendants do not point to any steps that actually require blending *simultaneously* as the vapor pressure of unblended gasoline is being measured. (D.I. 405 at 15) Instead, "measuring the gasoline vapor pressure and calculating a blend ratio from the measurement are part of the method for blending[,]" but that does not mean that these steps have to occur at the same time as actual blending. (*Id.* at 8; *see also id.* at 9 ("[R]eceiving a gasoline vapor pressure, calculating a blend ratio, and blending at the blend ratio are all steps in the blending method."))[9] Therefore, in the absence of such a claim limitation, Defendants' position—i.e., that that they cannot perform all steps of the claimed methods since their systems sample the unblended gasoline before (and thus not at the same time as) the systems are actually blending—is fundamentally flawed.[10]

---

[9] This understanding of the claims is supported by the '302 patent specification, as Sunoco points out, (D.I. 405 at 15), in that the specification explains that "[t]o calculate the blend ratio one must *first have knowledge* of the respective vapor pressures of the gasoline and butane streams" and "the vapor pressures of the gasoline and butane streams are preferably measured *in order to generate the data used in the blending ratio calculation*[,]" ('302 patent, col. 7:15-19 (emphasis added)). Thus, the patent explains that a method for blending butane and gasoline would *first* entail determining the vapor pressure of gasoline, for example, in order to determine the blend ratio that will *subsequently* be used for actual blending. (D.I. 405 at 16)

[10] Defendants acknowledge that there are no cases "directly on this point" but contend that the "closest case" is *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325 (Fed. Cir. 2008). (Tr. at 175) In that case, however, the relevant claims required the step of "starting a formatting process for said optical disc as a background process," and the United States Court of Appeals for the Federal Circuit affirmed the district court's grant of summary judgment of

The Court thus recommends that Defendants' Motion be denied with respect to the relevant method claims.

## IV. CONCLUSION

For all of the above reasons, the Court recommends that the District Court DENY Defendants' Motion for Summary Judgment as it relates to noninfringement.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **February 24, 2020** for review by the Court,

---

noninfringement of these claims where the plaintiff "presented no evidence that any process started as a background process." 550 F.3d at 1333-34. Here, however, for purposes of their Motion, Defendants are not arguing that their systems simply do not practice at all a step of the claimed methods. Rather, for purposes of the Motion, they accept that their systems individually practice all of the recited steps, but they assert that they nevertheless do not infringe because certain steps have to be performed at the same time (and their systems are not configured to perform such steps simultaneously). Yet the claims do not require that the system has "to be able to do everything at the same time." (Tr. at 173-74)

along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: February 19, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE