**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-1390-LPS-CJB |
| | : | |
| POWDER SPRINGS LOGISTICS, LLC, and MAGELLAN MIDSTREAM PARTNERS, L.P., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM ORDER</u>

WHEREAS, on July 26, 2019, Magistrate Judge Burke issued a Report and Recommendation ("July Report") (D.I. 321) recommending a construction for the claim term "blending unit;"[1]

WHEREAS, on August 9, 2019, Plaintiff Sunoco Partners Marketing & Terminals L.P. ("Sunoco") filed objections to the July Report ("July Objections" or "July Objs.") (D.I. 323), specifically objecting that Judge Burke misunderstood the parties' dispute, misinterpreted the specification, excluded the specifications' preferred embodiments, and ignored other claims and claim limitations that supported Sunoco's construction;

WHEREAS, on August 23, 2019, Defendants Powder Stream Logistics, LLC ("Powder Stream") and Magellan Midstream Partners, L.P.'s ("Magellan")

---

[1] This term appears in claims 1, 17, and 36 of U.S. Patent No. 6,679,302 ("the '302 patent") and claims 1 and 7 of U.S. Patent No. 9,207,686 ("the '686 patent").

1

(collectively, "Defendants") filed a response to Sunoco's July Objections ("July Response" or "July Resp.") (D.I. 329);

WHEREAS, on August 28, 2019, Judge Burke issued a Report and Recommendation ("August 28 Report") (D.I. 331) recommending constructions for the claim term "vapor pressure,"[2] other claim terms related to "vapor pressure,"[3] and the claim terms "optimizing"[4] and "simplifying;"[5]

WHEREAS, on September 11, 2019, Defendants filed objections to the August 28 Report ("August 28 Objections" or "Aug. 28 Objs.") (D.I. 338), specifically objecting that Judge Burke failed to adopt the inventors' express definition of the term "vapor pressure," failed to construe the other terms related to "vapor pressure" with language that "require[s] actual measurement," and did not consider Defendants' indefiniteness arguments with respect to the terms "optimizing" and "simplifying;"

WHEREAS, on September 25, 2019, Sunoco filed a response to Defendants' August 28 Objections ("August 28 Response" or "Aug. 28 Resp.") (D.I. 360);

WHEREAS, Sunoco no longer asserts claim 18 of the '302 patent (*see* Aug. 28 Resp. at 9 n.4), mooting Defendants' August 28 Objections with respect to Judge

---

[2] This term appears in claims 3, 13-17, 20-22, 34, 38, 40, and 41 of the '302 patent; claims 6, 7, 9, 14-15, 17-18, 22, 24-25, 29, and 31 of U.S. Patent No. 7,032,629 ("the '629 patent"); claims 1, 7-9, 12, and 16 of the '686 patent; claims 1-3 and 7 of U.S. Patent No. 9,494,948 ("the '948 patent"); and claims 4 and 12 of U.S. Patent No. 9,606,548 ("the '548 patent").

[3] These terms appear in claims 14, 16, 21, 34, and 41 of the '302 patent; claims 1, 5, 7, and 16 of the '686 patent; and claims 7, 15, 17, 24, and 31 of the '629 patent.

[4] This term appears in the preamble of claim 18 of the '302 patent.

[5] This term appears in the preamble of claim 23 of the '302 patent.

Burke's recommendation as to the claim term "optimizing;"

WHEREAS, on March 31, 2020, the Court held that claim 23 of the '302 patent was directed to nonpatentable subject matter and invalid (*see* D.I. 523 at 4), mooting Judge Burke's recommendation with respect to the term "simplifying;"

WHEREAS, on August 29, 2019, Judge Burke issued a Report and Recommendation ("August 29 Report") (D.I. 332) recommending a construction for the claim term "gasoline;"[6]

WHEREAS, on September 12, 2019, Sunoco filed objections to the August 29 Report ("August 29 Objections" or "Aug. 29 Objs.") (D.I. 340), specifically objecting that Judge Burke ignored the "settled, ordinary and customary meaning" of the term "gasoline," improperly interpreted the intrinsic evidence, and proposed an "unworkable" construction of "gasoline;"

WHEREAS, on September 26, 2019, Defendants filed a response to Sunoco's August 29 Objections ("August 29 Resp." or "Aug. 29 Resp.") (D.I. 362);

WHEREAS, on February 7, 2020, Sunoco informed the Court of a post-trial opinion issued in the Northern District of Illinois in a case (*Sunoco Partners Marketing & Terminals, L.P. v. U.S. Venture*, No. 1:15-CV-08178 (N.D. Ill. Jan. 29, 2020)) involving the '302, '629, '948, and '548 patents, which, among other things, applied an agreed-upon construction in that case of "gasoline" as meaning "various types of refined petroleum that are used as fuel" (D.I. 482 at 1-3);

---

[6] This term appears in claims 1, 12, 18, 23, 27, 36 and 39 of the '302 patent; claims 5, 13, 17, 24, and 31 of the '629 patent; claims 1 and 7 of the '686 patent; claims 1 and 7 of the '948 patent; and claims 1, 6, 9, and 14 of the '548 patent.

