IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., : : : Plaintiff, : : v. : : POWDER SPRINGS LOGISTICS, LLC, and : MAGELLAN MIDSTREAM PARTNERS, L.P., : : Defendants. : | C.A. No. 17-1390-LPS-CJB |

# MEMORANDUM ORDER

WHEREAS, on January 16, 2020, Magistrate Judge Burke issued a Report and Recommendation ("January Report" or "Jan. Rep.") (D.I. 447), recommending that the Court grant-in-part and deny-in-part Plaintiff Sunoco Partners Marketing & Terminals L.P.'s ("Sunoco") motion for partial summary judgment (D.I. 372);

WHEREAS, on January 28, 2020, Sunoco filed objections to the January Report ("Sunoco January Objections") (D.I. 461), specifically objecting that Judge Burke erred in recommending denying summary judgment that Defendants Powder Stream Logistics, LLC ("Powder Stream") and Magellan Midstream Partners, L.P.'s ("Magellan" and, together with Powder Stream, "Defendants") accused systems infringe claims 3 and 8 of United States Patent No. 9,606,548 (the "'548 patent");

WHEREAS, on February 10, 2020, Defendants filed a response to Sunoco's January Objections ("Defendants January Response") ("D.I. 484");

1

WHEREAS, on January 28, 2020, Magellan filed objections to the Jan. 16 Report ("Magellan January Objections") (D.I. 460), specifically objecting that Judge Burke erred in recommending granting Sunoco's motion for partial summary judgment that accused Magellan systems infringe claim 3 of United States Patent No. 6,679,302 (the "'302 patent");

WHEREAS, on February 10, 2020, Sunoco filed a response to Magellan's January Objections ("Sunoco January Response");

WHEREAS, on February 6, 2020, Judge Burke issued a Report & Recommendation ("February Report" or "Feb. Rep.") (D.I. 477), recommending that the Court grant-in-part and deny-in-part Sunoco's motion for summary judgment that certain references do not qualify as prior art (D.I. 377);

WHEREAS, on February 20, 2020, Defendants filed objections to the February Report ("Defendants February Objections") (D.I. 499), specifically objecting that a fact dispute existed as to whether the TransMontaigne system ("TransMontaigne") was publicly accessible;

WHEREAS, on March 5, 2020, Sunoco filed a response to Defendants February Objections ("Sunoco February Response") (D.I. 511);

WHEREAS, on February 20, 2020, Sunoco filed objections to the February Report ("Sunoco February Objections") (D.I. 500), specifically objecting that there was no evidence that Williams took steps to make the automated system publicly known;

WHEREAS, on March 5, 2020, Defendants filed a response to Sunoco's February Objections ("Defendants February Response") (D.I. 510);

2

WHEREAS, on February 19, 2020, Judge Burke issued a Report and Recommendation ("February Report II" or "Feb. Rep. II") (D.I. 495), recommending that the Court deny Defendants' motion for summary judgment of noninfringement (D.I. 381);

WHEREAS, on March 4, 2020, Defendants filed objections to February Report II ("Defendants Objections to February Report II") (D.I. 509), specifically objecting that that Defendants' systems could not infringe the asserted claims as a matter of law;

WHEREAS, on March 18, 2020, Sunoco filed a response to Defendants Objections to February Report II ("Sunoco Response to February Report II Objections") (D.I. 518);

WHEREAS, on February 27, 2020, Judge Burke issued a Report and Recommendation ("February Report III" or "Feb. Rep. III") (D.I. 506), recommending that the Court deny Defendants' motion for summary judgment (D.I. 381) that certain patent claims asserted by Sunoco are invalid as anticipated and/or obvious;

WHEREAS, on March 12, 2020, Defendants filed objections to February Report III ("Defendants Objections to February Report III") (D.I. 516), specifically objecting that certain of Judge Burke's conclusions were incorrect under the proper construction of certain claim terms;

WHEREAS, on March 26, 2020, Sunoco filed a response to Defendants Objections to February Report III ("Sunoco Response to February Report III Objections") (D.I. 521);

WHEREAS, on March 13, 2020, Judge Burke issued a Report and Recommendation ("March Report" or "Mar. Rep.") (D.I. 517), recommending that the

Court deny Defendants' motion for summary judgment that certain Sunoco patents are not entitled to the priority date of the '302 patent (D.I. 381);

