# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | § § § | |
| Plaintiff, | § § | Civil Action No. 17-1390-LPS-CJB |
| v. | § § § | JURY TRIAL REQUESTED |
| POWDER SPRINGS LOGISTICS, LLC, AND MAGELLAN MIDSTREAM PARTNERS, L.P., | § § § § | ████████████ |
| Defendants. | § | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO DAMAGES

Dated: June 20, 2020

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Plaintiff Sunoco Partners
Marketing & Terminals, L.P.*

Of Counsel:
John Keville
Michelle Replogle
Richard McCarty
Michael Krill
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, Texas 77002
(713) 651-2600 (phone)
(713) 651-2700 (fax)

# **TABLE OF CONTENTS**

I.      Nature and Stage of the Proceedings ................................................................. 1

II.     Summary of the Argument............................................................................... 1

III.    Statement of Facts........................................................................................... 2

        A.      Sunoco's Acquisition of the Patents-in-Suit and Licensing Model ...................... 2

        B.      Sunoco Disclosed its Damages-Related Evidence and Witnesses in
                Discovery .............................................................................................. 3

IV.     Argument ....................................................................................................... 6

        A.      Summary Judgment of No Damages <u>Must Be Denied</u> When There is Fact
                Issue Regarding Whether the Patentee is Due Any Non-Zero Royalty................. 6

        B.      Sunoco Has Ample Admissible Evidence on Which to Base a Damages
                Award................................................................................................... 7

                1.      Defendants' expert's opinion alone creates a fact issue on
                        damages.................................................................................. 7

                2.      Sunoco's agreement with Texon creates a fact issue on damages............. 9

                3.      Sunoco's BSAs and witness testimony create a fact issue on
                        damages.................................................................................. 11

                4.      Defendants incorrectly argue Sunoco is precluded from asserting
                        BSAs are "comparable" licenses. .............................................. 15

                5.      The cases cited by Defendants are inapposite.............................. 17

                6.      Sunoco never "dropped" a lost blend opportunity theory....................... 20

        C.      Sunoco is Entitled to a Jury Trial..................................................... 21

V.      Conclusion ................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005) .................................................................22

*Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*,
   611 F.2d 296 (9th Cir. 1979) ...............................................................................23

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014).................................................................... *passim*

*AstraZeneca LP v. Tap Pharm. Prod., Inc.*,
   444 F. Supp. 2d 278 (D. Del. 2006)......................................................................22

*AVM Techs., LLC v. Intel Corp.*,
   927 F. Supp. 2d 139 (D. Del. 2013)......................................................................17

*Boston Sci. Corp. v. Johnson & Johnson*,
   550 F.Supp.2d 1102 (N.D. Cal. 2008) .............................................................18, 22

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015).......................................................................15, 16

*Design Strategies, Inc. v. Davis*,
   367 F. Supp. 2d 630 (S.D.N.Y. 2005)...................................................................22

*Donlin v. Philips Lighting N. Am. Corp.*,
   581 F.3d 73 (3d Cir. 2009)...................................................................................18

*Dow Chem. Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003)..........................................................................6, 12

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012)..............................................................................18

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)............................................................................16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)......................................................................18, 19

*Info-Hold, Inc. v. Muzak LLC*,
   783 F.3d 1365 (Fed. Cir. 2015)..................................................................... *passim*

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
   No. 11-3397, 2015 WL 12696109 (C.D. Cal. Nov. 5, 2015) ...............................................10

*Kramer v. Banc of Am. Sec., LLC*,
   355 F.3d 961 (7th Cir. 2004) ...............................................................................................23

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)..........................................................................................11, 16

*In re Lockwood*,
   50 F.3d 966 (Fed. Cir. 1995)......................................................................................1, 21, 22

*Mondis Tech. Ltd v. LG Elecs., Inc.*,
   No. CV 15-4431, 2020 WL 1933979 (D.N.J. Apr. 22, 2020) ................................8, 13, 16, 17

*Promega Corp. v. Life Techs. Corp.*,
   875 F.3d 651 (Fed. Cir. 2017).............................................................................................17

*Robocast, Inc. v. Apple Inc.*,
   39 F. Supp. 3d 552 (D. Del. 2014)........................................................................................8

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   No. CV 11-820, 2018 WL 3621206 (D. Minn. July 30, 2018)..............................................17

*In re Tech. Licensing Corp.*,
   423 F.3d 1286 (Fed. Cir. 2005)..................................................................................1, 21, 22

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
   257 F.3d 1331 (Fed. Cir. 2001)...........................................................................................22

*Unicom Monitoring, LLC v. Cencom, Inc.*,
   No. 06-1166, 2013 WL 1704300 (D.N.J. Apr. 19, 2013)......................................................19

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
   69 F.3d 512 (Fed. Cir. 1995)..........................................................................................11, 18

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)...........................................................................................15

**Statutes**

35 U.S.C. § 284.............................................................................................................1, 6, 7, 13

ADA..............................................................................................................................................23

**Other Authorities**

Seventh Amendment.....................................................................................................................22

BSAs. *Supra* § III.B ...........................................................................................................10

Rule 30(b)(6) .................................................................................................5, 10, 14

Rule 37 .................................................................................................................18

*Supra* § III.A .....................................................................................................9

*Supra* § III.B ...................................................................................................14

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On June 9, 2020, the Court struck the damages opinions of Sunoco's expert (Dr. Ugone).

D.I. 547, 11–14.  The Court then granted Defendants leave to file a motion for summary judgment

of no damages, and to strike Sunoco's jury demand.  D.I. 549.  Trial is set to begin July 20, 2020.

## II.     SUMMARY OF THE ARGUMENT

1.      "Upon finding for the claimant the court shall award the claimant damages adequate

to compensate for the infringement, but in no event less than a reasonable royalty." 35 U.S.C.

§ 284.  "[I]f a patentee raises a factual issue regarding whether it is due any non-zero royalty,

summary judgment *must be denied*."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir.

2014).   Here, Defendants contend "[a]t most the reasonable royalty would not exceed $5.25

million," or a "per unit royalty would not exceed the ▇▇▇ per gallon that Texon pays to Sunoco

under its bare license to the patents to blend at the ▇▇▇ terminals."  Ex. 114, Maness Report,

pp. 10–11.  In addition to Defendants' assertion of those non-zero royalty amounts, there is ample

evidence of Sunoco's recoverable damages based on the Texon-▇▇▇ butane supply agreement

("BSA"), Sunoco's many BSAs, and knowledgeable witness testimony.  All this evidence raises

fact issues as to whether Sunoco "is due any non-zero royalty," and precludes summary judgment.

2.      Regardless of the ruling on Defendants' motion for summary judgment of no

damages, the Court must deny Defendants' motion to strike Sunoco's jury demand.  The Federal

Circuit has held that a patentee is entitled to have factual issues related to patent validity tried to a

jury as a matter of right.  *In re Lockwood*, 50 F.3d 966, 980 (Fed. Cir. 1995).  Moreover, Sunoco

cannot be deprived of a jury trial unless Sunoco waives that right by "voluntarily abandon[ing] its

claim for damages."  *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1289–90 (Fed. Cir. 2005).

