IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P.<br><br>Plaintiff,<br><br>v.<br><br>POWDER SPRINGS LOGISTICS, LLC and MAGELLAN MIDSTREAM PARTNERS, L.P.<br><br>Defendants. | C.A. No. 17-1390 (LPS-CJB)<br><br>█████████<br><br>**REDACTED VERSION** |

**DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT OF NO PAST
DAMAGES AND TO STRIKE JURY DEMAND**

MORRIS, NICHOLS, ARSHT &
 TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
Wilmington, DE 19801
(302) 658-351-9205
rsmith@mnat.com

OF COUNSEL:

David S. Moreland
John W. Harbin
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree St., N.E., Suite 1300
Atlanta, GA 30309
(404) 645-7700
dmoreland@mcciplaw.com;
jharbin@mcciplaw.com

*Attorneys for Defendant
Powder Springs Logistics, LLC*

FISH & RICHARDSON P.C.
Douglas E. McCann (#3852)
Martina Tyreus Hufnal (#4771)
Nitika Gupta Fiorella (#5898)
222 Delaware Ave., 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-5070
dmccann@fr.com; hufnal@fr.com;
fiorella@fr.com

Joseph A. Herriges
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 337-2579
herriges@fr.com

*Attorneys for Defendant
Magellan Midstream Partners, L.P.*

Dated: June 22, 2020

**TABLE OF CONTENTS**

**Page(s)**

I. ARGUMENT ............................................................................................................. 2

    A. Sunoco Cannot Present its Excluded BSA Theory Through its Fact Witnesses or What it Claims Is a Comparable License Argument ...................................... 2

    B. Sunoco Cannot, on the Eve of Trial, Rely on the Texon Agreement or Defendants' Rebuttal Expert to Salvage its Damages Case ............................... 5

        1. Sunoco's failure to disclose the Texon agreement as a basis for its damages claim requires exclusion ........................................................... 5

        2. Sunoco never disclosed it would rely on Defendants' rebuttal expert's analysis and it cannot do so now ............................................................ 8

    C. Summary Judgment is Appropriate Because Sunoco Foreclosed Any Non-Excluded Damages Theories ............................................................................ 11

    D. Sunoco Forfeited a Jury Trial by Pursuing an Unviable Damages Theory ..... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
   No. 1:16-CV-00453-RGA, 2018 WL 5045186 (D. Del. Oct. 17, 2018) .............................. 3

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014), *overruled in part on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ......................................................... 12

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   2013 WL 6001902 (N.D. Cal. Nov. 12, 2013) ................................................................ 3, 4

*AstraZeneca LP v. Tap Pharm. Prod., Inc.*,
   444 F. Supp. 2d 278 (D. Del. 2006) .................................................................................. 12

*AVM Techs., LLC v. Intel Corp.*,
   927 F. Supp. 2d 139 (D. Del. 2013) ................................................................................ 2, 3

*Blumhorst v. Pierce Mfg., Inc.*,
   No. 4:10-CV-00573-REB, 2013 WL 12138591 (D. Idaho Feb. 14, 2013) ........................ 10

*Bos. Sci. Corp. v. Johnson & Johnson*,
   550 F. Supp. 2d 1102 (N.D. Cal. 2008) ............................................................................. 12

*Dow Chem. Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003) ........................................................................................... 4

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
   927 F.3d 1292 (Fed. Cir. 2019) ........................................................................................... 4

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012) ..................................................................................... 11, 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................................... 11, 12

*Kaneka Corp. v. SKC Kolon PI, Inc*
   No. CV 11-3397 JGB (RZX), 2015 WL 12696109 (C.D. Cal. Nov. 5, 2015) ................... 9

*Kirk v. Raymark Indus., Inc.*,
   61 F.3d 147 (3d Cir. 1995) ................................................................................................ 11

*Konstantopoulos v. Westvaco Corp.*,
   112 F.3d 710 (3d Cir. 1997) ................................................................................................ 6

*In re Lockwood*,
   50 F.3d 966 (Fed. Cir. 1995) ............................................................................................. 12

*Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*,
   C.A. No. 99-3121 (WHW), 2008 WL 4378294 (D.N.J. Sept. 23, 2008), *aff'd sub nom.
   Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010)...... 8

