**PHILLIPS, MCLAUGHLIN & HALL, P.A.**

JOHN C. PHILLIPS, JR.
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL
DAVID A. BILSON
MEGAN C. HANEY

ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806
_____

(302) 655-4200 (P)
(302) 655-4210 (F)

June 26, 2020

**VIA CM/ECF**

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street – Unit 26, Room 6124
Wilmington, DE 19801-3555

**REDACTED - PUBLIC VERSION**

      Re:   *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC, and Magellan Midstream Partners, L.P.*, Civil Action No. 17-cv-1390-LPS-CJB

Dear Chief Judge Stark:

    Pursuant to the Court's Oral Order during the June 23, 2020 hearing (D.I. 573), the parties have met and conferred, and jointly submit the following status report.

    **A.   Proposals for Introducing the Testimony of Dr. Maness at Trial**

    During the June 23 hearing, the Court requested "the parties to meet and confer very soon about how the Maness evidence is going to come in," and asked the parties to address the following questions: "Will it be through depositions? Will it be through live testimony? And how will I cure any prejudice that may have arisen from my ruling today, any prejudice to defendants? What are the parties able to work out and if not work out, what are their positions on those points?" Tr., 98:19–99:5. The parties have met and conferred, and outline their positions on the use of Dr. Maness' testimony at trial, as follows.

    **1.   Sunoco's Proposals**

    Sunoco believes that any prejudice to Defendants by Sunoco introducing Dr. Maness' testimony will be most effectively cured by calling Dr. Maness live. Accordingly, Sunoco's preference is to call Dr. Maness live at trial, rather than playing his testimony by deposition.

    Sunoco proposes three options for calling Dr. Maness live. First, Sunoco proposes that the Court treat damages in a phased manner by (1) trying liability first, and (2) if the jury finds infringement of a valid claim, trying damages with the same jury. In this scenario, Sunoco anticipates that it will need to call one fact witness, and possibly two fact witnesses, back to the stand for the damages phase of the case. Further, Sunoco can then call Dr. Maness adversely (similar to second proposal below) or proceed with cross-examining Dr. Maness in Defendants' rebuttal case on damages (similar to third proposal). As Defendants discuss below, it appears that Defendants prefer this approach.

Second, Dr. Maness could be called adversely by Sunoco during its case-in-chief, and could be called again by Defendants in their rebuttal case. Sunoco believes that any potential prejudice to Defendants can be cured by Sunoco explaining to the jury that Dr. Maness is Defendants' expert and is being called adversely to the stand, and/or the Court providing instructions to the jury. If the Court deems that instructions are necessary, Sunoco suggests that the parties exchange proposed instructions on this issue and submit such instructions (either as joint or competing instructions) as part of the proposed jury instructions to be filed with the Court.

Third, Sunoco proposes that the Court could hold damages open after Sunoco rests its case-in-chief (such that Defendants cannot move for judgment as a matter of law on damages after Sunoco rests), and Defendants call Dr. Maness in their rebuttal case with Sunoco cross-examining Dr. Maness after Defendants' direct examination. Sunoco does not believe that instructions to the jury would be necessary in this circumstance, but is not opposed to providing instructions if the Court deems it necessary.

If Defendants do not bring Dr. Maness to testify live at trial, the only other option is to introduce Dr. Maness' testimony by deposition.

Lastly, Sunoco responds to Defendants' additional comments below. Sunoco notes that three hours before the parties' meet and confer on June 25, Defendants served a letter requesting that Sunoco supplement its Response to Interrogatory No. 8 by noon today (June 26) to identify any fact witnesses that Sunoco will call at trial to support Sunoco's damages case "and make them available for deposition between now and trial," to remove "all references to the [BSAs]" in designated deposition testimony, to remove all BSAs from Sunoco's exhibit list, and to provide further updated pretrial disclosures by July 1. Ex. 1.

