IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | : | |
| Plaintiff, | : : : | |
| v. | : : | C.A. No. 17-1390-LPS-CJB |
| POWDER SPRINGS LOGISTICS, LLC, and MAGELLAN MIDSTREAM PARTNERS, L.P. | : : : | |
| Defendants. | : : | |

## **MEMORANDUM ORDER**

On July 2, 2020, the Court ordered that a partially remote jury trial in this matter would proceed with specific guardrails to protect the safety of jurors, litigants, and staff, while at the same time ensuring a fair trial for all parties. (D.I. 583) The Court's order was based on the particulars of this case, input from the parties, and significant consideration. I continue to believe that as of the date I entered the order, the type of restrictions on in-court participation discussed there were sound and appropriate for a trial then-scheduled to begin on August 3. But circumstances during the COVID-19 pandemic are dynamic and move fast.

Sunoco sent a letter to the Court on the evening of Friday, July 10, 2020, "express[ing] strong concerns regarding the ability to conduct a fair jury trial starting August 3, 2020, under the current plans and conditions" and, therefore, requesting a continuance. (D.I. 590 at 1) Sunoco raised a number of issues, including about jury selection, witness preparation, and burdens on out-of-state counsel. (*Id.*) Defendants filed a response letter the next day, opposing a continuance of the trial but "preserv[ing] their objection to the Court's decision not allowing live appearances by witnesses willing to appear live [in the courtroom]." (D.I. 591) On Monday,

July 13, I held a teleconference to discuss the issues raised in the parties' letters. (*See* D.I. 594) ("Tr.")[1]

    After hearing the parties' positions, I ultimately decided to continue the trial, explaining:

> [E]ven though the order that I got out setting out the partial remote jury trial for August 3rd is not a very old order . . . there ha[ve] been developments that . . . I didn't fully foresee in the last 10 days.
>
> Principally, the number of new positive coronavirus cases in Delaware has not steadily declined. . . . [Our court is] still in Phase I, we're not in Phase II. We need to be in Phase II for a jury trial. And it's possible we'll be in Phase II by August 3, but, as everyone acknowledges, it's very unclear at this point.
>
> Also, I certainly didn't foresee that Pennsylvania would impose restrictions or at least strong guidance that might potentially impact travel between Pennsylvania and Delaware . . . . [This] impacts . . . both sides in this case and may have a disproportionate impact on the plaintiffs. . . . [That is] an extra added problem and risk for both sides.
>
> I'm especially concerned about the August 3rd date at the moment because out-of-state counsel who would want to take some of the slots that I have allowed for in-court attorneys . . . would have to right now be making their travel arrangements and . . . getting on a plane very soon, probably by the end of this week, so that they could consider complying with the suggestion to self-quarantine here in Delaware and also just to get settled and make sure that they are safe and healthy. . . . [S]o there aren't a lot of days left before they would have to make that decision to travel here.
>
> And I'm concerned, given all the uncertainty about whether we will be able to move to Phase II, it seems to me [it would be] a pretty terrible outcome here . . . if counsel traveled to Delaware, if you all go full speed ahead, getting ready, getting your witnesses

---

[1] Through an exchange of emails, I had previously arranged to meet with Delaware counsel from each party in the courtroom on the morning of July 13. The plan was to have an informal discussion (with out-of-state counsel "attending" by phone) of some of the precautions I planned to take in the upcoming trial, let counsel see the current plan for the adjusted courtroom layout for the August 3rd trial, and begin a collective consideration of open issues about the mechanics of the trial. After receiving the parties' letters and their views on whether to proceed with the courtroom session, I cancelled it in favor of the teleconference.

2

> ready for trial, and two weeks from now, I tell you we just can't go to Phase II so I have to put this trial off. . . . [Then I would] have a trial team from Houston stuck in Delaware and trying to find their way back to Houston where they may have to self-quarantine down there. . . .
>
> So that is all weighing very heavily on me.
>
> . . . [W]hile you all have raised a lot of good questions about the fairness of the trial that I envision, about the jury pool, I think that we do have good answers to most of those . . . I continue to think that what I have envisioned as this partial remote trial can be fair to both sides.
>
> I also do think that we can get a fair [and] representative jury to come in even under current circumstances.
>
> But I recognize that I could be wrong. No one has tried to do it yet here in Delaware. We have [had] some preliminary communication with the jury pool . . . in terms of them responding to jury notices and giving us an indication [of] whether they can show up or not show up. That initial data suggests to me that we can get enough people to show up, and that they would be a sufficiently representative cross-section of the community [and] that you all would have . . . a fair trial. But I have to admit that is uncertain because again until you do it, you don't know for sure.[2]

I then directed the parties to meet and confer and to let me know their views as to how I should think about rescheduling trial. (D.I. 593) On July 15, the parties submitted a joint letter with their views. (D.I. 596) Sunoco's preference is to file another status report in about six weeks, when hopefully "the parties and the Court will have greater clarity as to when in-person

---

[2] During the July 13 teleconference, counsel for Sunoco argued that it might not be possible at this time to seat any jurors from Sussex County. (*See, e.g.*, Tr. at 9) ("You have a huge problem down in Sussex County. On the western side of the state, you have people that have been exposed in the poultry industry . . . . On the eastern side of Sussex County, you have the recreational beach crowd where the virus has been running rampant. . . . So I think you eliminate a substantial number of possible jurors, if not all the jurors from Sussex County.") In continuing the August 3rd trial, I did not endorse the view that our District's citizens who reside in Sussex County could not be fairly and adequately represented in our jury pool.

3

trials may safely resume." (*Id.* at 1) Defendants' preference is, instead, that "the Court set this case down for trial around the end of September" and "set a status conference 3 weeks before the trial start." (*Id.* at 2)

Subsequent to the parties' letter, today our court announced that it has cancelled all jury trials through August 31. (*See* In Re: Court Operations Under the Exigent Circumstances Created by COVID-19)[3]

**NOW THEREFORE IT IS HEREBY ORDERED** that:

1. The parties shall meet and confer and, on August 14, 2020, submit a joint status report, providing their views at that time as to when this case should be set for trial or, alternatively, whether the Court should further delay that decision and order another status report on some subsequent date.

2. In the meantime, as the parties have agreed, they shall file the proposed final pretrial order on July 20. The pretrial conference presently scheduled for July 27 at 2:00 p.m. (*see* D.I. 573) is **CONVERTED** to a teleconference, during which the parties may, as they have requested, argue their "*Pennypack*" disputes and the issue of the admissibility of the Butane Supply Agreements (*see* D.I. 596 at 2).

July 17, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[3] Order available at https://www.ded.uscourts.gov/news/re-court-operations-under-exigent-circumstances-created-covid-19.

4