# Exhibit 2

# Proposed Pretrial Order

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P.,<br><br>       Plaintiff,<br><br>  v.<br><br>POWDER SPRINGS LOGISTICS, LLC and MAGELLAN MIDSTREAM PARTNERS, L.P.<br><br>       Defendants. | C.A. No. 17-1390 (LPS-CJB) |

**EXHIBIT 2:**
**PLAINTIFF SUNOCO'S STATEMENT OF CONTESTED ISSUES OF FACT**

The following statement of contested facts is based on the arguments Sunoco expects to make to establish infringement of the Asserted Claims, and damages to compensate Sunoco for that infringement. This statement is also based on the parties' pleadings, documentary and testimony evidence, and Sunoco's current understanding of Defendants' claims and defenses.

Sunoco reserves the right to amend or supplement this statement as part of the meet and confer process leading up to trial, in response to Defendants' pretrial disclosures and objections, and in response to any pretrial rulings or orders from the Court. Should the Court find that any of the issues of law listed in **Exhibit 4** of the Pretrial Order should be considered as issues of fact, Sunoco incorporates those issues in this Section. Should the Court find that any issues identified in this Section as an issue of fact should be considered as an issue of law, Sunoco incorporates those issues into **Exhibit 4**. To the extent Defendants intend or attempt to introduce different or additional facts, Sunoco reserves its right to supplement this statement and contest those facts and to present any and all rebuttal evidence in response to those arguments.

1

Sunoco reserves the right to present facts set forth in the pending motions identified in this Pretrial Order and to appeal any issues identified in motions that have been decided by the Court.

Sunoco contends that the issues of fact (or mixed questions of fact and law) that remain to be litigated at trial and decided by the jury are as follows:

**I.     STATEMENT OF ISSUES OF FACT**

    **A.     Infringement**

    1.     Whether Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claims 3, 16, and 17 of the '302 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

    2.     Whether Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claims 18, 22, 31, and 32 of the '629 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

    3.     Whether Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claim 3 of the '686 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

    4.     Whether Defendant Powder Springs directly infringed and infringes (either literally or under the doctrine of equivalents) claim 3 of the '686 patent by making, using, selling, and/or offering to sell one or more of Powder Springs' Accused Systems.

    5.     If the Court determines that Defendants are permitted to assert a defense to infringement under 35 U.S.C. § 273, and if Defendants have proven by clear and convincing evidence that the '686 patent is only entitled to a priority date of April 20, 2006, whether Defendants have proven by clear and convincing evidence that Defendants are entitled to a defense to infringement of the asserted claims of the '686 patent under 35 U.S.C. § 273 for Williams' alleged prior commercial use of its OKC-Reno System.

### B. Willful Infringement

6. Whether Defendant Magellan's infringement of the '302 patent was willful.

7. Whether Defendant Magellan's infringement of the '629 patent was willful.

8. Whether Defendant Magellan's infringement of the '686 patent was willful.

9. Whether Defendant Powder Springs' infringement of the '686 patent was willful.

### C. Damages

10. Sunoco's damages for Defendants' infringement including the dollar amount that will compensate Sunoco for Defendants' infringement of the Asserted Claims.

11. Whether Sunoco is entitled to lost profits damages for Defendants' infringement of one or more of the Asserted Claims, and if so, the amount of damages.

12. Whether Sunoco is entitled to reasonable royalty damages for Defendants' infringement of one or more of the Asserted Claims, and if so, the amount of damages.

13. The period of damages due and owing to Sunoco for Defendants' infringement of any of the Asserted Claims.

14. Whether Sunoco can prove by a preponderance of the evidence that it has provided the notice required by 35 U.S.C. § 287 in order to recover pre-suit damages.

15. Whether Sunoco can prove by a preponderance of the evidence that it provided notice to the public that Sunoco marked its blending systems[1] by fixing a label onto the PLC

---

[1] In Defendants' Contested Issues of Fact, Defendants contend that Sunoco "identified Defendant Magellan's computers as the tangible infringing article of the 'computer readable claims'" and then asserts that Sunoco must prove that it marked its "computers" to meet the requirements of 35 U.S.C. § 287. Sunoco disagrees. First, the "computer-readable" claims to which Defendants refer are not at issue for this trial. Second, the source document cited by Defendants for this statement (Sunoco's Second Amended Infringement Contentions, Exhibit F, Claim Chart for Magellan's Blending Systems at the Carthage Terminal served October 17, 2018), does not identify Defendant Magellan's "computers" as the tangible infringing article. Instead, Sunoco identified Magellan's automated blending system and method for blending that includes "a computer-readable medium having computer-executable instructions for performing the steps

3

cabinet with the word "patent" together with the number of the '302 patent from at least August 2012 to current, as well as by fixing a label to the PLC cabinet with the address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the blending system with the numbers of each of the Asserted Patents, starting in February 2018 to current.