WHEREAS, on February 11, 2020, Defendants responded to Sunoco's February 7 letter, explaining, as pertinent in this Memorandum Order – and as the Court agrees – that the Illinois decision "was based on a different claim construction for gasoline – that both parties agreed to" and, hence, is not relevant to the claim construction disputes this Court is presently considering (D.I. 488 at 4);

WHEREAS, on April 2, 2020, Defendants wrote to advise the Court that the Patent Trial and Appeal Board ("Board") had found all claims of the '948 and '548 patents as invalid due to anticipation or obviousness, and pointing out in particular that: (i) "the Board adopted Defendants' position on the meaning of 'gasoline,' consistent with the [August 29 Report], that the term includes gasoline streams within a refinery;" and (ii) "consistent with Defendants' objections to the claim construction R&R regarding 'vapor pressure' [i.e., the August 28 Report] . . . the Board held that the ['302] patent expresses a clear and unmistakable intent to encompass within the meaning of the term 'vapor pressure' not only Reid vapor pressure, but also other measures of vapor pressure such as true vapor pressure and vapor/liquid ratio" (D.I. 524 at 1, 4) (internal quotation marks omitted);

WHEREAS, on April 6, 2020, Sunoco responded to Defendants' April 2 letter, arguing among other things that the Board's decisions "have no legal effect on this Court" and "Sunoco expects to reverse these decisions" (D.I. 525);

WHEREAS, the Court has considered the parties' claim construction disputes *de novo*, *see St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

NOW, THEREFORE, IT IS HEREBY ORDERED that, EXCEPT as noted in paragraph 3 below: (a) the parties' various Objections are OVERRULED; (b) the July

Report, August 28 Report, and August 29 Reports are ADOPTED; and (c) the claim terms addressed in the foregoing Reports are CONSTRUED as Judge Burke has recommended.

1.      The Court agrees with Judge Burke that the claim term "blending unit" should be construed as "any conventional apparatus that achieves blending of two or more separate streams into one." (July Report at 12)  The specification unambiguously states that "[t]he blending unit can be any conventional apparatus that achieves blending of two or more separate streams into one." '302 patent at 5:29-30.  Sunoco has shown that the claimed blending unit also includes blending units that are capable of automated blending (and the Court's construction does not exclude such embodiments), but Sunoco has not demonstrated that "the blending unit ***must be*** (1) capable of receiving communications from a unit transmitting the desired blend ration and (2) able to execute that blend ratio."[7]  (D.I. 176 at 7) (emphasis added)  Sunoco's proposed construction would exclude the '302 patent's expressly-identified non-automated blending unit embodiments, such as a "conventional Y-type or T-type juncture capable of joining two fluid flows into one," '302 patent at 3:21-23; *see also generally Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1280 (Fed. Cir. 2017) (explaining courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification").  In adopting the recommended construction, the Court agrees with Defendants (and is not persuaded by Sunoco's

---

[7] Sunoco now insists that its construction "does not ***require*** an automated blending unit," but Sunoco argued in its opening brief and at the Markman hearing that the blending unit must be capable of automated blending.  (D.I. 176 at 7); (D.I. 315 at 93)  Because "issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived," the Court will disregard these arguments. *See Bukovinsky v. Pennsylvania*, 455 Fed. App'x 163, 165-66 (3d Cir. 2011).

seemingly unfounded fear to the contrary[8]) that it encompasses automated **and** non-automated devices, as both types of devices may be used as the claimed blending unit.  (*See, e.g.*, July Resp. at 2) ("Defendants' position has been clear and consistent: a blending unit can be any device – from a simple Y junction to a fully automated injector system – that blends two or more separate streams into one.")