WHEREAS, on March 27, 2020, Defendants filed objections to the March Report ("Defendants March Objections") (D.I. 522), specifically objecting that Judge Burke applied the wrong legal test and ignored the '302 patent's disclosures;

WHEREAS, on April 10, 2020, Sunoco filed a response to Defendants March Objections ("Sunoco March Response") (D.I. 527);

WHEREAS, on January 3, 2020, Judge Burke issued a memorandum order granting Defendants' motion to exclude the damages opinions of Dr. Keith R. Ugone with leave to file a supplemental report (D.I. 442) ("January Ugone Order" or "Jan Ord.");

WHEREAS, on January 17, 2020, Sunoco filed objections to the January Ugone Order ("Sunoco Ugone Objections") (D.I. 448), specifically objecting that Judge Burke applied the wrong legal standard;

WHEREAS, on January 30, 2020, Defendants filed a response to Sunoco's Ugone Objections ("Defendants Ugone Response") (D.I. 465);

WHEREAS, on January 17, 2020, Defendants filed objections to the January Ugone Order ("Defendants Ugone Objections") (D.I. 449), specifically objecting that Judge Burke erred in granting Sunoco leave to file a supplemental report;

WHEREAS, on January 30, 2020, Sunoco filed a response to Defendants Ugone Objections ("Sunoco Ugone Response");

4

WHEREAS, on January 27, 2020, Defendants filed a motion to exclude Dr. Ugone's supplemental damages report ("Motion to Exclude") (D.I. 459), which has been fully briefed (*see, e.g.*, D.I. 459 Ex. 2; D.I. 476; D.I. 478);

WHEREAS, on January 24, 2020, Sunoco filed a motion to strike certain of Defendants' pretrial disclosures ("Motion to Strike") (D.I. 457), which has been fully briefed (*see, e.g.*, D.I. 458, 464, 471);

WHEREAS, on April 17, 2020, Defendants filed a motion to stay the litigation with respect to U.S. Patent Nos. 9,494,948 (the "'948 patent") and 9,606,548 (the "'548 patent") ("Motion to Stay") (D.I. 530), which has been fully briefed (*see, e.g.*, D.I. 531, 534, 540);

WHEREAS, on May 13, 2020, the Court held a hearing by teleconference to hear oral argument on the many motions and matters addressed in this Memorandum Order (*see* Transcript ("Tr.") (D.I. 545));

WHEREAS, the Court has reviewed *de novo* the portions of Judge Burke's Reports addressing dispositive issues,[1] *see Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

WHEREAS, the Court has reviewed Judge Burke's January Ugone Order, which resolves a nondispositive issue, under a "clearly erroneous and contrary to law" standard of review, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); *see also Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, 61 F. Supp. 3d 437, 441 (D. Del. 2014);

---

[1] January Report, February Report, February Report II, February Report III, and March Report. The Court adopts by reference the legal standards applicable to summary judgment motions articulated in *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 2020 WL 1150135, at *1 n.1 (D. Del. Jan. 14, 2020).

WHEREAS, expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case," Fed. R. Evid. 702(b)-(d);[2]

NOW, THEREFORE, IT IS HEREBY ORDERED that, as more fully described below, (i) the January Report (D.I. 447) is ADOPTED in part and REJECTED in part; (ii) the February Report (D.I. 477) is ADOPTED in part and REJECTED in part; (iii) February Report II (D.I. 495) is ADOPTED; (iv) February Report III (D.I. 506) is ADOPTED; (v) the March Report (D.I. 517) is ADOPTED; (vi) Sunoco's motion for summary judgment of patent infringement (D.I. 372) is DENIED; (vii) Sunoco's motion for summary judgment regarding certain prior art (D.I. 377) is DENIED; (viii) Magellan's motion for summary judgment of non-infringement and invalidity (D.I. 381) is DENIED; (ix) Defendants' original motion to exclude Dr. Ugone (D.I. 375) remains GRANTED, as does leave to Sunoco to have filed a supplemental report – the Sunoco Ugone Objections and Defendants Ugone Objections are DISMISSED AS MOOT; (x) Defendants' Motion to Exclude (D.I. 459) is GRANTED and Dr. Ugone's supplemental report is STRICKEN; (xi) Defendants' Motion to Strike (D.I. 457) is DENIED; and (xii) Defendants' Motion to Stay (D.I. 530) is DENIED.

**January Report**

The Sunoco January Objections are OVERRULED.