Defendants concede that Sunoco has not "voluntarily waived its claim for damages."  D.I. 553, 19.

Thus, Sunoco remains entitled to a jury trial.

## III.    STATEMENT OF FACTS

### A.    Sunoco's Acquisition of the Patents-in-Suit and Licensing Model

In September 2000, Larry Mattingly (owner MCEC) and Steven Vanderbur (Texon employee) installed their first prototype fully-automated butane blending system at a terminal in Detroit, Michigan.  Ex. 115, Mattingly Dep., 177:5–178:22, 233:7–24.  The first patent on their invention issued as the '302 patent in 2004.  D.I. 385, Ex. 1, '302 patent.  MCEC and Texon formed MCE Blending in 2000 as the holding company to manage the licensing of the '302 patent and related patents.  Ex. 115, Mattingly Dep., 30:1–31:5, 202:6–13; '302 patent, p. 1 (no. 73).

The method by which MCE Blending/Texon chose to license the patents was a profit-sharing structure, where they would construct the patented system at a third-party terminal and grant a license to use the system pursuant to a BSA in exchange for splitting the profits from the sale of the extra gasoline created with the patented systems, typically 50/50.  D.I. 404, Ex. 6, USV Trial, 495:17–496:3; D.I. 404, Ex. 7, Myers Dep., 110:8–111:5; Ex. 116, Maier Dep., 76:11–22.  By 2010, Texon executed BSAs to construct patented systems at █ third-party terminals, including three of Sunoco's terminals.  Ex. 116, Maier Dep., 151:7–20; Ex. 117, Colella Dep., 118:11–119:5, 122:4–15.  At the time, Joe Colella was Vice President of Refined Products at Sunoco Refining and Marketing, and Mr. Colella personally attended at least two of Texon's presentations.  Ex. 117, Colella Dep., 118:11–120:19; Decl. of Joe Colella ("Colella Decl."), ¶ 10.

In 2010, Sunoco acquired Texon's butane blending business for approximately $140 million ("2010 Acquisition"), including the rights to the patents and the existing BSAs (except for Texon's BSA with █████ Terminals).  *See* Colella Decl., ¶ 19; Ex. 47, PTX-157, 29166 (¶ 3.1(a)).  As part of the 2010 Acquisition, Sunoco and Texon entered an agreement that would allow Texon to continue fulfilling its existing and any future BSAs with █████ Colella Decl., ¶¶ 20–22.  Pursuant to that carve-out, █████ could continue to deal with Texon under its BSA

-2-

without infringing, and ███ would continue to split profits from using the patented invention 50/50 with Texon; in return, Texon would pay Sunoco ███ per gallon of butane blended (capped at ███████ ) using the existing patented systems at ██████ facilities as of the 2010 Acquisition ("Existing ██████ Systems"). *Id.* Further, Texon would pay Sunoco ███ of the gross profit realized by Texon from using any patented systems installed at ██████ facilities ***after*** the 2010 Acquisition ("New ██████ Systems"). *Id.* at ¶ 22. With a few exceptions, the profits generated by using the Existing ██████ Systems and New ██████ Systems are shared 50/50 between ██████ and Texon. *Id.* at ¶ 21.[1]

Aside from the Sunoco-Texon agreement entered in conjunction with the 2010 Acquisition, Sunoco only licenses its patents to third parties through BSAs. Decl. of Charles Maier ("Maier Decl."), ¶ 10; Colella Decl., ¶ 27. Since the 2010 Acquisition, Sunoco continued to implement Texon's business model by constructing patented systems at over ██ third-party terminals and splitting the profits from using the patented systems pursuant to the BSA compensation methodology. Maier Decl., ¶¶ 11, 19; Colella Decl., ¶ 27; Ex. 15. Sunoco generally splits the profits with its licensees 50/50 or 40/60, and retains 100% of the profits at its own 20 terminals. Maier Decl., ¶ 15; Colella Decl., ¶ 33 (citing financial records). The profits are calculated as the difference between the gasoline benchmark price and the costs incurred to produce that gasoline, e.g., butane cost (purchased at market price), transportation costs, and hedging. Maier Decl., ¶ 14.

### B. Sunoco Disclosed its Damages-Related Evidence and Witnesses in Discovery

During discovery, Sunoco disclosed the facts and evidence relevant to proving damages. For example, in response to Interrogatory No. 8 Sunoco explained that "[a] demand exists" for the

---

[1]     Mr. Colella left Sunoco Refining and Marketing in 2009, worked at ██████ from 2012–14, and then returned to Sunoco. Ex. 117, Colella Dep., 12:17–23, 49:7–11, 111:2–112:20. During his time at ██████ Mr. Colella gained personal knowledge of the agreements between Texon and ██████ related to the patented invention. *Id.* at 111:2–112:20; Colella Decl., ¶¶ 9–11.

patented invention "as shown by the number of Sunoco's licensees," and that "the proper measure

of damages caused by Defendants' infringement" includes:

- "the profits Sunoco would have made had Sunoco blended butane at Colonial's Atlanta Junction facility"
- "the profits that Sunoco would have made had Magellan licensed the Patents-in-Suit instead of foregoing a license and infringing the Patents-in-Suit"
- "Sunoco's lost profits resulting from Sunoco's lost blend opportunity at Sunoco's terminals caused by Defendants' infringement"
- "Sunoco's lost profit share with its licensees resulting from its licensees' lost blend opportunity caused by Defendants' infringement"

D.I. 556, Ex. 1, 29–31.  Sunoco further stated that "it will seek all damages to which it is entitled,

potentially including a reasonable royalty and/or lost profits," that it may seek "reasonable royalty

damages for Defendants' infringement in lieu of and/or in addition to Sunoco's lost profits" in a

November 26, 2018 supplement, and that it may "seek reasonable royalty damages for its

licensees' lost profit share resulting from its licensees' lost blend opportunity . . . caused by

Defendants' infringement" in an April 30, 2019 supplement.  *Id.* at 30–32.[2]  Interrogatory No. 15

asked Sunoco to "[i]dentify all license agreements . . . involving any patent or technology relating

to equipment used at any terminal or facility," and Sunoco identified all licenses, including all

BSAs and the 2010 Acquisition Agreement (with the Sunoco-Texon agreement for ███████ Ex.

118, 8–13.  These disclosures are more than sufficient to place Defendants on notice of the facts

and evidence that Sunoco would rely on for lost profits and reasonable royalty damages, including

Sunoco's licensing program and prior licenses, which Defendants do not dispute.  D.I. 533, 4.

Sunoco also disclosed the witnesses it would rely on for damages-related evidence,

including the evidence discussed above.  For example, Sunoco's initial disclosures identified Mr.

---

[2]     Defendants are incorrect that "[t]he November 26, 2018 response said nothing about reasonable royalty" and that "Sunoco did not supplement Interrogatory No. 8 as to reasonable royalty until April 30, 2019—the last day of fact discovery."  D.I. 553, 2–3.