*Mondis Tech. Ltd v. LG Elecs., Inc.*,
   No. CV 15-4431 (SRC), 2020 WL 1933979 (D.N.J. Apr. 22, 2020) ............................ 4, 11

*Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*,
   No. CV 13-1475-GMS, 2016 WL 8488409 (D. Del. Feb. 1, 2016) .......................... 7, 8, 10

*Pfizer, Inc. v. Ranbaxy Labs., Ltd.*,
   No. CIV.A. 03-209 JJF, 2005 WL 2296613 (D. Del. Sept. 20, 2005)................................ 11

*Promega Corp. v. Life Techs. Corp.*,
   875 F.3d 651 (Fed. Cir. 2017)................................................................................ 1, 11, 12

*Riles v. Shell Expl. & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002)...........................................................................................2

*In re Tech. Licensing Corp.*,
   423 F.3d 1286 (Fed. Cir. 2005).........................................................................................12

*Unicom Monitoring, LLC v. Cencom, Inc.*,
   No. CIV.A. 06-1166 MLC, 2013 WL 1704300 (D.N.J. Apr. 19, 2013) .............................3

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A)(iii) ..................................................................................................5

Fed. R. Civ. P. 26 and Rule 37..................................................................................................9

Fed. R. Civ. P. 30(b)(6)..............................................................................................................6

Fed. R. Civ. P. 37(c)(1)..............................................................................................................5

Fed. R. Civ. P. 56(c)(4)............................................................................................................11

Fed. R. Evid. 403 ....................................................................................................................10

iii

U.S. Venture first challenged Dr. Ugone's BSA theory in August 2017, and moved to exclude it in October 2017—when Sunoco filed this case. Three years, and three trial court decisions later, Sunoco still pursues it, brazenly ignoring repeated orders to the contrary. Sunoco now offers Charles Maier, fact witness, to opine that "the Blending Patents are the sole driver of value in the BSAs." (D.I. 563, ¶ 10.) Joseph Colella, fact witness, opines that "[t]he value of the ▮▮▮ BSAs came from the Blending Patents and the patented blending systems, not from these other services that ▮▮▮ could have provided[.]" (D.I. 565, ¶ 17.) He continues: "I believe that a 100% of the income or value of the BSAs is due to the Blending Patents." (*Id.* at ¶ 28.) How could opinions from an expert that three judges have rejected now properly come in through a fact witness? They can't.

Dr. Maness' testimony also fails to create a genuine dispute of fact. Sunoco did not timely disclosed Dr. Maness' opinion as a basis for its damages claim, and only added it last week. Further, Dr. Maness' opinion is a rebuttal to Dr. Ugone, not an affirmative opinion on what the damages actually are. Dr. Maness was asked, "So when you get to trial, what is the reasonable royalty that you're going to be asking the jury to award?" He said, "I'm going to be asking the jury to say – well, *I'm not going to ask the jury to award anything*. I'm going to provide evidence that suggests that the reasonable royalties should not exceed ▮▮▮ ▮▮▮" (Ex. 18 at 95:10-17.) To say a reasonable royalty *cannot exceed* "x" is not the same as saying a reasonable royalty *is* "x," so it cannot satisfy Sunoco's burden, even if it were disclosed and admissible, which it is not.

"[A] patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017). The Court gave Sunoco a chance to come forward with a damages theory built around the properly apportioned value of the patents. The evidence shows it cannot, or will not, do that. The

Court should grant summary judgment of no damages, and strike the jury demand.

I.  ARGUMENT

    A.  **Sunoco Cannot Present its Excluded BSA Theory Through its Fact Witnesses or What it Claims Is a Comparable License Argument**

Sunoco's 20+ page declarations from Mr. Maier and Mr. Colella double-down on the same theory the Court already struck: both of them attempt to provide an expert opinion—for which they do not have requisite credentials, disclosure, or report—that the patents are the sole driver for the BSAs. (D.I. 563, ¶ 10; D.I. 565, ¶ 17, 28.) This Court has heard that argument before; as Sunoco itself points out, Dr. Ugone came up with his now-excluded theory ***by speaking with Mr. Maier and Mr. Colella***. (D.I. 562 at 14.) Of course, Sunoco cannot parrot the same unreliable theory from its expert through its fact witnesses, who Sunoco never disclosed as experts, or even listed in its response to Defendants' interrogatory on damages, because doing so would violate nearly every relevant rule of discovery and evidence. *See AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 145-48 (D. Del. 2013).