With respect to the BSAs, during the June 23 hearing the Court stated that the BSAs "may be admissible for some purpose," and "I'm not deciding their admissibility today." Tr., 97:8–17. As such, Sunoco does not believe globally removing all BSAs from its exhibit list and designated testimony is appropriate. Sunoco did make clear during the meet and confer with Defendants, and does so again here, that it will comply with the Court's ruling regarding the use of the BSAs at trial (*id.* at 96:6–97:7).

Defendants also claim that they do not know what documentary and testimonial evidence Sunoco will introduce at trial. Not so. The parties just briefed and argued these issues in connection with Defendants' summary judgment motion, where Sunoco detailed the documentary evidence (independent of Dr. Ugone) providing factual data points that the jury can use to reach a conclusion on the amount of damages, i.e., the "buckets" discussed at the hearing.[1] Defendants

---

[1] For example, the Texon/Sunoco acquisition (containing buckets 2 and 3) has several data points, including what Dr. Maness uses to opine on the patent valuation (referred to as bucket 2), and the ████ License (referred to as bucket 3) for Existing ████ Systems and for New ████ Systems, from which the jury can determine a per-gallon rate to apply to Defendants' accused volumes. D.I. 562, 9–11 (Sunoco MSJ Opp.); D.I. 565, ¶¶ 18-25 (Colella Decl.). Another data point that the jury can apply is Dr. Maness' opinion that "[t]he most appropriate measure of the reasonable royalty would be a royalty equal to no more than ████████████████." D.I. 566, Ex. 114, p. 49.

are also aware as to what testimonial evidence Sunoco will introduce at trial, as both Mr. Colella and Mr. Maier were designated as Rule 30(b)(6) witnesses on issues related to damages, including the Sunoco/Texon acquisition (buckets 2 and 3). Mr. Colella, for example, provided corporate testimony on the Sunoco/Texon acquisition and on the ▓▓▓▓ License (bucket 3) contained within that acquisition agreement. Both also recently submitted declarations on these same issues. D.I. 562, 3–6, 9–14; D.I. 565 ¶¶ 18–25. Given that Defendants already deposed these same individuals as corporate witnesses with the same evidence that will be presented at trial, Sunoco does not believe another deposition between now and trial or a supplement of Sunoco's Response to Interrogatory No. 8 to provide information known to Defendants is necessary. That said, in view of the changed landscape with the Court's *Daubert* ruling, Sunoco is willing to supplement its Response to Interrogatory No. 8 by July 1 and seeks the Court's guidance on whether to provide a deposition at this time.

As to Defendants claim that they do not know Sunoco's "legal theory" and request for Sunoco to provide "the specific royalty rate and royalty base that Sunoco intends to argue or present at trial," Ex. 1, this request appears close to providing information as to what the parties would have agreed to at the hypothetical negotiation, which would be inconsistent with the Court's ruling that "opinions about the hypothetical negotiation are the province of expert testimony, not fact testimony." Tr., 96:13–15. But as Sunoco explained (Tr., 64:15–65:20), without an expert, Sunoco intends to present evidence from which the jury can determine the appropriate measure of damages in compliance with the Court's rulings regarding the BSAs and other issues addressed at the June 23 hearing. *See Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (reversing summary judgment of no damages, stating "[s]hould [patentee] prove infringement . . . the district court should consider the so-called *Georgia–Pacific* factors in detail, and award such reasonable royalties as the record evidence will support"). However, Sunoco does intend to provide revisions to its pretrial disclosures to reflect and be consistent with the Court's recent rulings, including a revised itemized statement of damages with the potential damages base (e.g., blend volumes and number of systems) and rates based on the admissible evidence (e.g., as provided in the ▓▓▓▓ License) that will be presented at trial, and will do so by July 1.