16. Whether Sunoco is entitled to costs and, if so, the dollar amount of such costs.

17. Whether Sunoco is entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Sunoco is entitled to an award of attorneys' fees.

18. Whether Sunoco is entitled to an award of prejudgment and post-judgment interest and the dollar amount of such award.

19. In the event Defendants are found to have willfully infringed any of the Asserted Patents, whether Sunoco is entitled to enhanced damages.

20. Whether Sunoco is entitled to an injunction against Defendants.

21. If Sunoco is not entitled to an injunction, the appropriate royalty to compensate Sunoco for Defendants' future infringement.

**D.  Conception and Reduction to Practice**

22. Whether the inventions claimed by the Asserted Patents were conceived of no later than August 1999.

23. Whether the inventions claimed by the Asserted Patents were diligently reduced to practice no later than September 2000.

---

recited." *Id*. at 14, 15 21, 24.  Third, the non-asserted claims that recite "a computer-readable medium" depend on claims that recite methods for blending butane into gasoline, and thus the "computer-readable medium" would be a component of the entire infringing system or method (i.e., the "tangible infringing article").  Lastly, Sunoco's systems are marked with the patent numbers on the PLC cabinets, which perform computing functions (among other things).

### E. Sunoco's Commercial Butane Blending Systems

24. Whether Sunoco's Rack Systems with only upstream analyzers practice the '302 patent, claims 3, 16; and '629 patent, claim 18.

25. Whether Sunoco's Rack Systems with upstream and downstream (quality) analyzers practice the '302 patent, claims 3, 16; and '629 patent, claims 18, 22, 31, 32.

26. Whether Sunoco's Pipeline Systems with only upstream analyzers practice the '686 patent, claim 3.

27. Whether Sunoco's Pipeline Systems with upstream (control) and downstream (quality) analyzers practice the '686 patent, claim 3.

28. Whether Sunoco's Pipeline Systems with only downstream analyzers practice the '686 patent, claim 3.

29. Whether Sunoco's Inbound Pipeline Systems practice the '629 patent, claim 18; and '686 patent, claim 3.

### F. Validity

30. Whether Defendants have proven by clear and convincing evidence that the references asserted by Defendants against any Asserted Claim qualify as prior art under 35 U.S.C. § 102 or § 103 to that Asserted Claim.

31. Whether the prior art references or combinations alleged by Defendants are enabled.

32. Whether any of the alleged prior art inherently discloses any of the claim limitations of the Asserted Patents.

33. Whether the inventions claimed in any Asserted Claim were reduced to practice before the priority date of any of the prior art references asserted by Defendants.

5

34. Whether the invention claimed in any Asserted Claim were conceived of before the priority date of any of the prior art references asserted by Defendants, with diligence from the prior art priority date until the inventions were reduced to practice.

35. Whether the alleged prior art anticipates any Asserted Claim.

36. Whether the alleged prior art renders obvious any Asserted Claim.

37. The scope and content of the prior art.

38. The level of ordinary skill in the art.

39. The differences between the inventions claimed by Asserted Patents and the prior art asserted by Defendants.

40. Whether a person of ordinary skill in the art would be motivated to combine the references relied on by Defendants in their obviousness combinations.

41. Whether a person of ordinary skill in the art would be motivated to modify the references relied on by Defendants to arrive at the inventions of the Asserted Claims against which such references are asserted.

42. Whether a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the references asserted by Defendants to arrive at the inventions of the Asserted Claims against which such references are asserted.

43. Whether there are objective indicia of non-obviousness with respect to the inventions of the Asserted Patents, including:

   a. whether Sunoco's patented commercial embodiments of the Asserted Patents have been a commercial success;

   b. whether the inventions of the Asserted Patents, and Sunoco's patented commercial embodiments, have been the subject of praise from the field;

  c. whether the inventions of the Asserted Patents have fulfilled a long-felt but unresolved need;

  d. whether others in the field tried but failed to develop the inventions claimed in the Asserted Patents and Sunoco's patented commercial embodiments;

  e. whether others copied the inventions claimed in the Asserted Patents and Sunoco's patented commercial embodiments;

  f. whether the inventions of the Asserted Patents and Sunoco's patented commercial embodiments exhibit unexpected results; and

  g. whether the inventions of the Asserted Patents and Sunoco's patented commercial embodiments were met with initial skepticism followed by widespread acceptance.