2.      The Court agrees with Judge Burke that the term "vapor pressure" should be construed as "pressure exerted by the vapor of a liquid when in equilibrium with the liquid." (August 28 Report at 10)  While Defendants' proposed construction conflates "vapor pressure" with "the volatility of gasoline or butane" and "vapor/liquid ratio," the '302 patent treats these concepts as distinct.  *See, e.g.,* '302 patent at 1:29-40, 44-48; 3:23-31; 5:53-58; 11:12-17; *see also* August 28 Report at 7-8.  Judge Burke did not ignore Defendants' lexicography argument; he considered it but concluded, correctly, that the intrinsic record, taken in its entirety, does not support equating "vapor pressure" with "vapor/liquid ratio."  (August 28 Report at 5-6; *see also* Aug. 28 Resp. at 3 ("As the [August 28] R&R found, Defendants' argument is based on a single passage read in isolation, but when the entire intrinsic record is considered, the patentee did not expressly define 'vapor pressure' differently than its ordinary meaning."))  The Court also agrees with Judge Burke's recommendation to adopt the ASTM definition of "vapor pressure," which is similar to Defendants' description of "vapor pressure" as "the pressure exerted by vapor as it evaporates."  (*See* August 28 Report at 9)  The '302 patent specification (*see* 5:50-52, 6:30-55) provides that ASTM standards are used to measure the vapor pressure of gasoline, making such

---

[8] *See, e.g.*, July Objs. at 3, 6-7 ("[B]y defining 'blending unit' as "a conventional apparatus,' i.e., a non-automated mechanical junction, an automated unit is effectively excluded.").

standards "relevant in determining the meaning of the claim term" to a person of ordinary skill in the art, *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1337 (Fed. Cir. 2010).

3.       With respect to the other terms related to "vapor pressure," the Court agrees with the August 28 Report that the claims do not require actively sampling and measuring a "vapor pressure" or "volatility" of the individual gasoline and butane streams every time a "vapor pressure" or "volatility" is referenced in the claims.  (August 28 Report at 12)  As the August 28 Report explains, in contrast to other claims that specify the manner in which these measurements must be taken, the claims featuring the other "vapor pressure" terms do not include these required limitations.  (*See id.* at 12-13) (citing '686 patent at 15:62-16:3, 16:5; '302 patent at 15:56-59, 15:66-16:15)  Further, as the August 28 Report (at 13) correctly observes, claim 27 of the '302 patent "allow[s] for a known or inherent value to be used for such volatility measurements . . . instead of requiring that a value be taken as a result of an active sampling and measurement of the respective streams."  However, the Court agrees with Defendants that for what Defendants characterize as the "feedforward claims" (e.g., '302 patent claim 27), practicing such claims requires knowing (whether it be through, for example, actual measurement, through looking it up in a table or other resource, or through knowledge of an inherent characteristic) the vapor pressure of the gasoline or butane "to be blended."  (Aug. 28 Objs. at 6-8)  The Court's limited agreement with this one portion of Defendants' August 28 Objections (to which the parties will have to conform their arguments and evidence) does not appear to require a claim construction other than the "plain and ordinary" meaning recommended by Judge Burke.  But if the parties believe a construction is now required, they will have to advise the Court.

4.       Finally, the Court agrees with Judge Burke that the claim term "gasoline" should receive its plain and ordinary meaning, which "can refer to gasoline streams that are

found, *inter alia*, in a refinery." (August 29 Report at 4, 14) Sunoco's proposed construction, which would limit the meaning of "gasoline" to "various types of refined petroleum that are used as fuel," is inconsistent with intrinsic evidence, which shows the patentees did not use the term "gasoline" to ***exclude*** gasoline streams in a refinery. (*See, e.g.*, August 29 Report at 4-7; '302 patent at 1:66-2:1 ("The first opportunity to blend butane with gasoline is at the refinery, before pipelines transfer the gasoline to tank farms."), 2:8, 11-12, 24 ("[T]he refinery can only modify the gasoline . . . ."); '548 patent at 2:40-49 (describing prior art patent as "a system for blending butane and gasoline at a petroleum refinery"))[9] Sunoco relies on what it calls "intrinsic EPA regulations and ASTM standards" (Aug. 29 Objs. at 3-4), but Sunoco fails to show that the provisions on which it relies are incorporated into or even cited in the representative patents (*see* Aug. 29 Resp. at 6). Sunoco's arguments trying to shift the burden on lexicography and disavowal of claim scope to Defendants, and based on deposition testimony of Defendants' expert, Dr. Nikolaou (*see* Aug. 29 Objs. at 7-10), were not presented to Judge Burke and, anyway, are unavailing, for the reasons explained by Defendants (see Aug. 29 Resp. at 5-6, 9-10).

May 11, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[9] The parties appear to agree that "gasoline" does not refer to completely unrefined crude oil as it exists prior to or upon entering a refinery. (*See* August 29 Report at 9 n.6)