---

[2] The Court adopts by reference the legal standards applicable to motions to exclude expert testimony articulated in *Wasica*, 2020 WL 1150135, at *1 n.2.

Sunoco argues there is no genuine dispute of fact that Defendants' accused systems practice the "processor" limitation of the '548 patent, as the accused systems use "PLCs" that perform every limitation of the claimed "processor." (D.I. 461 at 2) Like Judge Burke, however, the Court concludes that a reasonable juror could find that the accused systems' PLCs do not practice at least one of these limitations: "output[ting] a signal representative of the adjustment to the injection device." '548 pat. at 17:19-28, 48-56. Sunoco's expert, Dr. Kytomaa, stated multiple opinions that a reasonable jury could find to be inconsistent and noncredible, resulting in a record that does not justify a grant of summary judgment of infringement. (*See* D.I. 400 at 12; D.I. 447 at 16; *see also* Jan. Rep. at 17 (citing D.I. 401 Ex. 3 at ¶¶ 765, 770, 779)) Also, Defendants' expert, Dr. Nikolaou, provided opinions a jury could credit and, from them, find noninfringement. (*See, e.g.*, D.I. 402 Ex. A at ¶¶ 224, 248-49) Thus, the Court denies Sunoco's motion for summary judgment that the accused systems infringe claims 3 and 8 of the '548 patent.

The Magellan January Objections are SUSTAINED.

Defendants' expert, Dr. Nikolaou, did not improperly reconstrue the claim term "fluid connection." Instead, he permissibly applied the Court's construction of this term. There is a genuine dispute of material fact as to whether the accused systems practice the "dispensing unit . . . in fluid connection with blending unit" and "rack" limitations of claim 3 of the '302 patent, given the existence of a tank between the blending system and the rack. (*See* D.I. 460 at 2-4; *see also* D.I. 402 Ex. A at ¶¶ 38-43) Thus, the Court denies Sunoco's motion for summary judgment that the accused systems infringe claim 3 of the '302 patent.

7

**February Report**

  Defendants February Objections are SUSTAINED.

  The opinions of Defendants' experts Dr. Nikolaou – that a person of ordinary skill in the art ("POSA") who viewed the publicly-accessible TransMontaigne equipment would "have understood how the blending system operated at the level required by the claims of the asserted patents" – and Dr. Mongold – that "most people in the industry would be able to tell" how the system worked – are sufficient, if credited by the jury (as it will be free reasonably to do), to create a genuine dispute of material fact.  (*See* D.I. 499 at 4-6 (citing D.I. 399 Ex. B at ¶ 106; D.I. 398 Ex. 36 at 250); *see also Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015) ("[A] reference can anticipate a claim even if it d[oes] not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination.") (internal quotation marks omitted))  Thus, the Court denies Sunoco's motion for summary judgment that TransMontaigne is not prior art.

  Sunoco's February Objections are OVERRULED.

  The record reveals a genuine dispute of material fact as to whether Defendants suppressed or concealed the OKC-Reno system.  A reasonable juror could find that the inventors of OKC-Reno did not intentionally suppress or conceal OKC-Reno, based on evidence including that (1) the inventor of the Sunoco patents sent his contractor to visit the Tulsa system, that was similar in all material respects to OKC-Reno; (2) Magellan's predecessor allowed the contractor to tour the Tulsa facility; and (3) the contractor's visit led to the creation of Sunoco's rack system.  (D.I. 510 at 3-4) (citing D.I. 397 at 22; D.I. 398 Ex. 28 at 136-42, 144-45, 150-52; D.I. 398 Ex. 26 at 429-30; D.I. 398 Ex. 29 at 47-48)  Viewed in the light most favorable to

Defendants, a reasonable juror could find from this evidence that Magellan's predecessor did not conceal the Tulsa system's blending system and, therefore, likewise did not conceal the materially-similar OKC-Reno blending system. This same evidence, viewed in the same most favorable light to Defendants, could likewise lead a reasonable juror to find that Magellan's predecessor made the OKC-Reno blending system publicly accessible. Thus, the Court denies Sunoco's motion for summary judgment that OKC-Reno is not prior art.

**February Report II**

Defendants Objections to February Report II are OVERRULED.