Colella (will-call witness) as knowledgeable on "[b]usiness aspects related to Sunoco's butane blending business, including profits and losses; valuations of the asserted patents; Sunoco's knowledge on the acquisition of the patents from Texon," and Mr. Maier (will-call witness) as knowledgeable on "[b]usiness aspects related to Sunoco's butane blending systems."  D.I. 556, Ex. 5, 2.  Moreover, in response to Defendants' Rule 30(b)(6) deposition notice, Mr. Maier was designated to testify on Topic Nos. 10, 12, 13, 16–23, 25, 26, 28, 29, 33, 34, including:

10. Facts concerning **any license or offers to license the Patents-in-Suit**, including any attempts to enter into butane supply agreements or to construct butane blending facilities.

12. Your licensing policies, including **Your licensing policies relating to the Patents-in-Suit**.

13. **All contracts** and agreements between You and any Third Party **concerning the Patents-in-Sui**t, the subject matter disclosed and/or claimed in the Patents-in-Suit, and/or this litigation.

19. **Any harm or damages that You have allegedly suffered** as result of Defendants' alleged infringement, including without limitation any alleged loss of market share, loss of current or prospective customers, or loss of goodwill.

21. Facts related to Your claim that You are **entitled to profits that You allegedly would have received if Colonial had not accepted Defendants' bid to blend butane at Colonial's Atlanta facility**.

22. Facts related to Your claim that You **have lost butane blending opportunity because of Defendants' alleged infringing activity**, including the identity of each of Your facilities which has allegedly lost blend opportunity, and the amount of blend opportunity each has allegedly lost.

23. Facts concerning Your claim that Your **licensees have lost butane blending opportunity because of Defendants' alleged infringing activity**, including the identity of each of Your licensees' facilities which has allegedly lost blend opportunity, and the amount of blend opportunity each has allegedly lost.

28. Any study, survey, or analysis related to the value of Your butane supply agreements, **the reasons that customers enter into butane supply agreements, or the license or purchase of butane blending systems** that You claim are covered by the Patents-in-Suit.

29. **The value of services or goods** You provide to licensees of the Patents-in-Suit.

33. **The value of the patented technology to You as a generator** of sales of your non-patented items and the extent of such derivative or convoyed sales, including sales of butane.

34. The actual and projected sales, revenue, investments, fixed and variable costs, market share, and profitability of any product or service You contend embodies or practices any claims in the Patents-in-Suit.

Ex. 1, Sunoco's Resp. to 30(b)(6) Notice; Ex. 116, Maier Dep., 22:9–27:24; Maier Decl., ¶ 9.  Mr. Colella was designated to testify on Topic Nos. 3, 5, 7–9, 14, 15, 30, 35, 36, 39–41, including:

    8. Facts relating to Your valuation of the Patents-in-Suit and Related Patents at the time You acquired Texon Distributing L.P. d/b/a Texon L.P.

  30. **Any royalties received** by You for licensing the Patents-in-Suit.

  35. The portion of profits from the Accused Systems that You contend is **attributable to the subject matter claimed in the asserted claims of the Patents-in-Suit**.

Ex. 1, Sunoco's Resp. to 30(b)(6) Notice; Ex. 117, Colella Dep., 25:2–30:17; Colella Decl., ¶ 6. Defendants have never asserted that these witnesses were insufficiently prepared or otherwise sought to compel additional discovery on these Rule 30(b)(6) topics.  D.I. 553, 4–9.

Further, in response to Interrogatory No. 8, Sunoco incorporated by reference its "forthcoming expert report(s) on damages."  D.I. 556, Ex. 1, 30.  Dr. Ugone's expert reports on damages provided further notice to Defendants concerning the facts and evidence that Sunoco would rely on in proving damages.  *See generally* D.I. 404, Ex. 5, Ugone Rpt.; D.I. 459, Ex. 1. Although the Court has stricken Dr. Ugone's damages opinions, Dr. Ugone's reports placed Defendants on further notice of the facts, evidence, and witnesses that both he and Sunoco would rely upon in proving damages.

## IV.   ARGUMENT

### A.   Summary Judgment of No Damages <u>Must Be Denied</u> When There is Fact Issue Regarding Whether the Patentee is Due Any Non-Zero Royalty

Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court *shall award* the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  Indeed, "[t]he statute is unequivocal that the district court *must award* damages in an amount no less than a reasonable royalty."  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003).  Further, § 284 "is clear that expert testimony is not necessary to the award of damages, but rather '*may* [be] receive[d] . . . as an aid.'"  *Id*. at 1382.  Indeed, "[e]ven if [a patentee] had not submitted expert evidence, this alone would not support a finding that zero is a reasonable royalty."  *Apple*, 757 F.3d at 1330.  Thus,

"the exclusion of the patentee's [expert] damages evidence is not sufficient to justify granting summary judgment." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015).

Instead, "a fact finder may award no damages **only when** the record supports a zero royalty award." *Apple*, 757 F.3d at 1328.[3]  The Federal Circuit has "explained that at 'summary judgment . . . a judge may only award a zero royalty . . . if there is no genuine issue of material fact that zero is the only reasonable royalty,'" and "if there exists a factual issue regarding whether the patentee is due any non-zero royalty, the district court must deny summary judgment." *Info-Hold*, 783 F.3d at 1371–72.  Indeed, "§ 284 requires the district court to award damages 'in an amount no less than a reasonable royalty' **even if the plaintiff's has no evidence to proffer**," and "in such a case, the district court should consider the *Georgia–Pacific* factors 'in detail, and award such reasonable royalties as the record evidence will support.'" *Id*. at 1372.  In *Info-Hold*, the Federal Circuit reversed summary judgment of no damages where "[t]here was other record evidence which the district court could use as a basis for determining a reasonable royalty, even after the exclusion of [patentee's expert]." *Id*.  In *Apple*, the Federal Circuit reversed summary judgment where "[defendant] presented no evidence that zero was a reasonable royalty."  757 F.3d at 1330.

## B.     Sunoco Has Ample Admissible Evidence on Which to Base a Damages Award

To defeat Defendants' motion, Sunoco need only raise "a factual issue regarding whether it is due any non-zero royalty." *Apple*, 757 F.3d at 1328.  Here, even without Dr. Ugone's damages opinions, there is ample admissible evidence creating a fact issue on damages.

### 1.     Defendants' expert's opinion alone creates a fact issue on damages.

The opinions of Defendants' damages expert (Dr. Maness) are alone sufficient to create a fact issue because not even Dr. Maness ever opined Sunoco should receive a royalty of zero.

---

[3]      In 2014, the Federal Circuit noted "we know of no case where we found that the record supported an infringement award of a zero royalty." *Apple*, 757 F.3d at 1328 n.7.