The same is true for Sunoco's attempt to rely on the BSAs themselves—which account for the majority of the 122 new exhibits Sunoco cited with its brief (none of which it cited in response to Defendants' interrogatory on damages). Sunoco's strategy is clear: it wants to give the jury the BSAs, highlight the profit-sharing arrangements, provide the total volume blended by Defendants,[1] and have the jury apply the full value of the profit sharing arrangements to the volumes, just like Dr. Ugone did. But this Court excluded that very approach so as not to taint the jury with a legally infirm theory. Who is going to cure that issue? Sunoco's witnesses cannot say "sole driver of demand" because that would be "a

---

[1] Sunoco suggests Defendants' blend volumes are admissible, but it ignores that it cannot get damages on every gallon of butane Defendants have blended during the damages period. As one example, the damages period for the patents vary based on marking provisions, and not all systems are accused of infringing every patent, so for certain systems, Sunoco may be able to include butane volumes from 2012-2017 as part of its royalty base, but for other systems, it cannot. It is thus not as simple a calculation as Sunoco makes it sound and only underscores the need for an expert to prevent the jury from awarding damages based on "pure speculation." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).

rehash of the proposed [expert] testimony" the Court excluded. *AVM Techs.*, 927 F. Supp. 2d at 147. And it cannot have a witness apportion the BSAs because, as evidenced from the new declarations, they always say the patents account for the full value of the BSAs. (D.I. 563, ¶ 10; D.I. 565, ¶ 17, 28.) On top of that, such testimony would necessarily be improper expert testimony. *AVM Techs.*, 972 F. Supp. 2d at 147. This Court should reject Sunoco's poorly veiled attempt to get a ***third chance*** to present its legally flawed theory.

Notably, Sunoco never says what royalty rate it will present at trial or who will present it: Sunoco has no expert and any such testimony from Mr. Maier or Mr. Colella would be speculative and improper expert testimony. *See Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-CV-00453-RGA, 2018 WL 5045186, at *2 (D. Del. Oct. 17, 2018) (precluding fact witnesses from giving reasonable royalty opinions). Nor does Sunoco explain how the jury is expected to weigh the *Georgia-Pacific* factors to determine damages. Without "competent evidence regarding how the [jury] should perform the reasonable royalty calculation," Sunoco's damages claim is doomed. *Unicom Monitoring, LLC v. Cencom, Inc.*, No. CIV.A. 06-1166 MLC, 2013 WL 1704300, at *8 (D.N.J. Apr. 19, 2013); *AVM Techs.*, 927 F. Supp. at 147 ("Before presenting a damages number to the jury, the patentee must establish that its calculation is based on reliable methodology and concrete facts."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 6001902, *2 (N.D. Cal. Nov. 12, 2013).

Sunoco says Mr. Colella and Mr. Maier will be testifying only about their personal knowledge, not about the hypothetical negotiation.[2] But Sunoco has no one else to testify about what the parties would agree to at the hypothetical negotiation, so any testimony on it would be speculation. Further, both witnesses testified that, other than the ▮▮▮▮ license

---

[2] Rightly so, because neither were employees of Texon in 2007 or Sunoco in 2011, which is when Dr. Ugone says the hypothetical negotiation would take place. *See Acceleration Bay*, 2018 WL 5045186, at *2 (D. Del. Oct. 17, 2018) (excluding lay testimony where the witness "did not work for the correct company . . . at the time of the hypothetical negotiation").

3

(which, as discussed below, would also need to be apportioned), they have no knowledge of what a bare license to the patents-in-suit would look like. (*See* D.I. 556-9 at 31:8-36:19, 123:13-124:10; D.I. 556-11 at 162:8-23.) So if Mr. Maier and Mr. Colella are limited to their personal knowledge, Sunoco has no "competent evidence" from which a jury can calculate reasonable royalty, and if they engage in guesswork, they would be invading the province of the expert. Either way, Sunoco is left with no damages case to present.