### 2. Defendants' Proposals

Based on the information currently available to Defendants, Defendants believe that to best protect against the prejudice to Defendants arising from Sunoco's belated reliance on Dr. Maness' testimony, the Court should phase the trial so that all liability determinations are made first and then, only if a valid claim is found to be infringed, the same jury will hear evidence on damages.[2]

During discovery, Sunoco never meaningfully answered Interrogatory No. 8, relying only on Dr. Ugone. Now that Dr. Ugone is out, Defendants do not have a contention from Sunoco as to the damages model it will submit to the jury, and what documentary and testimonial evidence (fact or expert) supports that model. For example, Sunoco has not provided a revised itemized statement of damages detailing what it will seek from the jury as the case now stands. *See* Proposed Final Pretrial Order at Section VII, *available at* https://www.ded.uscourts.gov/sites/ded/files/chambers/Proposed_Final_Pretrial_Order_Rev-01-11.pdf. Sunoco has not indicated whether it intends to simply rely on Dr. Maness's testimony

---

[2] Defendants maintain their objection to Sunoco relying on Dr. Maness at trial.

The Honorable Leonard P. Stark  Page 4
June 26, 2020

about the ▮▮▮▮ royalty, or the ▮▮▮▮ patent acquisition price, or the ▮▮▮▮ ▮▮▮▮ metric, or whether it plans to use any of those data points as a point of departure to seek something more. Sunoco also has not said whether it intends to seek only a reasonable royalty at trial, or some other measure of damages, such as lost profits. Further, Sunoco has not yet explained how, if at all, it intends to admit the Butane Supply Agreements and for what purpose. Defendants requested this information from Sunoco (*see* Ex. 1, Fiorella Letter to Replogle, dated June 25, 2020), but during the meet and confer Sunoco was unable to confirm if it will provide the information at all. Until Defendants have this information, they cannot fully evaluate the best way to cure the prejudice to Defendants. Given the impending trial, Defendants request that the Court order supplementation by July 1, and allow Defendants to modify their request for a phased trial if necessary after Sunoco provides the required information.

To the extent the jury does need to hear the damages issues, depending on the damages theory Sunoco presents (either in advance of the trial, as requested, or during damages opening statements if that is the first time Defendants hear the theory), Defendants will assess whether Dr. Maness will attend live. Defendants do not agree to Plaintiff calling Dr. Maness live adversely in its damages case in chief.

  **B.** **Coronavirus Concerns for August Trial**

During the June 23 hearing, the Court requested that the parties provide information as to: (1) whether there are "any members of the trial team or any party who cannot or should not travel to Delaware and be in our courtroom in August due to their own health situation or the health situation of those with whom they reside"; (2) information as to whether "there any will-call witnesses that cannot or should not travel to Delaware and be in our courtroom in August for the same reasons"; and (3) "if both sides are not confident that all members of the trial team and all will-call witnesses can safely be here for trial in August," whether the Court should "consider an order that permits only a limited number of lawyers, probably two or three per side, and a corporate representative, to be in the courtroom for trial, and requires all other lawyers to appear remotely by video and requires all witnesses to testify remotely by video." Tr., 100:14-101:12.

  **1.** **Sunoco's Response**

First, the members of Sunoco's trial team do not have any health situations, and do not reside with any individuals who have health situations, that prevent them from traveling to Delaware or being in the courtroom in August. However, Sunoco wishes to note that all members of its trial team reside in Houston, Texas. Currently, the State of Texas and the City of Houston are experiencing record-level surges in coronavirus cases, and several states (e.g., New York, New Jersey, and Connecticut) have issued orders requiring individuals traveling from Texas to self-quarantine for 14 days.[3] While Sunoco is not aware of any such orders from the State of Delaware at this time, Sunoco wishes to bring this issue to the Court's attention, as it could impact whether Sunoco's entire trial team will be able to be physically present in the courtroom in August, depending on how circumstances develop in the coming weeks.

---

[3]  *See, e.g.*, https://www.houstonchronicle.com/politics/texas/article/Texas-travelers-must-quarantine-when-arriving-in-15363288.php.

The Honorable Leonard P. Stark     Page 5
June 26, 2020

Second, as previously relayed to the Court on June 11, 2020 (D.I. 548), Sunoco had at least one will-call witness that is unwilling to travel to Delaware for trial (and thus has now been listed as a may-call). Sunoco also has one will-call witness (its corporate representative) who is 64 years old, and thus is considered by the CDC to be at an increased risk of severe illness from the coronavirus.[4] Depending on how circumstances develop in the coming weeks and months, this witness may or may not be willing to travel to Delaware for trial.