44. Whether there is a nexus between the inventions of the Asserted Patents and Sunoco's patented commercial embodiments and the objective indicia of non-obviousness.

45. Whether Defendants have proven by clear and convincing evidence that the disclosures in the '302 patent does not reasonably convey to those skilled in the art that the inventors had possession of the subject matter of the asserted '686 patent claims.

46. If Defendants prove invalidity by clear and convincing evidence of any Asserted Claim of the '686 patent based on any reference with a priority date after February 9, 2001, whether Sunoco has provided evidence sufficient to show that such Asserted Claim is entitled to the February 9, 2001 priority date.

47. Whether Defendants have proven by clear and convincing evidence that the Asserted Claims are not enabled and/or lack written description under 35 U.S.C. § 112.

48. Whether Defendants have proven by clear and convincing evidence that the claims of the '302 and '629 patents encompassing pipeline blending and/or adjusting blend ratios based

on the measured vapor pressure of the blended gasoline are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

49. Whether Defendants can prove by clear and convincing evidence that the Asserted Claims encompassing the use of assumed and/or representative volatility values to calculate blend ratios are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

50. Whether Defendants have proven by clear and convincing evidence that any Asserted Claim is invalid for failure to comply with 35 U.S.C. § 101, specifically, that any Asserted Claim is directed to patent-ineligible abstract ideas.

### G. Equitable Estoppel

51. Whether Defendant Magellan can prove as a matter of equity that it is entitled to preclude any recovery by Sunoco in this litigation for infringement of the '302 and '629 patents.

52. Whether Defendant Magellan can prove that Sunoco communicated in a misleading manner that Defendant Magellan did not infringe any of the Asserted Claims of the '302 and '629 patents through its actions with the Accused Systems or that Sunoco would not sue Defendant Magellan for its actions with the Accused Systems and whether Defendant Magellan can prove that it relied on that communication.

53. Whether Defendant Magellan can prove that it would be materially harmed if Sunoco is allowed to assert a claim of infringement of any one or more of the Asserted Claims of the '302 and '629 patents that is inconsistent with positions taken by Sunoco in previously communications with Defendant Magellan.

## II. STATEMENT OF INTENDED PROOF

### A. Background

54. The research and development activities of the Sunoco inventors.

55. The history of Sunoco and its predecessors in interest (including the prior owners of the Asserted Patents) including their history of commercialization of the technology associated with the Asserted Patents.

56. The work and research leading to, and development and invention of, the Asserted Patents, the state of the art at the time of invention, and the relevant technological background necessary to understand the Asserted Patents and evaluate their contributions to the state of the art.

57. Sunoco's Asserted Patents are in the same family, are related to each other, and claim priority to U.S. Provisional Patent Application No. 60/267,844, filed on February 9, 2001.

58. Sunoco owns all right, title and interest in the Asserted Patents.

**B.   Infringement**

59. Proof that Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claims 3, 16, and 17 of the '302 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

60. Proof that Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claims 18, 22, 31, and 32 of the '629 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

61. Proof that Defendant Magellan directly infringed and infringes (either literally or under the doctrine of equivalents) claim 3 of the '686 patent by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems.

62. Proof that Defendant Magellan's Rack systems[2] directly infringed and infringe (either literally or under the doctrine of equivalents) claims 3, 16 and 17 of the '302 patent, and claims 18, 22, 31 and 32 of the '629 patent.

---

[2] "Rack" systems ███████████████████████████████████
████████████████████████████████████████████████████████

9

63. Proof that Defendant Magellan's Inbound Pipeline systems[3] directly infringed and infringe (either literally or under the doctrine of equivalents) claims 18, 22, 31 and 32 of the '629 patent, and claim 3 of the '686 patent.

64. Proof that Defendant Magellan's Pipeline to Pipeline systems[4] directly infringed and infringe (either literally or under the doctrine of equivalents) claim 3 of the '686 patent.

65. Proof that Defendant Powder Springs directly infringed and infringes (either literally or under the doctrine of equivalents) claim 3 of the '686 patent by making, using, selling, and/or offering to sell one or more of Powder Springs' Accused Systems.

66. Proof that Defendant Powder Springs's Pipeline to Pipeline systems directly infringed and infringe (either literally or under the doctrine of equivalents) claim 3 of the '686 patent.