Defendants argue their systems are configured in either a "non-blending" or "blending" mode and that neither mode practices all of the asserted claim limitations. (D.I. 509 at 7) But a reasonable juror, taking the evidence in the light most favorable to Sunoco, could find there is only one configuration for Defendants' accused systems: a "normal operation mode" that practices all the limitations of the asserted claims. (D.I. 518 at 2-3) (citing D.I. 382 at 8-9) Further, while Defendants fault February Report II for "constru[ing] the claim language to determine the claim scope" (D.I. 509 at 9), they do not identify any claim terms that Judge Burke purportedly construed (nor persuade the Court that he did so incorrectly). Thus, the Court denies Defendants' motion for summary judgment of noninfringement.

**February Report III**

Defendants Objections to February Report III are OVERRULED.

The record reveals a genuine dispute of material fact as to whether Haas anticipates claims 3 and 8 of the '548 patent under the construction of "gasoline" adopted by the Court. (*See* D.I. 539 at 7-8) The Court agrees with Judge Burke's explanation as to how a reasonable juror, taking the evidence in the light most favorable to Sunoco, could fail to agree with

9

Defendants that Haas satisfies the claim limitation "a volatility measurement device in communication with the gasoline stream." (Feb. Rep. III at 8)  Defendants' expert, Dr. Nikolaou, opined (in the context of a related patent) that (1) the term "gasoline stream" referred to "unblended gasoline" and (2) Haas's "vapor-liquid analyzer . . . does not receive or use a measurement of the vapor pressure of the *gasoline to be blended*." (D.I. 406 Ex. B at ¶ 617) (emphasis added)  While Defendants argue these opinions do not apply to the '548 patent claims, the law permits the type of reasoning proffered by Sunoco, because "where multiple patents derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.,* 811 F.3d 1359, 1369 (Fed. Cir. 2016).  Moreover, Defendants' obviousness contentions regarding claims 3 and 7 of the '948 patent and claim 3 of the '302 patent depend on a construction of "vapor pressure" which the Court has rejected.  (*See* D.I. 539 at 6-7)  Thus, the Court denies Defendants' motion for summary judgment of invalidity.

**March Report**

Defendants March Objections are OVERRULED.

Defendants contend that Judge Burke applied the "wrong test" for determining the priority date of the continuation-in-part patents ("CIP patents") by "focus[ing] on whether the '302 patent *excludes* pipeline blending." (D.I. 522 at 5)  The Court disagrees.  Judge Burke cited sections of the '302 patent specification from which a reasonable juror could find that the '302 patent explicitly discloses pipeline blending.  (Mar. Rep. at 5) (citing '302 pat. at 2:10-12, 5:35-38)  While Defendants argue that the '302 patent does not disclose what they call "feedback blending" – "where the blending is *controlled* by a downstream analyzer" (D.I. 522 at 8) – a reasonable juror could find that the '302 patent provides a "system" that "can be modified to

periodically sample the RVP of the *resultant blend* for quality control." '302 pat. at 7:11-14 (emphasis added). Defendants insist this language does not show that the system "use[s] that measurement to adjust the blend ratio or control blending" (D.I. 422 at 9), but a reasonable juror, relying on the testimony of Sunoco expert Dr. Kytomaa, could reasonably find otherwise (*see* Mar. Rep. at 10). Thus, the Court denies Defendants' motion for summary judgment.

**Dr. Ugone's Damages Opinions**

The Court will strike Dr. Ugone's damages opinions.[3]

The entire market value analysis in Dr. Ugone's supplemental report is unreliable because he does not identify reliable evidence to allow Sunoco to "meet its burden to show that the patented feature was the *sole driver* of consumer demand, i.e., that it alone motivated consumers to buy the accused the products or substantially creates the value of the component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (emphasis added). Rather, Dr. Ugone simply speculates that, for instance, Sunoco's patents led Magellan and Philips 66 to become Sunoco customers. (*See* D.I. 476 at 13-16) This is insufficient. *See generally LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("[T]he patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and *such evidence must be reliable and tangible, and not conjectural or speculative*.") (internal quotation marks omitted; emphasis added). The Court agrees with the following characterization by Defendants:

---

[3] In doing so, the Court adopts and incorporates by reference Judge Burke's analysis in his January Ugone Order. The Court also finds persuasive the analysis in *Sunoco Partnership Marketing & Terminals L.P. v. U.S. Venture, Inc. et al.*, No. 15 C 8178 (N.D. Ill. Jan. 29, 2020), a case in which Judge Pallmeyer criticized a similar damages analysis offered by Sunoco through the same Dr. Ugone. (*See* D.I. 482 Ex. 1 at 35-38)

> Despite conceding that the non-patented services enable Sunoco's licensees to not only operate the system at all, but to maximize blending, Dr. Ugone ascribes the *entire value* of the Butane Supply Agreements to only one of the many components – the royalty-free patent license. And while he opines, based on hearsay and speculation, that the patents were a factor for some customers, he fails to show that the patents *alone* are what motivated consumers to enter into the Butane Supply Agreements.