Instead, he rendered different opinions on what the non-zero damages would be if infringement were found.  Specifically, Dr. Maness opined that the 2010 Acquisition "placed a market value on the Patents at Issue of about ███████," and "the reasonable royalty would not exceed ████."  Ex. 114, pp. 6–7, 10–11.  Alternatively, Dr. Maness opined that "[i]f it were determined that a per gallon royalty applied to butane blended is the appropriate royalty rate, that per unit royalty would not exceed the ████ per gallon that Texon pays to Sunoco under its bare license to the patents to blend at the ████ terminals."  Ex. 114, pp. 10–11; Ex. 120, 91:19–93:18.

While Sunoco disagrees with Dr. Maness, his testimony is alone sufficient to create a fact issue as to "whether [Sunoco] is due any non-zero royalty."  *Info-Hold*, 783 F.3d at 1371–72.  In *Info-Hold*, the Federal Circuit reversed summary judgment of no damages where "[t]here was other record evidence which the district court could use as a basis for determining a reasonable royalty," such as the patentee's prior licenses and the testimony of defendant's damages expert.  *Id.*  In *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-1065-LPS, 2014 WL 1573542, at *2 (D. Del. Apr. 21, 2014), this Court denied summary judgment of no damages after striking the patentee's damages expert, reasoning "there is sufficient evidence in the record, independent of [expert's] testimony, from which a jury could find a reasonable royalty," including two licenses and "the testimony of [defendant's] damages expert."  In *Mondis Tech. Ltd v. LG Elecs., Inc.*, No. 15-4431, 2020 WL 1933979, at *3 (D.N.J. Apr. 22, 2020), the court held that "[defendant's] expert . . . testified that [patentee] was entitled to an award of $1.9 million in damages," which "in itself provides a basis in evidence to calculate a reasonable royalty."

Defendants argue "Sunoco never relied on Defendants' expert to support a reasonable royalty and, in fact, expressly rejected his opinions" (D.I. 553, 18 n.8), but these cases made no such distinction.  Indeed, it would be hard to imagine an infringement lawsuit where the patentee

*relied on or agreed* with the damages opinion of the accused infringer's expert.  Moreover, Sunoco can rely on Defendants' damages expert's testimony, even if he will not be called by Defendants at trial, given that Defendants have designated the deposition testimony of Sunoco's former technical expert (Mr. Goddard), who will not testify at trial, as "admissions" by Sunoco.  D.I. 464, 5; D.I. 545, 45:16–46:6; *see also* D.I. 547, 15 (Order denying Sunoco's motion to strike).[4]

### 2.   Sunoco's agreement with Texon creates a fact issue on damages.

Under the Sunoco-Texon agreement, Texon pays Sunoco: (1) ▮▮▮ per gallon of butane blended (capped at ▮▮▮▮▮▮▮) for Existing ▮▮▮ Systems, and (2) ▮▮▮ of the gross profit realized by Texon for New ▮▮▮ Systems (i.e., ▮▮▮ generally would retain ▮▮ of the profits, Texon would retain ▮▮ and Sunoco would receive ▮▮).  *Supra* § III.A.  These agreements alone provide a basis from which damages can be determined—indeed, Dr. Maness used the ▮▮ per gallon rate as the primary basis for devising his reasonable royalty opinion (*supra* § IV.B.1).  Thus, these agreements at a minimum create a fact issue as to "whether [Sunoco] is due any non-zero royalty."  *Info-Hold*, 783 F.3d at 1371–72.

Defendants assert "Sunoco took the position in this case that the ▮▮▮ license is not a comparable license."  D.I. 553, 7 n.3 (citing D.I. 556, Ex. 15, ¶ 46(a)).  Not so.  Instead, after Defendants' expert opined that "the ▮▮ per gallon ▮▮▮ *license* is comparable" (Ex. 114, pp. 57–58), Dr. Ugone took the position that "▮▮▮ the terminal operator similar to Magellan, has executed a [BSA] with Texon" and that this Texon/▮▮▮ BSA would be a comparable license as it utilizes the same general 50/50 compensation methodology as all of Sunoco's other

---

[4]   *See Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 567 (D. Del. 2014) (denying summary judgment of no damages where patentee argued "it may rely on [defendant's] expert report by reading [his] deposition testimony into the record at trial," and despite defendant's argument that "it could de-designate [expert]," the court found "[p]erhaps this is an exceptional circumstance in which it would be appropriate to allow [patentee] to read [expert's] deposition into the record").

BSAs (D.I. 404, Ex. 1, ¶¶ 44, 46(c)).  Further, Dr. Ugone explained that Dr. Maness "failed to recognize that Texon [was] uniquely situated in that it owned the Patents-in-Suit," but "Magellan, a potential new customer, would not be similarly situated as the former owner of the Patents-in-Suit."  *Id*. at ¶ 46.  However, he opined that "even under Dr. Maness's framework in which the ▮▮▮ license is comparable, the parties would recognize that ***the*** ▮▮ ***of gross profits*** Texon agreed to pay for butane blending at future ▮▮▮ sites ***is most comparable*** to the rate the parties would negotiate at the hypothetical negotiation."  *Id*. at ¶ 47.  As such, Sunoco's position has been that the BSAs are the most comparable, but if the Sunoco-Texon agreement is considered comparable, then the ▮▮ profit split provision for the New ▮▮▮ Systems would be more comparable than the ▮▮/gallon provision for the Existing ▮▮▮ Systems.

Further, Sunoco identified the Sunoco-Texon agreements in its Response to Interrogatory No. 15.  Ex. 118, 9.  Sunoco designated Mr. Colella to testify on Rule 30(b)(6) topics related to the 2010 Acquisition (e.g., Topics 7–9, 30, 35), and Mr. Colella testified as to the Texon agreements at his deposition.  Ex. 117, Colella Dep., 24:10–30:17, 162:12–23.  Likewise, Mr. Maier was asked whether "[o]utside of a [BSA] . . . has Sunoco ever licensed the patents-in-suit to anyone," and responded that Texon was the only example; Mr. Maier was the corporate representative on licenses/contracts/agreements related the Patents-in-Suit.  Ex. 116, Maier Dep., 31:5–20; Maier Decl., ¶ 9 (Topic Nos. 10 and 13).  Thus, Defendants cannot claim this evidence was not disclosed or causes prejudice or surprise.[5]

Defendants also incorrectly argue that Sunoco does not have "a single witness" to "testify about what a license to the patents would look like outside of a [BSA] because Sunoco's witnesses

---

[5]     *See Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-3397, 2015 WL 12696109, at *3 (C.D. Cal. Nov. 5, 2015) ("The Court also notes that [defendant] will not be prejudiced by the introduction of this evidence because its own damages expert . . . provided an opinion . . . relying upon evidence produced by [patentee], on a reasonable royalty").

have no such personal knowledge." D.I. 553, 16. As shown above, both Mr. Colella and Mr. Maier testified from their personal (and corporate) knowledge about the agreements related to the 2010 Acquisition, which includes the Texon-████ BSA, so those admissible agreements and testimony alone preclude summary judgment of no damages.