Sunoco also cannot salvage a damages case by calling the BSAs comparable licenses. Tellingly, while it says it identified such licenses during discovery, Sunoco does not actually cite its response to the interrogatory where Defendants ***expressly asked*** for those licenses. That is because Sunoco did not list a single one. (D.I. 556-1 at 29-32.) Nor did Sunoco identify a single witness who could speak on comparable licenses. (*Id.*) Instead, it relied solely on Dr. Ugone. But Dr. Ugone is out, and so is Sunoco's comparable license theory.

Further, Sunoco cannot use the cloak of comparability to avoid apportioning. (*See* D.I. 564 at 4, 6-8.) Sunoco would need an expert to adjust the BSAs, based on the value of the patents alone, to make them "comparable." *See Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019). Sunoco points to the ▬▬▬ BSA in particular, which Magellan assumed when it took over the terminal, but that still needs to be apportioned. The Court found as much when it struck Dr. Ugone's attempt to rely on the ▬▬▬ BSA to satisfy the entire market value rule.³ (D.I. 547 at 11.)

Sunoco has tried and failed multiple times to extract the maximum damages by

---

³ Sunoco's cited cases do not allow it to rely on the unapportioned BSAs either. In *Dow*, the Federal Circuit faulted the district court for failing to consider a prior license with a "different pricing structure" to assess damages, not one that the court already found needed to be apportioned but was not (and could not be). *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82, n.4 (Fed. Cir. 2003). The same is true in *Mondis*, where the court merely left open the possibility that the plaintiff could rely on prior licenses to calculate reasonable royalty in a new trial but reiterated that "[a]ll expert testimony must reflect the Federal Circuit law on apportionment[.]" *Mondis Tech. Ltd v. LG Elecs., Inc.*, No. CV 15-4431 (SRC), 2020 WL 1933979, at *5 (D.N.J. Apr. 22, 2020).

4

relying on the full value of the BSAs. Sunoco's latest attempt to achieve that goal through fact witnesses who would necessarily testify as undisclosed experts, and comparable licenses, which still require apportionment, fails for the same reasons as its earlier attempts.[4]

### B. Sunoco Cannot, on the Eve of Trial, Rely on the ▮▮▮ Agreement or Defendants' Rebuttal Expert to Salvage its Damages Case

Aside from rehashing its excluded BSA-based argument, Sunoco tries to piece together a damages case by relying on the Texon agreement and Defendants' expert's rebuttal testimony intended to show the jury that the BSA theory was fantasy. Sunoco never disclosed these new theories to prove damages, and nothing about Sunoco's repeated refusal to timely disclose a legally sufficient damages theory is substantially justifiable or harmless, so they should be excluded. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); Fed. R. Civ. P. 37(c)(1). Sunoco's new theories also suffer the same flaws as its BSA argument: they do not reflect the value of the patents and thus need to be apportioned. Without an expert, Sunoco cannot do that, so it has no damages case to present.

#### 1. Sunoco's failure to disclose the Texon agreement as a basis for its damages claim requires exclusion

Sunoco and Texon entered the ▮▮▮ license as part of the Texon agreement. It provided for a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but also included other terms, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* D.I. 566-1, Ex. 114 at 55-56.) Sunoco never relied on the ▮▮▮ license as a basis for damages: it did not cite the agreement ***even once*** in its disclosures or in its response to Defendants' Interrogatory No. 8, which expressly sought all

---

[4] The same goes for Sunoco's "lost blend opportunity" argument. (D.I. 562 at 20-21.) Sunoco abandoned any attempt to prove such alleged lost profits from PSL. (D.I. 404-5 at 3 n. 9; *see also* D.I. 556-4.) Moreover, the Court already rejected this theory as unreliable for failure to apportion between automated and non-automated upstream blending (D.I. 547 at 14), so for the same reasons described above with respect to the BSAs, Sunoco cannot present this theory at trial either.

the facts underlying Sunoco's damages theories.⁵ (*See* D.I. 553 at 2-3.) The reason is clear: Sunoco was shooting for damages ▮▮▮▮ than the ▮▮ royalty.