Further, given that Sunoco's corporate representative may not be able to travel to Delaware and may have to testify remotely by video, Sunoco has an additional concern about the prejudice that may incur to Sunoco. Specifically, if the jury must be physically present in the courtroom and Sunoco's corporate representative testifies by video (if he cannot be physically present due to health concerns), Sunoco believes that this may cause the jury to be unfairly prejudiced against Sunoco, given that Sunoco is the plaintiff who filed this litigation.

Third, because Sunoco is not confident that one will-call witness (its corporate representative) can safely travel to Delaware for an August trial, Sunoco believes that it may be necessary to have at least this one witness testify remotely by video. Otherwise, Sunoco does not believe that any particular limits on the number of attorneys in the courtroom will be required.

### 2. Defendants' Response

Defendants are not currently aware of any attorney or witness who cannot or should not travel to Delaware or be in the courtroom in August with the exception of one "may call" rebuttal witness.

As a general matter, Defendants do not believe they can receive a fair trial if all the witness examinations must be handled remotely. That does not, however, appear to be the situation required based on the parties' and witness' availability. Defendants do believe there can be exceptions in the case of a witness who has a fairly small role in the presentation of the evidence. Further, if the trial is phased, Defendants might request permission to allow a witness who testified live for liability appear by video in the damages phase, to avoid having to subject the witness to traveling twice.

## C. Additional Matters

### 1. Availability of Sunoco's technical expert (Dr. Harri Kytomaa)

Sunoco's technical expert, Dr. Harri Kytomaa, currently has a trial scheduled from July 27 to August 5, 2020, in the Middle District of Louisiana. *See Attuso, et al. v. OmegaFlex, Inc., et al.*, No. 18-cv-00157, at D.I. 100, D.I. 101 (M.D. La. 2018). In that case, Dr. Kytomaa is an expert witness for the defendants and anticipates testifying at the end of the trial, between August 3–5. As such, Dr. Kytomaa will be unable to be present during the first three days of the currently scheduled trial, during which Sunoco witnesses will testify on issues (e.g., the operation of Sunoco's commercial systems and inventor testimony) that lay the factual predicate for some of Dr. Kytomaa's opinions. Absent a change, the first day he will be able to travel to Delaware will

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

The Honorable Leonard P. Stark										Page 6
June 26, 2020

be Thursday, August 6. While he could review the trial transcripts while traveling, Dr. Kytomaa will still need at least a day of preparation prior to testifying. Thus, as a practical matter, Dr. Kytomaa may be unable to testify until Monday, August 10. Accordingly, Dr. Kytomaa's testimony would likely need to be taken out of order, if the case proceeds on August 3.

### 2. Defendants' Response to Dr. Kytomaa's availability

Defendants did not become aware of Dr. Kytomaa's limited availability due to another trial in Louisiana until Thursday evening when Sunoco sent its draft of this letter. The Louisiana trial was set to begin in May, just two months earlier than this trial, but on May 1, the District Court for the Middle District of Louisiana suspended all jury trials until June 30, 2020. (*See* Amended Administrative Order, http://www.lamd.uscourts.gov/orders/public_orders/AO%202020%207-4.30.2020.pdf.) If the Louisiana District Court suspends trials through July, Dr. Kytomaa's trial will be moved, as it begins July 27. Nevertheless, even if the trial proceeds, Dr. Kytomaa's Louisiana trial concludes August 5, only two days after this trial is scheduled to begin with jury selection. Given that schedule, and in light of the fact that all other party witnesses and attorneys in this case are available, Defendants request that the Court require Dr. Kytomaa to make arrangements in his other trial so that he can testify at least by August 6 in this trial. Defendants believe accommodations can be made, if even necessary, to allow Dr. Kytomaa to testify out of turn so that he testifies no earlier than August 6.

* * * *

Counsel are available at the convenience of the Court should Your Honor have any questions.

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (No. 110)