67. Proof that no doctrine of equivalents theory asserted by Sunoco ensnares the prior art.

68. If the Court determines that Defendants are permitted to assert a defense to infringement under 35 U.S.C. § 273, and if Defendants have proven by clear and convincing

---

[blacked out] Kytomaa Opening Report (June 13, 2019) ¶¶ 95–96. Magellan operates Rack Systems at the following terminals: [blacked out] Kytomaa Opening Report (June 13, 2019), ¶ 100.

[3] "Inbound Pipeline" systems [blacked out] Kytomaa Opening Report (June 13, 2019) ¶¶ 88–89. Magellan operates Rack Systems at the following terminals: [blacked out]. Kytomaa Opening Report (June 13, 2019), ¶ 100.

[4] "Pipeline to Pipeline" systems [blacked out] ytomaa Opening Report (June 13, 2019), ¶ 97. Magellan operates Pipeline to Pipeline Systems at the [blacked out] Kytomaa Opening Report (June 13, 2019), ¶ 100.

10

evidence that the '686 patent is only entitled to a priority date of April 20, 2006, proof rebutting Defendants' burden of proof that Defendants are entitled to a defense to infringement of the asserted claims of the '686 patent under 35 U.S.C. § 273 for Williams' alleged prior commercial use of its OKC-Reno System.

### C.  Willfulness

69. Proof that Defendant Magellan's infringement of the '302 patent was willful.

70. Proof that Defendant Magellan's infringement of the '629 patent was willful.

71. Proof that Defendant Magellan's infringement of the '686 patent was willful.

72. Proof that Defendant Powder Springs' infringement of the '686 patent was willful.

### D.  Damages

73. Proof of Sunoco's damages for Defendants' infringement including the dollar amount that will compensate Sunoco for Defendants' infringement of the Asserted Claims.

74. Proof that Sunoco is entitled to lost profits damages for Defendants' infringement of one or more of the Asserted Claims, and the amount of damages.

75. Proof that but for Defendants' infringement, Sunoco would have earned the profits that is owed to Sunoco by showing: (1) demand for the patented technology; (2) an absence of an acceptable, non-infringing substitute; (3) manufacturing and marketing capability to exploit the demand; and (4) a reasonably quantifiable amount of profit that Sunoco would have made.

76. Proof that Sunoco is entitled to reasonable royalty damages for Defendants' infringement of one or more of the Asserted Claims, and the amount of damages.

77. Proof supporting a reasonable royalty in terms of a base and per unit royalty rate that fairly compensates Sunoco for Defendants' infringement of any one or more of the Asserted Claims under 35 U.S.C. § 271.

78. Proof as to the period during which Sunoco is entitled to damages for infringement.

79. Proof that Sunoco complied with the marking and notice statute (35 U.S.C. § 287) to recover pre-suit damages, including proof that Sunoco marked its blending systems by fixing a label onto the PLC cabinet with the word "patent" together with the number of the '302 patent from at least August 2012 to current, as well as by fixing a label to the PLC cabinet with the address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the blending system with the numbers of each of the Asserted Patents, starting in February 2018 to current.

80. Proof that Sunoco is entitled to enhanced damages for Defendants' willful infringement of one or more of the Asserted Claims.

81. Proof that Sunoco is entitled to costs and, if so, the dollar amount of such costs.

82. Proof that Sunoco is entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and proof that Sunoco is entitled to an award of attorneys' fees.

83. Proof that Sunoco is entitled to an award of prejudgment and postjudgment interest and the dollar amount of such award.

84. Proof that Sunoco is entitled to all damages arising from Defendants' continuing infringement, including from Defendants' continuing infringement from April 2019 and/or March 2020 to the date of the damages verdict, and continuing until the expiration date of the patents.

85. Proof that Sunoco is entitled to enhanced damages due to Defendants' willful infringement and, if so, the level of enhancement.

86. Proof that Sunoco is entitled to a permanent injunction against further infringement by Defendants including proofs that Sunoco will suffer an irreparable injury from the continued infringement of Defendants; that remedies available at law are inadequate to compensate Sunoco

for that injury; that when balancing the hardships between Sunoco and Defendants, an equitable remedy is warranted; and that the public interest will not be disserved by a permanent injunction.

87. If Sunoco is not entitled to an injunction, proof of the appropriate royalty to compensate Sunoco for Defendants' future infringement.