(D.I. 459 at 2)

The Federal Circuit has rejected Sunoco's contention that just because the non-patented features at issue here are not sold separately from the patented features it follows that the "sole driver" requirement is satisfied. *See LaserDynamics*, 694 F.3d at 68 ("It is not enough to merely show that the [patented] method is viewed as valuable, important, or even essential to the use of the [accused product]. Nor is it enough to show that [the accused product] without [the patented] method would be commercially unviable . . . ."). Sunoco's evidence of an established licensing program, and insistence that all of the non-patented features of its services have no value outside of the patented invention, do not render Dr. Ugone's analysis consistent with governing law. *See id.* ("[P]roof that consumers would not want a laptop computer without such features is not tantamount to proof that any one of those features alone drives the market for laptop computers."). The purported lack of evidence that any entity took a license from Sunoco due even in part to the non-patented features (*see* Tr. at 15-16)[4] does not (even if true) help Sunoco satisfy *its* burden.

Nor has Sunoco adduced evidence to meet its burden to demonstrate that the patented features "substantially create[] the value of the component parts," especially given the

---

[4] *See also generally* D.I. 476 at 8 (Sunoco suggesting "if there was a demand for the services offered by Sunoco separate and apart from the demand for the patents-in-suit, then one would expect Sunoco to have executed some number of butane supply agreements relating to non-patented systems (e.g., manual blending systems or services a la carte").

12

undisputed evidence that Sunoco's services are valued for their non-patented features, such as their expertise and algorithm. (*See, e.g.*, D.I. 380 Ex. 9 (Colella Tr.) at 536-37 ("[W]e have the supply and the logistics and the know-how, to enable us to be the supplier [of butane]. And most of our blend partners recognize our expertise in this area and choose to use us as their supplier."); D.I. 380 Ex. 12 (Myers Tr.) at 140-41 (stating belief that Sunoco's proprietary blend equation had role in delivering results to customers and "the results of the blending of those algorithms, I think was the selling point")) In addition to the fact evidence showing there is value to Sunoco's non-patented features, Dr. Ugone also recognized in formulating his expert opinions that Sunoco's algorithm and software are necessary and valuable components to what Sunoco includes in its Butane Supply Agreements ("BSAs") which form the basis for his opinions. (*See, e.g.*, D.I. 459-2 Ex. 1 at ¶¶ 5(b), 32(b))

Dr. Ugone's apportionment analysis is also unreliable. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[T]he patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . .") (internal quotation marks omitted). While Sunoco emphasizes that Dr. Ugone analyzed the value of supplying butane and hedging (D.I. 476 at 18-19), he did not analyze the value of other non-patented features of the BSAs, including Sunoco's blending algorithm – a feature a Sunoco witness described (as noted above) as the "selling point" for Sunoco's products. (D.I. 459 Ex. 2 at 13-14) Sunoco attempts to justify this omission by arguing that the algorithm is "part of the patented system" (D.I. 476 at

17-18), but this is contradicted by Dr. Ugone's testimony that the algorithm is "proprietary and a Sunoco trade secret" (that is, *not* disclosed in a patent) (D.I. 459 Ex. 2 Ex. 1 at ¶ 5(b)(ii)).[5]

Finally, even assuming arguendo that Dr. Ugone is offering what Sunoco calls a "lost opportunity cost opinion," it, too, is unreliable because Dr. Ugone failed to apportion the value lost due to non-infringing manual blending (and, thus, failed to identify the value lost to infringing automated blending). (*See* D.I. 478 at 5) Further, for all the reasons already given, the Court is not persuaded by Sunoco's contention that Defendants' challenge to Dr. Ugone's purported explanation for why he concluded Sunoco's patents drive demand for the BSAs goes to the weight to be given to Dr. Ugone's analysis, as opposed to its admissibility under binding precedent.