### 3. Sunoco's BSAs and witness testimony create a fact issue on damages.

Sunoco disclosed the BSAs as evidence relevant to damages, and disclosed Mr. Maier and Mr. Colella as having knowledge of the BSAs, the terms in the BSAs, the profitability of Sunoco's business, and the negotiations prior to entering the BSAs. *Supra* § III.B. Even if Dr. Ugone's damages opinions based on Sunoco's BSAs are excluded, the BSAs themselves are admissible, relevant evidence that are more than sufficient to provide a basis from which the jury can determine damages, and at minimum create a fact issue as to "whether [Sunoco] is due any non-zero royalty." *Info-Hold*, 783 F.3d at 1371–72. Indeed, Sunoco has entered into nearly ██ BSAs with third parties that have willingly accepted these licenses outside of litigation over a span of nearly 20 years for the same patents and same technology at issue here.[6] Thus, summary judgment must be denied.

For example, Mr. Maier can testify as to the provisions and terms in specific BSAs, such as the compensation methodology, e.g., profit-sharing on a 50/50 or 40/60 basis (Maier Decl., ¶¶ 14–15); how the BSA terms ████████████████████████████████ ████████████████████████████████████████████████████ (*id.*); the license grant for the patents, technical information, and software (*id.* at ¶¶ 16–17, 22–24); provisions related to construction of the patented systems (*id.* at ¶¶ 18–21); butane supply and

---

[6] *See, e.g.*, *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (prior existing license for same patent "should carry considerable weight in calculating a reasonable royalty rate"); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79–80 (Fed. Cir. 2012) ("Actual licenses to the patents-in-suit are probative not only of the proper amount of a reasonable royalty, but also of the proper form of the royalty structure.")

hedging (*id*. at ¶¶ 25–28); and customer service (*id*. at ¶¶ 29–32).  Mr. Maier and Mr. Colella will also testify as to the volume of butane blended by the patented systems installed at Sunoco and third-party licensee terminals, as well as the profit margin Sunoco (and its licensees) earn from use of the patented systems in terms of cents-per-gallon of butane blended.  *Id*. at ¶¶ 34–52; Colella Decl., ¶¶ 33–46.  Mr. Maier and Mr. Colella will also testify as to the demand for Sunoco's patented systems and Sunoco's manufacturing and marketing capability.  Maier Decl., ¶¶ 19–20, 34–52; Colella Decl., ¶¶ 33–46.  This evidence provides a basis from which the jury can determine damages, including profit margins for lost profits and reasonable royalty rates, even without Dr. Ugone.  *See Info-Hold*, 783 F.3d at 1372 (denying summary judgment where "[t]here was other record evidence which the district court could use as a basis for determining a reasonable royalty").

Defendants also argue Sunoco "did not identify or rely on any fact witness to try to show the amount of damages owed to Sunoco."  D.I. 553, 13.  But in order "to show ***the amount of damages*** owed to Sunoco," a witness would have to know Defendants' blend volumes, which Defendants produced as "Highly Confidential."  *See, e.g.*, Ex. 121, Wheeler Ex. 10.  Defendants' blend volumes are admissible evidence based on Defendants' own records that will be presented at trial, from which a jury will be able to determine a damages amount by applying Sunoco's fact witness testimony discussed above to Defendants' blend volumes.

Defendants do not dispute that Sunoco disclosed this evidence and these witnesses in discovery, but argue that "the Court's exclusion of Dr. Ugone's damages opinions leaves Sunoco without any damages theory to present at trial."  D.I. 553, 12.  The BSAs and testimony about the BSAs did not become irrelevant, inadmissible, or insufficient to calculate damages because the Court found Dr. Ugone did not sufficiently apportion; if Defendants believe that, they are incorrect.  Indeed, "[i]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is

still required to determine what royalty is supported by the record," and "simply because a patentee fails to show that its royalty estimate is correct does not, by itself, justify awarding a royalty of zero at summary judgment." *Apple*, 757 F.3d at 1327–28.

For example, in *Dow*, the district court excluded the patentee's expert and granted summary judgment of no damages. 341 F.3d at 1381–82. The Federal Circuit reversed, holding "there is other evidence in the record, ***including the evidence supporting [expert's] excluded opinions***, that the district court must consider," including a license. *Id*. The district court found that the license "did not support any award of damages" because it "establishes a totally different pricing structure" than the patentee requested, which the Federal Circuit held was "erroneous" since "the fact that the agreement did not support the specific amount requested by [patentee] does not thereby mean that it does not support any award at all." *Id*. at 1383 n.4. Instead, "[p]rior agreements 'carry considerable weight in calculating a reasonable royalty rate.'" *Id*. Thus, the Federal Circuit held that on remand, "the district court should consider the so-called *Georgia–Pacific* factors in detail, and award such reasonable royalties as the record evidence will support." *Id*. at 1383.

Likewise, in *Mondis Tech. Ltd v. LG Elecs., Inc.*, No. CV 15-4431, 2020 WL 1933979, at *2 n.1 (D.N.J. Apr. 22, 2020), the court excluded the patentee's expert for not apportioning prior licenses, but "did not reject the use of prior licenses as evidence relevant to the *Georgia-Pacific* analysis." Based on Federal Circuit precedent, the court found that "§ 284 gives rise to a presumption of entitlement to an award of damages," that "the absence of admissible expert testimony in support of a damages theory does not alter this presumption," and that "under such circumstances, the trial court must apply the *Georgia-Pacific* analysis and award such reasonable royalties as the record evidence will support." *Id*. at *3. Because the patentee "presented a great deal of relevant evidence, particularly the past licensing agreements" the court held "[t]he record

evidence without [expert's] testimony was sufficient to allow a reasonable jury to award reasonable royalties." *Id*. Thus, even without Dr. Ugone, the BSAs are relevant and admissible evidence that (at a minimum) create a fact issue precluding summary judgment.

Dr. Ugone previously disclosed his conversations with Mr. Maier and Mr. Colella that supported his opinion on the patents as drivers of the BSAs,[7] and Defendants did not ask questions about these conversations, nor depose Dr. Ugone on his supplemental opinions—thus they did not even attempt to learn the substance of the conversations.

Sunoco designated Mr. Maier as a Rule 30(b)(6) witness on Topic No. 29 ("value of services or goods You provide to licensees") and No. 33 ("value of the patented technology . . . as a generator of sales of your non-patented items"), and Mr. Colella on No. 35 ("portion of profits from the Accused Systems . . . attributable to the" patents). *Supra* § III.B. Defendants deposed both witnesses, but asked limited questions about these subjects.[8] The declarations attached to this Opposition set forth additional substance of their expected trial testimony on the BSAs based on their personal knowledge, including facts disclosed to Dr. Ugone. None of this testimony would be unfair surprise to Defendants; they did not delve deeply into the BSAs, did not ask the witnesses questions that Sunoco would ask at trial, and did not ask Dr. Ugone much about his conversations. Defendants have no basis to object (and no impeachment evidence) when these witnesses testify. Defendants are free to ask the witnesses about these issues at trial, as they were free to do (but did not) at their depositions.