Sunoco admits it never disclosed the ▮▮ agreement as a basis for recovering damages. It says it was not until ***Defendants' expert*** referenced the ▮▮ rate—as the maximum upper bound that Defendants' would be willing to pay—that Sunoco's expert even considered that provision, or any other provision of the ▮▮ agreement. And, when Dr. Ugone looked at it, he said that the agreement is ***not relevant*** to damages:



(D.I. 404-1, ¶ 46(b).)⁶ Dr. Ugone is the only witness Sunoco relied on for its damages case, so his original silence and ultimate repudiation of the ▮▮ agreement proves the lack of disclosure. Further, that Sunoco designated Mr. Colella on Rule 30(b)(6) topics related to the ▮▮ acquisition is irrelevant, given that he agreed he had no "firsthand knowledge" of the agreement, because he "was not with Sunoco at the time[.]" (Ex. 19 at 33:1-9.)⁷

Under the *Pennypack* factors—which Sunoco does not even mention—Sunoco's non-disclosure is not substantially justified or harmless. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Sunoco tries to rely on the ▮▮ agreement's provisions for "New ▮▮ Systems," which Mr. Colella says are based on ▮▮ entering into a

---

⁵ That Sunoco cited the ▮▮ agreement in its response to Interrogatory No. 15 as a "license agreement "***involving any patent or technology relating to equipment*** used at any terminal or facility" is insufficient to put Defendants on notice that it planned to rely on it to calculate a reasonable royalty for a license to the asserted patents. (D.I. 562 at 4.)
⁶ All emphasis added unless otherwise indicated.
⁷ Indeed, Defendants pushed Sunoco to identify the persons with knowledge about Sunoco's damages contentions before Defendants took a ***single deposition*** of Sunoco's witnesses. (D.I. 556-2 at 1-2; *see also* D.I. 553 at 2-3.) Never did it identify Mr. Colella or Mr. Maier in its response, so the fact that Sunoco designated them on topics related to the ▮▮ acquisition is simply insufficient to put Defendants on notice that those witnesses had facts relevant to a ***damages*** theory ***based*** on the ▮▮ Sunoco agreement. (D.I. 562 at 10.)

BSA with Texon.  (D.I. 565 at 7-8.)  But allowing Sunoco to rely on the unapportioned ▮▮▮▮ BSAs would amount to an end-run around the *Daubert* ruling.  So (1) the "surprise or prejudice" to Defendants is great given that the Court has already excluded the very theory Sunoco now wants to re-package through its undisclosed fact witnesses; (2) the prejudice cannot be cured because Sunoco has no expert to apportion the BSAs and no fact witnesses with personal knowledge to do it either; and (3) allowing Sunoco to add a new theory based on the ▮▮▮▮ BSAs that need to be apportioned would necessarily disrupt the trial.

Further, that the nondisclosure is (4) in bad faith or willful is clear from Sunoco's conduct since the U.S. Venture case, when it was first told it needed to apportion the BSAs. (*See* Ex. 20.)  Three years and three decisions later, Sunoco refuses to do so.  Further, from the U.S. Venture trial, we know that Mr. Colella is going to overreach, and opine that the patents are in fact worth the full $140 million that Sunoco paid for Texon's entire Butane Blending business—which included employees, assets, other BSAs, and more, in addition to the patents.  (*See* Ex. 21 at 506:13-508:16; D.I. 556-11 at 129:10-130:23.)  And (5) though the Texon agreement may be important to Sunoco's last-ditch effort to seek damages, "the 'flouting of discovery deadlines' has been the basis for decisions to exclude even critical evidence."  *Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, No. CV 13-1475-GMS, 2016 WL 8488409, at *4 (D. Del. Feb. 1, 2016).  Exclusion is particularly warranted here, given that Sunoco's refusal to apportion or provide alternative theories is not the product of inadvertence.  *Id.* ("[C]ourts applying the *Pennypack* factors in 'sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent' with respect to requests to supplement critical evidence.") (quotation omitted).

This case is thus like *MicroStrategy Inc. v. Bus. Objects, S.A.*, where the Federal Circuit affirmed the exclusion of plaintiff's "non-expert damages theories" (after its experts first and second reports were excluded) because the new theories surprised defendants "on

7

the eve of trial and prejudiced any response," and "most of the information [plaintiff] sought to introduce was in its possession for over a year before trial." 429 F.3d 1344, 1357 (Fed. Cir. 2005). The Court noted, "[w]hile this exclusion admittedly left [plaintiff] without evidence of damages or causation for most of its . . . claims, this factor is only one of five that does not tip the scale in favor of [plaintiff], particularly where [plaintiff] alone is to blame for creating this situation." *Id.* The same is true here: Sunoco could have relied on the Texon agreement, and properly apportioned the ▇▇▇▇ BSA, but it did not. Now it is too late.