### E. Conception and Reduction to Practice

88. Proof that the inventions claimed by the Asserted Patents were conceived of no later than August 1999.

89. Proof that the inventions claimed by the Asserted Patents were diligently reduced to practice no later than September 2000.

### F. Sunoco's Commercial Butane Blending Systems

90. Proof that Sunoco's Rack Systems with only upstream analyzers practice '302 patent, claims 3, 16; and '629 patent, claim 18.

91. Proof that Sunoco's Rack Systems with upstream and downstream (quality) analyzers practice '302 patent, claims 3, 16; and '629 patent, claims 18, 22, 31, 32.

92. Proof that Sunoco's Pipeline Systems with only upstream analyzers practice '686 patent, claim 3.

93. Proof that Sunoco's Pipeline Systems with upstream (control) and downstream (quality) analyzers practice '686 patent, claim 3.

94. Proof that Sunoco's Pipeline Systems with only downstream analyzers practice '686 patent, claim 3.

95. Proof that Sunoco's Inbound Pipeline Systems practice '629 patent, claim 18; and '686 patent, claim 3.

**G.      Validity**

96.     Proof rebutting Defendants' burden of proof that the references asserted by Defendants against any Asserted Claim qualify as prior art under 35 U.S.C. § 102 or § 103 to that Asserted Claim.

97.     Proof rebutting Defendants' burden of proof that the prior art references or combinations alleged by Defendants are enabled.

98.     Proof rebutting Defendants' burden of proof that any of the alleged prior art inherently discloses any of the claim limitations of the Asserted Patents.

99.     Proof that the inventions claimed in any Asserted Claim were reduced to practice before the priority date of any of the prior art references asserted by Defendants.

100.    Proof that the invention claimed in any Asserted Claim were conceived of before the priority date of any of the prior art references asserted by Defendants, with diligence from the prior art priority date until the inventions were reduced to practice.

101.    Proof rebutting Defendants' burden of proof that the alleged prior art anticipates any Asserted Claim.

102.    Proof rebutting Defendants' burden of proof that the alleged prior art renders obvious any Asserted Claim.

103.    Proof of the scope and content of the prior art.

104.    Proof of the level of ordinary skill in the art.

105.    Proof of the differences between the inventions claimed by Asserted Patents and the prior art asserted by Defendants.

106.    Proof rebutting Defendants' assertion that a person of ordinary skill in the art would be motivated to combine the references relied on by Defendants in their obviousness combinations.

107. Proof rebutting Defendants' assertion that a person of ordinary skill in the art would be motivated to modify the references relied on by Defendants to arrive at the inventions of the Asserted Claims against which such references are asserted.

108. Proof rebutting Defendants' assertion that a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the references asserted by Defendants to arrive at the inventions of the Asserted Claims against which such references are asserted.

109. Proof that the objective evidence of non-obviousness tends to show that the Asserted Claims are not obvious, the extent of any proffered objective evidence of non-obviousness, and that a nexus exists between the evidence and the claimed inventions of the Asserted Patents.

110. Proof rebutting Defendants' assertion that the disclosures in the '302 patent do not reasonably convey to those skilled in the art that the inventors had possession of the subject matter of the asserted '686 patent claims.

111. If Defendants prove invalidity by clear and convincing evidence of any Asserted Claim of the '686 patent based on any reference with a priority date after February 9, 2001, proof that such Asserted Claim is entitled to the February 9, 2001 priority date.

112. Proof rebutting Defendants' assertion that the Asserted Claims are not enabled and/or lack written description under 35 U.S.C. § 112.

113. Proof rebutting Defendants' assertion that the Asserted Claims of the '302 and '629 patents encompassing pipeline blending and/or adjusting blend ratios based on the measured vapor pressure of the blended gasoline are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

114. Proof rebutting Defendants' assertion that the Asserted Claims encompassing the use of assumed and/or representative volatility values to calculate blend ratios are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

115. Proof rebutting Defendants' assertion that any Asserted Claim is invalid for failure to comply with 35 U.S.C. § 101, specifically that any Asserted Claim is directed to patent-ineligible abstract ideas.

### H. Equitable Estoppel

116. Proof rebutting Defendants' burden of proof that Sunoco communicated to Defendant Magellan about a lack of infringement of the Asserted Claims of the '302 and '629 patents or that Defendant Magellan would not be sued by Sunoco, that Defendant Magellan could reasonable rely on such communication and/or that Defendant Magellan would be materially harmed if Sunoco is allowed to assert its infringement claims.

117. Proof showing that any finding of equitable estoppel would be unfair in light of the conduct of the parties.