The Court will not permit Sunoco to file yet another report from Dr. Ugone, attempting once again to overcome the deficiencies contained in two successive reports from Dr. Ugone. (*See, e.g.*, D.I. 459 at 14 (Defendants: "Again, despite the Court's warning in its prior order, Dr. Ugone simply did not undertake the necessary apportionment analysis."); *id.* at 15 (Defendants arguing that Sunoco's "continued refusal, without any justifiable, analytical basis, to account for the undisputed value of the non-patented features . . . shows that this strategy is not the result of inadvertence"))

Because the Court is striking Dr. Ugone's supplemental report, it is not necessary to resolve the parties' now-moot objections to the January Ugone Order.

---

[5] Further demonstrating that the algorithm is not part of the patent claims is Sunoco's counsel's refusal to agree that Sunoco would have to prove an accused infringer practices the algorithm in order to prove infringement. (*See* Tr. at 11-12)

**Defendants' Pretrial Disclosures**

Sunoco's Motion to Strike certain of Defendants' pretrial disclosures is denied. Instead, the parties are directed to meet and confer, particularly in light of today's rulings, and thereafter Defendants shall provide Sunoco with a reduced set of deposition designations, after which Sunoco shall identify its deposition counter-designations. In the joint status report the parties are being ordered to provide they shall (among other things) provide the Court with their proposed deadlines for the exchange of these updated disclosures.

**Defendants' Motion to Stay**

Defendants' Motion to Stay is based on the Patent Trial and Appeals Board's ("PTAB") Final Written Decision finding that the asserted claims of Sunoco's '948 and '548 patents are invalid. Defendants seek to stay all further proceedings with respect to the '948 and '548 patents until after completion of Sunoco's anticipated appeal of the PTAB's decision (such further proceedings being necessary only if the Court of Appeals at least partially modifies or reverses the PTAB). Defendants' Motion to Stay is denied.

In determining whether to stay litigation, courts typically consider (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See St. Clair Intellectual Prop. v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).

The Court is not persuaded that a stay will simplify the litigation, particularly given the overlapping issues between the claims with respect to which Defendants do not seek a stay and those of the '948 and '548 patents (issues of infringement and invalidity, for instance). (*See* Tr. at 58, 62-63) Other purported simplifications are now moot (because the Court has resolved all

15

of the parties' claim construction and summary judgment disputes, including those that may have been avoided had the requested stay been granted). The Court's strong desire to avoid a second trial is a related consideration, as the risk of a second trial is reduced by trying all patents-in-suit at the forthcoming trial.

The status of the litigation weighs heavily against the requested stay, as fact and expert discovery were completed months ago, all motions have been resolved, and trial is scheduled to begin in approximately six weeks.

Finally, Sunoco would suffer undue prejudice from a stay, which might eliminate Sunoco's opportunity to seek injunctive relief with respect to the '948 and '548 patents (which expire in February 2022). (D.I. 534 at 13-14) Additionally, Sunoco and Defendants appear to compete to some extent. (*See id*. at 15-16)

**Moving Forward**

A jury trial in this matter is currently scheduled to begin on July 20. Due to the coronavirus pandemic, no jury trial has been held in this District since March 19 and no new jury has been selected since March 9. Jury trials here are currently suspended through at least June 30. The District may yet make a decision to suspend jury trials for some or all of July or even later; of course, it also may decide not to do so.

As of today, the jury trial in this matter remains on the Court's calendar, and it remains the Court's hope that it may proceed as scheduled. But the Court will only move forward with a jury trial on July 20 if it can be done in a manner that protects the health and safety of all involved, including the jury, the larger community, and Court personnel, as well as the parties, their witnesses, and their attorneys.

The Court requires further input from the parties to determine how to proceed.

Therefore, the parties shall meet and confer and, no later than **June 11**, submit a joint status report, advising the Court of their views on, among other things: (i) whether they believe trial can and should proceed on July 20; (ii) whether they believe they have a right to a jury trial and, if so, whether they are willing to waive that right in favor of a bench trial; and (iii) whether, if the trial proceeds on July 20, any witnesses might request to appear by video or other remote technology rather than travel to the courtroom.

The Court will hold a status teleconference on **June 12 at 11:30 a.m.**  Participants (and any observers) shall dial in to 877-336-1829 and use the access code 1408971.

June 9, 2020  
Wilmington, Delaware

                        HONORABLE LEONARD P. STARK  
                        UNITED STATES DISTRICT JUDGE