---

[7]     D.I. 404, Ex. 5, Ugone Opening Report, p. 21 (¶ 39); p. 63 (¶ 102); pp. 71–77 (n.240, ¶ 109, n.249, n.251, n.254, n.255, n.257, ¶ 110(d)); p. 88 (n.295); p. 95 (¶ 140, n.321); p. 131 (n.455); D.I. 459, Ex. 1, Ugone Supplemental Report, p. 24 and 25, n.79.

[8]     *See, e.g.*, Ex. 116, Maier Dep., 59:12–63:8, 85:14–86:2, 156:12–159:10; Ex. 117, Colella Dep., 93:8–19, 96:24–97:25, 99:24–100:3, 103:19–24, 107:14–18, 109:8–11.

### 4. Defendants incorrectly argue Sunoco is precluded from asserting BSAs are "comparable" licenses.

Defendants argue Sunoco is precluded from asserting the BSAs are "comparable" licenses because "Sunoco never identified any 'comparable license' during fact discovery or any witness who could testify about any such license." D.I. 553, 12. These arguments are completely without merit. Defendants recognized the BSAs were at least comparable licenses when they sought:

> 41. All contracts, agreements, or licenses granted to a Third Party to make, use, install, and/or operate one or more commercial embodiments of the claimed subject matter of the Patents-in-Suit, including all agreements characterized as "butane supply agreements" or "supply and services agreements" . . . .

Ex. 122, 7–8. In response to this and other requests, Sunoco produced each of the BSAs with its ▮ licensees. *Id.* ("Sunoco has already produced documents responsive to this Request and is currently not aware of any additional . . . documents," but will produce additional documents if located). Every one of the BSAs is based on the exact same compensation methodology used by Texon and Sunoco (Maier Decl., ¶ 11; Colella Decl., ¶ 27), and even Magellan.[9]

Further, the hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties **would have** agreed had they successfully negotiated an agreement just before infringement began." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). As the BSAs represent the only way that Sunoco grants rights to its patents, the BSA methodology represents the most appropriate framework for the hypothetical negotiation. Defendants' expert claims Magellan would never enter a BSA because it would take only a bare patent license, and would not need Sunoco equipment or other services. *See* Ex. 114, Maness Rpt., p. 59 (¶ 141). But

---

[9]      Indeed, the PSL joint venture between Magellan/Colonial is based on a nearly identical profit-sharing structure as Sunoco's BSAs, where Magellan installed and operated its "proprietary" and "patent pending" system, and ▮▮▮▮▮▮▮▮▮▮▮. D.I. 534, 19 (citing D.I. 535, Ex. 20, 63114–15). Magellan offered similar partnerships to other third parties, including ▮▮▮▮ (Sunoco licensee), ▮▮▮▮▮▮ (Sunoco licensee), and ▮▮▮▮▮. *Id.* at 19–20 (citing D.I. 535, Ex. 23, 135:2–138:2; Ex. 25, 77621–24).

when Magellan bought the ███ terminal in 2015, Magellan accepted the Sunoco BSA methodology and even agreed to increase Sunoco's share of the profits.  Colella Decl., ¶¶ 40–41.  This is all but conclusive that the BSAs are comparable to the license that the parties would have negotiated—because that is what they actually did.  *See Commonwealth Sci. and Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1302–03 (Fed. Cir. 2015).

Even without an expert, Sunoco may properly introduce the BSAs at trial, which (in addition to other evidence discussed herein) provides a basis from which the jury can determine damages.  As the Federal Circuit has held, "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace."  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).  Here, having licensed the same rights to the same patents under the same methodology to █ different licensees (Colella Decl., ¶ 27; Maier Decl., ¶¶ 10–12), Sunoco's BSAs are the epitome of "comparable" licenses for determining the value of the patents-in-suit.

Moreover, the parties' disputes over whether the BSAs involve additional services that provide value unrelated to the patented invention does not render the BSAs inadmissible, but rather goes to the weight of the evidence.  *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility.").  Indeed, the court in *Mondis* excluded the patentee's expert for not apportioning prior licenses, but "did not reject the use of prior licenses as evidence relevant to the *Georgia-Pacific* analysis."  2020 WL 1933979, at *2 n.1.  Instead, the court held that the same non-apportioned licenses were "sufficient to allow a reasonable jury to award reasonable royalties."  *Id.*  Likewise, here, Sunoco's BSAs are admissible and more than

-16-

sufficiently comparable to be presented to the jury.  Defendants are free to introduce evidence and cross-examine witnesses on issues related to whether and the extent to which the BSAs are "comparable," and the jury can decide based on the evidence presented.

The Federal Circuit "has often excluded proffered licenses as insufficiently comparable" on grounds that "have included, but are not limited to: the license being a litigation settlement agreement, and the patented technology's lack of a relationship to the licensed technology." *Commonwealth*, 809 F.3d at 1304.  None of those concerns are present here.  Sunoco has entered into over ▮ BSAs with third party companies that have willingly accepted these licenses outside of litigation for the same patents and same technology at issue here.

### 5.    The cases cited by Defendants are inapposite.

Defendants assert *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) "is precisely the case here."  D.I. 553, 18.  This case is far removed from *Promega*, where the patentee "expressly waived its right to any award based on a reasonable royalty" when its counsel stated: "Royalties?  Don't want them.  Wouldn't have taken them.  Don't expect them."  875 F.3d at 660.  Further, it was undisputed that certain accused products were assembled overseas and "did not infringe under . . . § 271(f)(1)," but the patentee "adduced evidence only as to defendants' ***total worldwide sales***" and "waived any argument that the trial record supports a damages calculation based on a subset of [] total worldwide sales."  *Id*. at 660–61.  The Federal Circuit noted "[t]his is an unusual case" where the patentee "waive[d] its right to a damages award" by "deliberately abandon[ing] valid theories of recovery."  *Id*. at 666.  Here, Sunoco has not given up its right to at least reasonable royalty damages, and still has ample admissible evidence from which the jury can determine damages.  Indeed, other courts have distinguished *Promega* on these facts.[10]

---

[10]     *See, e.g.*, *Mondis*, 2020 WL 1933979, at *1–2 (after excluding expert for not apportioning licenses, concluding "*Promega* is distinguishable" because "the Court cannot conclude that there

Defendants place heavy reliance on *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013), but omit that in *AVM*, after the court struck the patentee's expert, the patentee proffered testimony from a co-inventor "as to **what would have happened** in a hypothetical negotiation," which would be inadmissible as "improper expert opinion" and not "based on his personal knowledge," whereas "testimony as to facts within his personal knowledge is admissible." D.I. 553, 12, 14, 16, 17. Here, Sunoco's fact witnesses will not testify as to "what would have happened" in a hypothetical negotiation, but instead on facts concerning the BSAs and other agreements within their personal knowledge that are relevant to Sunoco's damages and that were available or disclosed during discovery.[11]

Defendants argue "[t]his case is like *ePlus*, where the court precluded the patentee from arguing damages to the jury after its damages expert was excluded under *Daubert*." D.I. 553, 15 (citing *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012)). This case is nothing like *ePlus*, where the patentee relied "exclusively" on its expert who based his opinion on "five settlement agreements" that "were not sufficiently probative because they were obtained during litigation and included lump-sums received for multiple patents and cross-licensing deals." 700 F.3d at 523. Since the patentee disclosed no other evidence, it was prevented "from presenting any evidence of damages" under Rule 37. *Id.* Here, Sunoco is relying on damages evidence and witnesses already disclosed and of record. Thus, the concerns in *ePlus* about "last-minute addition

---

was insufficient evidence from which the jury could reasonably award some amount of damages," including the non-apportioned licenses); *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. CV 11-820, 2018 WL 3621206, at *9 (D. Minn. July 30, 2018) (distinguishing *Promega* because patentee "never made a statement asserting that she would refuse a reasonable royalty").