### 2. Sunoco never disclosed it would rely on Defendants' rebuttal expert's analysis and it cannot do so now

Sunoco's last-minute attempt to rely on Defendants' expert to somehow satisfy ***its burden*** to prove damages similarly fails. Sunoco did not timely disclose any intention to call Dr. Maness at trial, or rely on him for an affirmative damages opinion.[8] Instead, Sunoco repeatedly fell back on Dr. Ugone for all things damages, who expressly criticized Dr. Maness' analysis. (D.I. 556-15 at ¶¶ 6-7.) Sunoco cannot have properly disclosed the range of potential damages on which Dr. Maness commented when it rejected those figures.

Moreover, Sunoco's only arguable articulation of its reasonable royalty theory was to seek damages based on its "lost profit share"—i.e. the BSAs. (D.I. 556-1 at 32.) It never disclosed a theory based on anything other than the BSA profit share. Allowing Sunoco to ignore its discovery obligations and rely on Dr. Maness' range of the parties' willingness to pay—which has nothing to do with Sunoco's "lost profit share"—would be highly prejudicial. *See Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, C.A. No. 99-3121 (WHW), 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008), *aff'd sub nom. Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010) ("Strategic

---

[8] Sunoco served third amended deposition designations just last week where it designated Dr. Maness' testimony in its case-in-chief. (Ex. 22, at 42.) Defendants objected to Sunoco's late and improper designations and requested Sunoco withdraw them. Sunoco has not responded.

8

manipulation of the discovery process, especially with regard to such critical disclosures as the theory of damages is the ill toward which Rule 26 and Rule 37 are aimed.").[9]

Sunoco's failure to disclose its affirmative reliance Dr. Maness' analysis must be excluded under Rule 37.  ***First***, the "prejudice or surprise" to Defendants at having their own expert's comments twisted into an affirmative damages opinion that purportedly supports Sunoco is undeniable.  That prejudice stems from Sunoco's suggestion that Dr. Maness ***opined*** that Sunoco is owed ▬▬▬ as a reasonable royalty or a maximum of ▬▬▬ under the *Georgia Pacific* factors.  Defendants' contention is and has always been that they owe no damages to Sunoco.  Had Sunoco not submitted Dr. Ugone's report, Defendants would not have needed to serve Dr. Maness' rebuttal report.  Indeed, Dr. Maness made clear in his deposition—testimony that Sunoco just designated for the first time for trial last week (*see* Ex. 22 at 42)—he was not providing an independent opinion on what the reasonable royalty ***is*** but instead what it ***could not be***.  (Ex. 18 at 95:10-17 ("I'm not going to ask the jury to award anything."); *see also* Ex. 23 at ¶ 7.)  Further, Dr. Maness said the ▬▬▬ and ▬▬▬ numbers were just "among the items that the parties would consider" as part of the hypothetical negotiation.  (Ex. 23 at ¶ 227.)  In fact, he said that Magellan would be in a better positon than Texon to negotiate the ▬▬▬ royalty down.  (*Id.* at ¶ 231; Ex. 18 at 253:19-254:4 (same).)  Consistent with this, Dr. Maness opined that a lower rate—as low as ▬▬▬—would be within "the expected range for a reasonable royalty from the hypothetical negotiation."  (Ex. 23 at ¶ 232.)

Sunoco could have relied on the ▬▬▬ license or the ▬▬▬ to calculate damages.  Had it done so, Dr. Maness' analysis would have necessarily been very different, given his role as a rebuttal to Dr. Ugone.  But it did not.  Sunoco should not now be allowed

---

[9] *Kaneka Corp. v. SKC Kolon PI, Inc* says nothing different; there the court allowed plaintiff to present reasonable royalty evidence, but only "evidence that it ha[d] previously disclosed." No. CV 11-3397 JGB (RZX), 2015 WL 12696109, at *3 (C.D. Cal. Nov. 5, 2015).