[11] Defendants' reliance on *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 83 (3d Cir. 2009) is similarly flawed, where a witness testified on facts "beyond . . . her personal knowledge and instead required forward-looking speculation for which she lacked the necessary training."

to the record" are not present here.[12]

Defendants rely on *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018), where the Federal Circuit vacated the jury's damages award for two reasons.  D.I. 553, 18.  First, the accused product was "a multi-component" product with "non-infringing features," but the patentee's expert did not apportion.  *Id*.  Second, the jury awarded an "$8-per-user royalty rate" employed by the expert, which "appear[ed] to have been plucked from thin air" since it was "based on a 2008 verdict" involving a different patent and "[t]here [was] no evidence that [patentee] ever actually used or proposed an $8-per-user fee in any comparable license or negotiation" or "that the patents that were at issue are economically or technologically comparable."  *Id*. at 1312.  Here, there are no non-infringing features of the accused systems, and there is ample evidence of the royalties and rates paid by numerous companies for the same patents and technology.

*Unicom Monitoring, LLC v. Cencom, Inc.*, No. 06-1166, 2013 WL 1704300, at *8 (D.N.J. Apr. 19, 2013), is also readily distinguishable:

> Unicom does not intend to present evidence that is competent to establish a reasonable royalty as it must be calculated: the witnesses will be testifying **to the wrong time period**; Unicom's policy of **not licensing the patent is at odds with the presumed voluntary negotiation**; Unicom does not have an expert to delve into hypotheticals; Unicom **does not have an analogous practice of licensing that can be uniformly applied**; and Unicom has no rationale to support its suggested reasonable royalty calculation. . . . A factfinder cannot be asked to speculate from numbers unsupported by law and divorced from expert guidance, but rather the factfinder needs either clear guidance from an expert about how to apply complex calculations **_or_ simple factual proofs about what this patentee has previously accepted in factually analogous licensing situations**.

*Unicom*, 2013 WL 1704300, at *8.  Here, Sunoco has ample admissible evidence and testimony

---

[12]     Defendants' reliance on *Boston Sci. Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1120–21 (N.D. Cal. 2008) is similarly flawed, where the patentee "submitted no evidence regarding a reasonable royalty rate for infringement of the [asserted] patent" and only relied "on testimony about reasonable rates for other, similar patents, despite the fact that [patentee's] own witness had testified that every license negotiation is distinct."  In *MicroStrategy Inc. v. Bus. Objects, S.A.*, the court excluded the expert and precluded the plaintiff from introducing "evidence of damages not disclosed" in discovery under Rule 37.  429 F.3d 1344, 1356 (Fed. Cir. 2005).

regarding Sunoco's well-established licensing model spanning multiple BSAs, showing what Sunoco and its licensees have accepted in factually analogous licensing situations.

### 6.     Sunoco never "dropped" a lost blend opportunity theory.

In response to Interrogatory No. 14, Sunoco stated "[w]hen Defendants utilize these infringing systems and/or methods [at the PSL facility] to blend butane into gasoline that is destined for Sunoco's terminals or its licensees' terminals, Defendants' infringement results in a loss of blend opportunity to Sunoco and/or its licensees," and cited documents and testimony.  Ex. 119, 3–7.  Defendants assert "Sunoco has since ***dropped*** this theory of lost profits" because "Dr. Ugone did not calculate lost profit damages from Powder Springs' alleged infringement, and Sunoco no longer seeks any such damages."  D.I. 553, 3 n.1; *id*. at 5 n.2.  Defendants are incorrect.

Dr. Ugone opined that, "[a]t the hypothetical negotiation with PSL, Sunoco would recognize that PSL's Accused System was upstream of two Sunoco terminals . . . and ▮ other terminals with blending systems Sunoco operates," and "[a]ny butane blended at the PSL facility that ultimately was bound for a downstream terminal where Sunoco had an installed automated system would represent a lost blending opportunity to Sunoco and its partners."  D.I. 404, Ex. 5, Ugone Opening, pp. 104–06.  Dr. Ugone evaluated "[t]he actual opportunity cost associated with lost butane blending opportunities attributable to PSL's allegedly infringing blending" based on actual blending data, and concluded "Sunoco's impacted terminals had a ▮ decline in butane volumes," resulting in "***lost profits*** from PSL's upstream blending . . . equal to ▮ in 2017 and ▮ in 2018."  *Id*. at pp. 104–05.  Indeed, in 2017, Magellan itself projected a lost blend opportunity at its terminals caused by blending at PSL of ▮ (a cost of ▮ ).  *Id*. at p. 106.  Based on this data, Dr. Ugone determined "Sunoco's opportunity cost from blending at the PSL system would be greater than at least ▮ per gallon," which "above would represent an extreme lower bound on any to-be-negotiated royalty rate with PSL."  *Id*. at pp. 136–

37. Thus, Defendants are incorrect to assert that Sunoco "dropped" this theory.  Based on evidence

at trial regarding Sunoco's actual negotiations with PSL from fact witnesses, testimony to the post-

filing reduction in blend opportunity at terminals downstream of PSL, and evidence of the PSL

blend volumes, a jury could award a reasonable royalty based on the lost blend opportunity.[13]

### C.  Sunoco is Entitled to a Jury Trial

Defendants' request to strike Sunoco's jury demand is moot if the Court denies summary

judgment, as there is no dispute Sunoco is entitled to a jury trial on damages.  D.I. 553, 19–20.

Further, Sunoco is still entitled to a jury trial even if the Court grants Defendants' motion.

Defendants' argument that "no right to a jury trial attaches" here (D.I. 553, 19) is foreclosed

by *In re Lockwood*, 50 F.3d 966 (Fed. Cir. 1995).  In *Lockwood*, the district court granted summary

judgment of non-infringement, "after which it dismissed the infringement complaint," leaving the

patentee with no ability to recover damages.  *Id.* at 968.  Because all that remain to be tried was

the defendant's counterclaim of invalidity, "the district court struck [patentee's] demand that the

issue of validity be tried to a jury."  *Id.* at 969.  The Federal Circuit reversed, holding that

"[patentee] is entitled to have the factual questions relating to validity in this case tried to a jury as

a matter of right."  *Id.* at 976.[14]  As Sunoco is entitled to have a jury trial on the invalidity issues

being advanced by Defendants both as defenses and as counterclaims, there is no basis for striking

---

[13]     In opposing a preliminary injunction in this case, Defendants recognized this royalty model
and told the Court: "In a hypothetical negotiation, a reasonable royalty case in a patent case, when
the willing licensor Sunoco comes to talk to the willing licensee which is Magellan and Powder
Springs, Sunoco is going to come to the table and say, I'm going to license the patent, I'm going
to demand a certain royalty and when I demand that royalty, you are going to pay for my
downstream customers so that I can make them whole.  That damages model is not that very hard
to envision.  It is calculable."  D.I. 65, 242:18–243:4.