9

to adopt and present Dr. Maness' range to the jury, as if Dr. Maness affirmatively provided any opinion on the damages owed to Sunoco. Doing so would mislead and confuse the jury and unduly prejudice Defendants: Dr. Maness' opinion—crafted to show that Dr. Ugone's theories were unhinged from reality—could only be seen by the jury as an admission that Plaintiff need not even call its own expert because Defendants' expert has admitted they are liable and damages are owed. Defendants would be left, days later, to call Dr. Maness to try and explain that is not what he was saying. Defendants would face a challenge—possibly insurmountable—to repair their credibility on liability and damages when in reality it is the plaintiff whose theories were beyond belief. *See* Fed. R. Evid. 403*; Blumhorst v. Pierce Mfg., Inc.*, No. 4:10-CV-00573-REB, 2013 WL 12138591, at *2-3 (D. Idaho Feb. 14, 2013) (precluding defendant from relying on plaintiff's experts' depositions for these reasons).[10]

***Second***, the prejudice cannot be cured, and ***third***, the nondisclosure will disrupt trial because, as with the Texon agreement as whole, Sunoco would still need to apportion the ▬▬▬ license to reflect the value of the patents. Dr. Maness rebutted Dr. Ugone's testimony; it was not his job (or Defendants' burden) to satisfy the apportionment requirement. ***Fourth***, Sunoco's failure to disclose any intent to rely on Dr. Maness for its affirmative proof on damages is again the product of its willful decision to pursue a legally insufficient damages theory to the exclusion of all other theories to extract maximum damages. And ***fifth***, like with the Texon agreement, Sunoco's willfulness justifies excluding its damages case, even though it is an important element of plaintiff's proof. *Opengate*

---

[10] Defendants' position on the Goddard deposition is not contrary. If Sunoco liability expert Kytomaa testifies in a way contrary to his predecessor, Goddard, Defendants would impeach Kytomaa (D.I. 545 at 45:16-47:21), to the extent permitted by the Court—and the Court has not yet said (D.I. 547 at 15). Under most circumstances, impeachment material is not offered for its truth. It does not matter which statement is right; it matters that the statements contradict. Sunoco is not proposing to impeach Maness with Maness; he will not have testified yet. Sunoco proposes to use his testimony as an admission to satisfy their burden of proof. But Maness made no admission as to what the appropriate royalty is; he rebutted Ugone. Indeed, when directly asked what royalty the jury should award, he said he would not ask them to award anything. (Ex. 18 at 95:10-17.)

*Capital Grp.*, 2016 WL 8488409, at *4.  All factors thus warrant exclusion.

Further, Sunoco cannot rely on Dr. Maness' analysis or testimony because both are hearsay.  *See Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 163–64 (3d Cir. 1995) (expert's testimony from previous trial is inadmissible hearsay); *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, No. CIV.A. 03-209 JJF, 2005 WL 2296613, at *2 (D. Del. Sept. 20, 2005) (expert's deposition testimony is inadmissible hearsay).  Sunoco has not shown otherwise or that Dr. Maness' analysis or testimony falls under a hearsay exception, and for that reason alone, Sunoco cannot rely on either to avoid summary judgment.  Fed. R. Civ. P. 56(c)(4).

The cases Sunoco cites are distinguishable.  In *Info-Hold, Inc. v. Muzak LLC*, the Federal Circuit remanded for the district court to consider whether defendant's expert's deposition testimony was admissible.  783 F.3d 1365, 1372 (Fed. Cir. 2015).  In *Mondis*, defendants' damages expert testified ***at trial***, so there was admissible evidence in the record.  *Mondis*, 2020 WL 1933979, at *3.  In *Robocast, Inc. v. Apple Inc.*, the court merely said "much can happen between now and trial" (including potentially another round of expert reports) so "[p]erhaps" plaintiff could show an "exceptional circumstance" to allow it to rely on defendants' expert's testimony, without discussing whether it was the admissible.  39 F. Supp. 3d 552, 567 (D. Del. 2014).  And in *Intellectual Ventures I LLC v. Xilinx, Inc.*, the defendants do not appear to have challenged the admissibility of their expert's testimony or have argued their expert's analysis was based on a different theory than the one disclosed by the plaintiff.  No. 10-1065-LPS, 2014 WL 1573542, at *2 (D. Del. Apr. 21, 2014).