[14]     As the Federal Circuit later explained: "Although the Supreme Court vacated the order of
this court in Lockwood when, after the Court granted certiorari, Lockwood withdrew his request
for a jury trial, we have continued to rely on the "relevant and detailed analysis" in Lockwood,
which contains this court's most extensive discussion of the historical and legal framework for
analyzing the jury trial right in connection with actions involving claims of patent infringement
and invalidity."  *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1288 n.1 (Fed. Cir. 2005).

the jury demand in this case.

Moreover, Defendants' argument is separately foreclosed by *In re Tech. Licensing*, where the Federal Circuit affirmed the holding of *Lockwood* and further explained:

> In *Lockwood*, the patentee had not elected to limit himself to an equitable remedy. **Although the issue of infringement had been removed from the case by summary judgment**, the *Lockwood* court nonetheless considered **whether the patentee had forfeited his right to a jury trial by taking any steps** that would have required him, historically, to file his case in equity. The *Lockwood* court looked at the declaratory judgment counterclaim as an inverted action for infringement in which the patentee had not surrendered his right to a jury. Therefore, **the patentee retained his right to a jury trial on the counterclaim**.

*Id*. (quoting *Lockwood*, 50 F.3d at 980). Even though the patentee in *Lockwood* could not recover damages and the only issue was invalidity, the patentee "retained his right to a jury trial" since it took no steps to forfeit that right. *Id*. By contrast, in *Tech. Licensing*, the patentee "*voluntarily abandoned* its claim for damages" and its "*decision to seek only an injunction* meant that it lost its right to a jury." 423 F.3d at 1289–90. In *Bos. Sci. Corp. v. Johnson & Johnson*, the patentee "*waived* its Seventh Amendment right during trial *when it decided* not to put on evidence in support of its contention that 2% would be a reasonable royalty rate." 550 F. Supp. 2d 1102, 1121 (N.D. Cal. 2008).

Here, as Defendants acknowledge, "Sunoco *has not yet voluntarily waived* its claim for damages." D.I. 553, 19. As such, even if summary judgment is granted, Sunoco retains its right to a jury trial on the remaining issues, just like the patentee in *Lockwood* retained its right to a jury trial on an invalidity counterclaim after its infringement claim was dismissed. *See 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1087–88 (N.D. Cal. 2005) ("Here, like in *In re Lockwood*, [patentee] did not elect to limit itself to an equitable remedy. Unlike the patentee in *In re Technology [Licensing] Corp.*, [patentee] did not forfeit its 'right to a jury trial by taking any steps that would have required' it, historically, to file its case in equity. Rather, the Court ruled [patentee] lacked evidence of damages and granted . . . summary adjudication on that

issue.").  As such, Sunoco is entitled to a jury trial on issues of validity, and separately is entitled to a jury trial because Sunoco has taken no steps to waive its right to a jury trial.[15]

## V.     CONCLUSION

Defendants moved the Court to require apportionment of the BSAs, an admittedly novel theory.  The Court agreed, striking Dr. Ugone's damages opinion.  Defendants now seek to take that two steps further, precluding Sunoco from recovering any damages (contrary to the statutory mandate) and from a jury trial even though Sunoco has never sought solely equitable relief.  As discussed above, and shown in the attached documents and testimony, there is significant evidence by which a jury could determine and award reasonable royalty damages, albeit without an expert to pull it all together.  Although the scales have been tipped dramatically on damages, that does not entitle Defendants to ignore the evidence and patent statutes.  There are no new theories, nor has there been any waiver of Sunoco's right to a jury trial, on any issue.  The Court should deny both of Defendants' Motions.

---

[15]    Defendants' remaining cases are entirely inapplicable.  *See Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1341 (Fed. Cir. 2001) ("***a defendant***, asserting only affirmative defenses and no counterclaims, does not have a right to a jury trial in a patent infringement suit if the ***only remedy sought by the plaintiff-patentee is an injunction***"); *AstraZeneca LP v. Tap Pharm. Prod., Inc.*, 444 F. Supp. 2d 278, 287 (D. Del. 2006) (in declaratory judgment trademark case, granting motion "to strike [defendant's] jury demand" as "[defendant] is seeking disgorgement of [] profits, a remedy which is equitable," which defendant disputed but was "no longer relevant" after court struck its expert); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 641 (S.D.N.Y. 2005) (in "diversion of a contract" action, plaintiff "***forfeited its right*** to proceed with any [lost profits] claim due to its own discovery failures"); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 968 (7th Cir. 2004) (no right to a jury in ADA action for retaliation where "[c]ompensatory and punitive damages are not available"); *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 307 (9th Cir. 1979) (where defendant withdrew damages counterclaim and plaintiff's legal claims were severed, leaving only defendant's equitable claims, no right to jury on other counterclaims).

Dated: June 20, 2020                    Respectfully submitted,

                                        */s/ John C. Phillips, Jr.*
                                        John C. Phillips, Jr. (No. 110)
                                        Megan C. Haney (No. 5016)
                                        PHILLIPS, MCLAUGHLIN & HALL, P.A.
                                        1200 North Broom Street
                                        Wilmington, Delaware 19806
                                        (302) 655-4200
                                        jcp@pmhdelaw.com
                                        mch@pmhdelaw.com

                                        *Attorneys for Plaintiff Sunoco Partners*
                                        *Marketing & Terminals, L.P.*

Of Counsel:
John Keville
Michelle Replogle
Richard McCarty
Michael Krill
WINSTON & STRAWN LLP
1111 Louisiana St., 25th Floor
Houston, Texas 77002
(713) 651-2600 (phone)
(713) 651-2700 (fax)

## CERTIFICATE OF SERVICE

I, Megan C. Haney, hereby certify that on June 20, 2020, a copy of the Answering Brief in Opposition to Defendants' Motion for Summary Judgment of No Damages was served on the following via electronic mail:

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801
rsmith@mnat.com

David S. Moreland
John W. Harbin
Stephen M. Schaetzel
Meunier Carlin & Curfman LLC
999 Peachtree Street, N.E., Suite 1300
Atlanta, GA 30309
dmoreland@mcciplaw.com
jharbin@mcciplaw.com
sschaetzel@mcciplaw.com

Douglas E. McCann
Martina Tyreus Hufnal
Nitika Gupta Fiorella
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
dmccann@fr.com
hufnal@fr.com
fiorella@fr.com

Joseph A. Herriges
Fish & Richardson P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
herriges@fr.com

/s/
Megan C. Haney (#5016)

-25-