    **C.**    **Summary Judgment is Appropriate Because Sunoco Foreclosed Any Non-Excluded Damages Theories**

This case is *Promega*: Sunoco "deliberately t[ook] a risk" by relying on a singular damages theory based on its BSAs "that ultimately prove[d] unsuccessful," and has now waived any damages under Section 284.  *Promega*, 875 F.3d at 666; *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879

11

F.3d 1299, 1312 (Fed. Cir. 2018).[11]  Sunoco's meager attempt to distance itself from *Promega* falls flat: by refusing to disclose any other damages theory during discovery and steadfastly clinging to the one designed to extract maximum damages, despite being told for over three years that its theory contravenes blackletter damages law, Sunoco has in fact "given up its right" to seek damages based on any other theory.  (D.I. 562 at 17.)  None of Sunoco's cited cases are applicable because in each of them, unlike here, properly disclosed damages evidence existed in the record.  *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328-1329 (Fed. Cir. 2014), *overruled in part on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (non-excluded expert testimony on damages remained in the case); *Info-Hold*, 783 F.3d at 1372 (licenses from which a factfinder could determine damages remained in the case).  Summary judgment is thus proper.

        **D.**    **Sunoco Forfeited a Jury Trial by Pursuing an Unviable Damages Theory**

As Sunoco recognizes, under *In re Lockwood*, 50 F.3d 966 (Fed. Cir. 1995), it only retains a jury trial right if it "took no steps to forfeit that right." (D.I. 562 at 22.)  Sunoco's steadfast refusal to acknowledge blackletter law is precisely such a step.  It was Sunoco's choice to rely on the BSA theory to the exclusion of all others, and now that the Court has excluded it, Sunoco's only remedy is equitable, to which no jury right attaches.  *See In re Tech. Licensing Corp.*, 423 F.3d 1286, 1288-91 (Fed. Cir. 2005).  That does not change simply because Sunoco refuses to acknowledge the reality of its situation and agree to no damages.  *AstraZeneca LP v. Tap Pharm. Prod., Inc.*, 444 F. Supp. 2d 278, 287 (D. Del. 2006); *Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1121-1122 (N.D. Cal. 2008).  This Court should thus strike Sunoco's jury demand.

For the foregoing reasons, the Court should grant the instant Motions.

---

[11] Like in *ePlus*, Sunoco relied only on Dr. Ugone for its damages case, 700 F.3d at 523, and the evidence it wants to present now is just a rehash of Dr. Ugone's excluded opinions.  *Finjan* is also on point because the Court said Dr. Ugone had to apportion the patented and unpatented (or "non-infringing") features of the BSAs.  879 F.3d at 1311; D.I. 547 at 14.

12

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | FISH & RICHARDSON P.C. |
| By: */s/ Rodger D. Smith II*<br>   Rodger D. Smith II (#3778)<br>   1201 North Market Street<br>   Wilmington, DE 19801<br>   (302) 658-351-9205<br>   rsmith@mnat.com<br><br>   OF COUNSEL:<br><br>   David S. Moreland<br>   John W. Harbin<br>   MEUNIER CARLIN & CURFMAN LLC<br>   999 Peachtree St., N.E., Suite 1300<br>   Atlanta, GA 30309<br>   (404) 645-7700<br>   dmoreland@mcciplaw.com;<br>   jharbin@mcciplaw.com<br><br>*Attorneys for Defendant*<br>*Powder Springs Logistics, LLC* | By: */s/ Nitika Gupta Fiorella*<br>   Douglas E. McCann (#3852)<br>   Martina Tyreus Hufnal (#4771)<br>   Nitika Gupta Fiorella (#5898)<br>   222 Delaware Ave., 17th Floor<br>   Wilmington, DE 19899<br>   Telephone: (302) 652-5070<br>   dmccann@fr.com; hufnal@fr.com;<br>   fiorella@fr.com<br><br>   Joseph A. Herriges<br>   FISH & RICHARDSON P.C.<br>   3200 RBC Plaza<br>   60 South Sixth Street<br>   Minneapolis, MN 55402<br>   Telephone: (612) 337-2579<br>   herriges@fr.com<br><br>*Attorneys for Defendant*<br>*Magellan Midstream Partners, L.P.* |

Dated:  June 22, 2020