# Exhibit 4

# Proposed Pretrial Order

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SUNOCO PARTNERS MARKETING &
TERMINALS L.P.

                Plaintiff,

       v.

POWDER SPRINGS LOGISTICS, LLC and
MAGELLAN MIDSTREAM PARTNERS,
L.P.

                Defendants.

C.A. No. 17-1390 (LPS-CJB)

**EXHIBIT 4:**
**PLAINTIFF SUNOCO'S STATEMENT OF CONTESTED ISSUES OF LAW**

## **TABLE OF CONTENTS**

I.    Issues on Which Sunoco Bears the Burden of Proof ........................................................ 1

    A.    Infringement ........................................................................................................ 1

        1.    Issues of Law ........................................................................................ 1

        2.    Legal Authority .................................................................................... 2

            a.    Burden of Proof ........................................................................ 2

            b.    Direct Infringement ................................................................. 2

            c.    Literal Infringement ................................................................ 3

            d.    Infringement Under the Doctrine of Equivalents ........................... 4

    B.    Willful Infringement .......................................................................................... 5

        1.    Issues of Law ........................................................................................ 5

        2.    Legal Authority .................................................................................... 5

    C.    Damages .............................................................................................................. 7

        1.    Issues of Law ........................................................................................ 7

        2.    Legal Authority .................................................................................... 8

            a.    Lost Profits Damages ............................................................... 8

            b.    Reasonable Royalty Damages ................................................. 11

            c.    Pre-Suit Damages ................................................................... 13

            d.    Costs, Prejudgment Interest, and Postjudgement Interest ................................................................................... 15

            e.    Exceptional Case and Enhanced Damages ................................. 16

            f.    Injunctive Relief and Ongoing Royalties .................................. 17

    D.    Conception and Reduction to Practice ................................................................ 19

        1.    Issues of Law ...................................................................................... 19

        2.    Legal Authority .................................................................................. 19

II.    Issues on Which Defendants Bear the Burden of Proof ................................................... 20

    A.    Defense to Infringement Under 35 U.S.C. § 273 ................................................. 20

        1.    Issues of Law ............................................................................... 20

        2.    Legal Authority ............................................................................ 20

    B.    Validity ................................................................................................ 22

        1.    Issues of Law ............................................................................... 22

        2.    Legal Authority ............................................................................ 23

            a.    Presumption of Validity and Burden of Proof ............................. 23

            b.    Qualifying as Prior Art Under §§ 102(a) and (b) ......................... 24

            c.    Qualifying as Prior Art Under § 102(g)(2) .................................. 27

            d.    Priority Date for a Continuation-in-Part Patent ........................... 31

            e.    Anticipation ................................................................................. 32

            f.    Obviousness ................................................................................. 34

            g.    Obviousness-Type Double Patenting ........................................... 38

            h.    Indefiniteness Under 35 U.S.C. § 112 ........................................ 39

            i.    Written Description and Enablement Under 35 U.S.C. § 112 .................................................................................... 39

            j.    Patentable Subject Matter Under 35 U.S.C. § 101 ....................... 41

    C.    Defendants' Equitable Estoppel Defense ............................................. 43

        1.    Issues of Law ............................................................................... 43

        2.    Legal Authority ............................................................................ 44

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992), *abrogated in part on other grounds by SCA
  Hygiene Prod. v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017)..........................44, 45

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
  52 F.3d 1062 (Fed. Cir. 1995)...................................................................................................45

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
  261 F.3d 1329 (Fed. Cir. 2001).................................................................................................2

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015).................................................................................................3

*Al-Site Corp. v. VSI Int'l, Inc.*,
  174 F.3d 1308 (Fed. Cir. 1999).................................................................................................24

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)............................................................................................41, 42, 43, 44

*Allergan, Inc. v. Apotex Inc.*,
  754 F.3d 952 (Fed. Cir. 2014)...................................................................................................28

*ALZA Corp. v. Andrx Pharm., LLC*,
  603 F.3d 935 (Fed. Cir. 2010)...................................................................................................40

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984), *abrogated by on other grounds by
  Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) .....................24

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003).................................................................................................34

*Amstar Corp. v. Envirotech Corp.*,
  730 F.2d 1476 (Fed. Cir. 1984).................................................................................................3

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994).....................................................................................................14

*In re Antor Media Corp.*,
  689 F.3d 1282 (Fed. Cir. 2012).................................................................................................33

*Apotex USA, Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001).................................................................................................30

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
   234 F.3d 14 (Fed. Cir. 2000) ................................................................. 32

*Apple Inc. v. Samsung Elecs. Co.*,
   809 F.3d 633 (Fed. Cir. 2015) ............................................................... 18

*Apple Inc. v. Samsung Elecs. Co.*,
   839 F.3d 1034 (Fed. Cir. 2016) ............................................................. 36

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ...................................................... 13, 14

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) ...................................................... 39, 40

*ATI Techs. ULC v. Iancu*,
   920 F.3d 1362 (Fed. Cir. 2019) ............................................................. 29

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................. 43

*Beatrice Foods Co. v. New England Printing & Litho. Co.*,
   899 F.2d 1171 (Fed. Cir. 1990) ............................................................... 9

*In re Berg*,
   140 F.3d 1428 (Fed. Cir. 1998) ............................................................. 38

*Bos. Sci. Corp. v. Johnson & Johnson*,
   647 F.3d 1353 (Fed. Cir. 2011) ............................................................. 40

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003) .......................................................... 2, 3

*Brown v. Barbacid*,
   436 F.3d 1376 (Fed. Cir. 2006) ............................................................. 29

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
   40 F.3d 1223 (Fed. Cir. 1994) ............................................................... 19

*Callaway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009) ............................................................. 32

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
   134 F.3d 1085 (Fed. Cir. 1998) ...................................................... 23, 24

*Centrak, Inc. v. Sonitor Techs., Inc.*,
   915 F.3d 1360 (Fed. Cir. 2019) ............................................................. 31

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
  No. CV 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014) ....................................17

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013).........................................................................................35

*ClassCo, Inc. v. Apple, Inc.*,
  838 F.3d 1214 (Fed. Cir. 2016)....................................................................................37, 38

*Cont'l Can Co. USA v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991).........................................................................................37

*Cooper v. Goldfarb*,
  154 F.3d 1321 (Fed. Cir. 1998)....................................................................................20, 29

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018).........................................................................................42

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005)............................................................................................3

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
  289 F.3d 1367 (Fed. Cir. 2002).........................................................................................33

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  559 F.3d 1308 (Fed. Cir. 2009)....................................................................................14, 15

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
  676 F.3d 1063 (Fed. Cir. 2012).........................................................................................35

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
  836 F.2d 1320 (Fed. Cir. 1987)....................................................................................11, 13

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
  851 F.2d 1387 (Fed. Cir. 1988)....................................................................................37, 38

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009)..................................................................................4, 5, 10

*Dey, L.P. v. Sunovion Pharm., Inc.*,
  715 F.3d 1351 (Fed. Cir. 2013)....................................................................................25, 26

*Diamond v. Diehr*,
  450 U.S. 175 (1981).....................................................................................................42, 43

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013).........................................................................................18

*Dow Chem. Co. v. Astro-Valcour, Inc.*,
  267 F.3d 1334 (Fed. Cir. 2001)........................................................................29, 30

*Dow Chem. Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003)..................................................................................8

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)..................................................................................................18

*Ecolochem, Inc. v. S. California Edison Co.*,
  227 F.3d 1361 (Fed. Cir. 2000)........................................................................35, 36

*Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*,
  346 F.3d 1051 (Fed. Cir. 2003)................................................................................33

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)................................................................................42

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005)................................................................................30

*Evolved Wireless, LLC v. Apple Inc.*,
  221 F. Supp. 3d 485 (D. Del. 2016).........................................................................43

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
  423 F.3d 1343 (Fed. Cir. 2005)..................................................................................3

*In re Garner*,
  508 F.3d 1376 (Fed. Cir. 2007)................................................................................29

*Garretson v. Clark*,
  11 U.S. 120 (1884)......................................................................................................9

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001)................................................................................13

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
  60 F.3d 770 (Fed. Cir. 1995)..............................................................................44, 45

*Gen. Elec. Co. v. Nintendo Co.*,
  179 F.3d 1350 (Fed. Cir. 1999)..................................................................................4

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017)................................................................................11

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y.1970)..........................................................................12

*In re Glatt Air Techniques, Inc.*,
   630 F.3d 1026 (Fed. Cir. 2011)...................................................................37

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966)...........................................................................................34

*Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*,
   339 U.S. 605 (1950).........................................................................................4

*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986)......................................................................27

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016).......................................................................5, 6, 16, 17

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983)...............................................................14, 15

*Hemstreet v. Computer Entry Sys. Corp.*,
   972 F.2d 1290 (Fed. Cir. 1992)....................................................................45

*Henkel Corp. v. Procter & Gamble Co.*,
   560 F.3d 1286 (Fed. Cir. 2009)...............................................................19, 28

*Hologic, Inc. v. Smith & Nephew, Inc.*,
   884 F.3d 1357 (Fed. Cir. 2018)...............................................................31, 32

*In re Hubbell*,
   709 F.3d 1140 (Fed. Cir. 2013)....................................................................39

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986)....................................................................40

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ................12, 18

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
   946 F.2d 821 (Fed. Cir. 1991).......................................................................23

*Intellectual Ventures I, LLC v. Canon Inc.*,
   143 F. Supp. 3d 143 (D. Del. 2015).............................................................27

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005).....................................................................26

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)...............................................................31, 32

*Jones v. Hardy,*
  727 F.2d 1524 (Fed. Cir. 1984)..................................................................................24

*K-TEC, Inc. v. Vita-Mix Corp.,*
  696 F.3d 1364 (Fed. Cir. 2012)..................................................................................14

*Kaufman Co. v. Lantech, Inc.,*
  926 F.2d 1136 (Fed. Cir. 1991)..................................................................................10

*KSR Int'l Co. v. Teleflex Inc.,*
  550 U.S. 398 (2007)...............................................................................................34, 35

*Leo Pharm. Prod., Ltd. v. Rea,*
  726 F.3d 1346 (Fed. Cir. 2013)..................................................................................36

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,*
  798 F. Supp. 2d 541 (D. Del. 2011).............................................................................6

*Liquid Dynamics Corp. v. Vaughan Co.,*
  449 F.3d 1209 (Fed. Cir. 2006)...............................................................................7, 17

*Litchfield v. Eigen,*
  535 F.2d 72 (C.C.P.A. 1976).......................................................................................29

*Loughlin v. Ling,*
  684 F.3d 1289 (Fed. Cir. 2012)..................................................................................31

*Loughman v. Consol-Pennsylvania Coal Co.,*
  6 F.3d 88 (3d Cir. 1993).............................................................................................16

*Mahurkar v. C.R. Bard, Inc.,*
  79 F.3d 1572 (Fed. Cir. 1996)....................................................................................25

*Masimo Corp. v. Philips Elec. N. Am. Corp.,*
  62 F. Supp. 3d 368 (D. Del. 2014).............................................................................32

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)......................................................................................................41

*Medichem, S.A. v. Rolabo, S.L.,*
  437 F.3d 1157 (Fed. Cir. 2006)..............................................................................19, 28

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
  851 F.3d 1275 (Fed. Cir. 2017), *cert. dismissed*, 139 S. Ct. 44 (2018) ..........8, 9, 10

*Microsoft Corp. v. I4I Ltd. P'ship,*
  564 U.S. 91 (2011)......................................................................................................23

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996)..................................................................8

*Minks v. Polaris Indus., Inc.*,
  546 F.3d 1364 (Fed. Cir. 2008)................................................................12

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002)................................................................25

*Mirror Worlds, LLC v. Apple Inc.*,
  692 F.3d 1351 (Fed. Cir. 2012)..................................................................3

*Monsanto Co. v. McFarling*,
  488 F.3d 973 (Fed. Cir. 2007)..................................................................12

*Monsanto Co. v. Mycogen Plant Sci., Inc.*,
  261 F.3d 1356 (Fed. Cir. 2001)....................................................27, 28, 29

*N. Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)..................................................................40

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)....................................................................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)..................................................................................39

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
  313 F. Supp. 2d 361 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) ..........................16

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008)..........................................................32, 33

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
  847 F.2d 795 (Fed. Cir. 1988)..........................................................15, 16

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998)................................................................14

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
  719 F.3d 1346 (Fed. Cir. 2013)..........................................................23, 24

*In re NTP, Inc.*,
  654 F.3d 1279 (Fed. Cir. 2011)................................................................35

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..................................................................................17

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)..........................................................................24

*Ortho Pharm. Corp. v. Smith*,
    959 F.2d 936 (Fed. Cir. 1992)...........................................................................38

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)..........................................................................19

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
    575 F.2d 1152 (6th Cir. 1978) .............................................................8, 9, 10, 11

*Parallel Iron LLC v. NetApp Inc.*,
    70 F. Supp. 3d 585 (D. Del. 2014).....................................................................17

*Power Integrations v. Fairchild Semiconductor*,
    904 F.3d 965 (Fed. Cir. 2018)........................................................................9, 13

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008).....................................................................24, 32

*Procter & Gamble Co. v. Teva Pharm. USA, Inc.*,
    566 F.3d 989 (Fed. Cir. 2009)...........................................................................38

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*,
    946 F.2d 870 (Fed. Cir. 1991)...........................................................................38

*Rambus Inc. v. Rea*,
    731 F.3d 1248 (Fed. Cir. 2013)..........................................................................37

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016)..........................................................................43

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds by*
    *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ................................16

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)........................................................................9, 10

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
    324 F.3d 1346 (Fed. Cir. 2003)..........................................................................24

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)..........................................................................18

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000)...........................................................................34

*Sage Prod., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)........................................................................4

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,
    821 F. Supp. 2d 681 (D.N.J. 2011) .................................................................18

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)........................................................................18

*ScriptPro LLC v. Innovation Assocs., Inc.*,
    833 F.3d 1336 (Fed. Cir. 2016)........................................................................31

*SEB S.A. v. Montgomery Ward & Co.*,
    594 F.3d 1360 (Fed. Cir. 2010)........................................................................14

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996).....................................................................8, 16

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
    758 F.2d 613 (Fed. Cir. 1985)..........................................................................19

*Shu-Hui Chen v. Bouchard*,
    347 F.3d 1299 (Fed. Cir. 2003)........................................................................28

*Siemens Aktiengesellschaft v. United States*,
    26 Cl. Ct. 980 (1992) .......................................................................................30

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010)........................................................................41

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
    276 F.3d 1304 (Fed. Cir. 2001)..........................................................................3

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)........................................................................39

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)........................................................................14

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008)........................................................................27

*Standard Havens Prod., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991)........................................................................10

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)........................................................................23

*Stern v. Trustees of Columbia Univ. in City of New York*,
    434 F.3d 1375 (Fed. Cir. 2006)........................................................................19, 28

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983)................................................................................36

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996)............................................................................10, 11

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*,
    222 F.3d 958 (Fed. Cir. 2000)....................................................................................3

*Tilghman v. Proctor*,
    102 U.S. 707 (1880)..................................................................................................41

*Titanium Metals Corp. of Am. v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985)..................................................................................33

*Tone Bros. v. Sysco Corp.*,
    28 F.3d 1192 (Fed. Cir. 1994)............................................................................24, 25

*Transmatic, Inc. v. Gulton Indus., Inc.*,
    180 F.3d 1343 (Fed. Cir. 1999)................................................................................16

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012)................................................................................11

*TruePosition Inc. v. Andrew Corp.*,
    611 F. Supp. 2d 400 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010)...................16

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................41, 42, 43

*Union Oil Co. of California v. Atl. Richfield Co.*,
    208 F.3d 989 (Fed. Cir. 2000)..................................................................................40

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995)....................................................................................11

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)..................................................................................41

*In re Wang*,
    No. 2017-1827, 2018 WL 3045563 (Fed. Cir. June 20, 2018).................................41

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)......................................................................................................4

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
   418 F.3d 1326 (Fed. Cir. 2005)............................................................................2

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016)............................................................................6

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016), *rev'd on other grounds WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 201 L. Ed. 2d 584 (2018), *and opinion reinstated in part*, 913 F.3d 1067 (Fed. Cir. 2019)............................6

*Wiesner v. Weigert*,
   666 F.2d 582 (C.C.P.A. 1981) ............................................................................29

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
   262 F.3d 1363 (Fed. Cir.)...................................................................................44

*Woodland Tr. v. Flowertree Nursery, Inc.*,
   148 F.3d 1368 (Fed. Cir. 1998)....................................................................25, 26

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
   231 F.3d 1339 (Fed. Cir. 2000)..........................................................................35

*Z4 Techs., Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007).......................................................................4, 28

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996)..............................................................................4

**Statutes**

28 U.S.C. § 1920.................................................................................................15

28 U.S.C. § 1961(a) ...........................................................................................15

35 U.S.C. § 101............................................................................................*passim*

35 U.S.C. § 101(b) ............................................................................................41

35 U.S.C. § 102.........................................................................22, 25, 27, 33

35 U.S.C. § 102(a) ............................................................................................25

35 U.S.C. § 102(b) .......................................................................................*passim*

35 U.S.C. § 102(g)(2) ...................................................................................27, 28

35 U.S.C. § 112...................................................................22, 23, 39, 40

35 U.S.C. § 112 ¶ 1 ...............................................................................................................31

35 U.S.C. § 120 ....................................................................................................................31

35 U.S.C. § 271(a) ..............................................................................................................2, 3

35 U.S.C. § 273 ...............................................................................................................20, 21

35 U.S.C. § 273(a)–(b) ........................................................................................................21

35 U.S.C. § 273(e) ...............................................................................................................21

35 U.S.C. § 273(f) ...............................................................................................................22

35 U.S.C. § 282 .......................................................................................................23, 24, 31

35 U.S.C. § 282(a) ...............................................................................................................23

35 U.S.C. § 283 ...................................................................................................................18

35 U.S.C. § 284 .......................................................................................................6, 8, 16, 17

35 U.S.C. § 285 .......................................................................................................7, 17, 18, 22

35 U.S.C. § 287 .......................................................................................................7, 13, 14, 15

35 U.S.C. § 287(a) ...............................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 54(d)(l) .......................................................................................................15

L.R. 54.1 ...............................................................................................................................16

Sunoco identifies the following issues of law to be litigated. The following statement of issues of law that remain to be litigated is based on the parties' pleadings, documentary and testimony evidence, and on Sunoco's current understanding of Defendants' claims and defenses. Sunoco reserves the right to supplement this statement to rebut or otherwise address the issues of law identified by Defendants. Sunoco reserves the right to supplement this statement to incorporate legal issues from Defendants' proposed jury instructions.

Should the Court find that any issues of fact listed in **Exhibit 2** of the Joint Pretrial Order should be considered as issues of law, Sunoco incorporates those issues in this Section. Should the Court find that any issues identified in this Section as an issue of law should be considered as an issue of fact, Sunoco incorporates those issues into **Exhibit 2** of the Joint Pretrial Order. Sunoco's issues of law to be litigated may change based on the Court's decisions on *Daubert* motions, motions for summary judgment, motions *in limine*, or other open matters, as well as any pretrial rulings by the Court. Sunoco reserves the right to revise this statement as needed in light of those decisions. Sunoco reserves the right to present issues of law set forth in the pending motions identified in this Pretrial Order and to appeal any issues identified in motions that have been decided by the Court.

# I.    ISSUES ON WHICH SUNOCO BEARS THE BURDEN OF PROOF

## A.    Infringement

### 1.    Issues of Law

1.    Whether Defendant Magellan directly infringed and infringes (literally) the following Asserted Claims by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems: '302 patent, claims 3, 16, 17; '629 patent; claims 18, 22, 31, 32; and '686 patent, claim 3.

2.    Whether Defendant Magellan directly infringed and infringes (under the doctrine of equivalents) the following Asserted Claims by making, using, selling, and/or offering to sell one or more of Magellan's Accused Systems: '302 patent, claims 3, 16, 17; '629 patent; claims 18, 22, 31, 32; and '686 patent, claim 3.

3.    Whether Defendant Powder Springs directly infringed and infringes (literally) the following Asserted Claims by making, using, selling, and/or offering to sell one or more of Powder Springs' Accused Systems: '686 patent, claim 3.

4.    Whether Defendant Powder Springs directly infringed and infringes (under the doctrine of equivalents) the following Asserted Claims by making, using, selling, and/or offering to sell one or more of Powder Springs' Accused Systems: '686 patent, claim 3.

### 2.    Legal Authority

#### a.    Burden of Proof

5.    Sunoco bears the burden of proving infringement by a preponderance of the evidence, i.e., that Defendants' "infringement was more likely than not to have occurred." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005).

#### b.    Direct Infringement

6.    A determination of direct infringement under 35 U.S.C. § 271(a) "involves a two step inquiry." *Advanced Cardiovascular Sys.*, 261 F.3d at 1336. "First, the claims are construed, a question of law in which the scope of the asserted claims is defined." *Id*. "Second, the claims, as construed, are compared to the accused device," which "is a question of fact." *Id*. "To prevail, the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." *Id*.; *see also Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) ("To prove infringement,

the patentee must show that the accused device contains each limitation of the asserted claim, or an equivalent of each limitation. This comparison is a question of fact.").

### c.    Literal Infringement

7.    "Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). A single entity performs all of the steps of a claimed method if the entity in question "directs or controls [the] others' performance" or "where the actors form a joint enterprise." *Id*. "A patentee need not always have direct evidence of infringement, as infringement may be established by circumstantial evidence." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012).

8.    The performance of additional steps or the addition of features beyond those required by an asserted claim does not avoid literal infringement, as "[m]odification by mere *addition* of elements of functions, whenever made, cannot negate infringement." *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984); *see also Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 970 (Fed. Cir. 2000) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."); *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1347 (Fed. Cir. 2005) ("The addition of unclaimed elements does not typically defeat infringement when a patent uses an open transitional phrase such as 'comprising.'"); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("Infringement arises when all of the steps of a claimed method are performed, whether or not the infringer also performs additional steps."). In addition,

"infringement is not avoided merely because a non-infringing mode of operation is possible." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007).

### d.    Infringement Under the Doctrine of Equivalents

9.      If a product or method does not literally contain every claim limitation, Defendants may nevertheless infringe under the doctrine of equivalents. *See Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1359 (Fed. Cir. 1999). "Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "Infringement under the doctrine of equivalents may be found where those limitations of a claim not found exactly in the accused device are met equivalently." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996).

10.     "The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997). "[A] patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608 (1950). Further, "[t]he known interchangeability of substitutes for an element of a patent is one of the express objective factors . . . bearing upon whether the accused device is substantially the same as the patented invention." *Warner-Jenkinson*, 520 U.S. at 36.

11.     "Ensnarement, like prosecution history estoppel, limits the scope of equivalency that a patentee is allowed to assert." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009). "The ensnarement inquiry is separate and distinct from the

jury's element-by-element equivalence analysis, and it has no bearing on the validity of the actual claims." *Id*. "[E]nsnarement . . . is 'to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict.'" *Id*. at 1324 (citations omitted). "When the patentee has made a *prima facie* case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer, not the trial judge." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996). "A helpful first step in an ensnarement analysis is to construct a hypothetical claim that literally covers the accused device. . . . Next, the district court must assess the prior art introduced by the accused infringer and determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *DePuy*, 567 F.3d at 1324–25.

### B. Willful Infringement

#### 1. Issues of Law

12.    Whether Defendant Magellan's infringement of the '302 patent was willful.

13.    Whether Defendant Magellan's infringement of the '629 patent was willful.

14.    Whether Defendant Magellan's infringement of the '686 patent was willful.

15.    Whether Defendant Powder Springs' infringement of the '686 patent was willful.

#### 2. Legal Authority

16.    Sunoco must prove Defendants' infringement was willful by a preponderance of the evidence. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016). "A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1926. "[A]lthough there is 'no precise rule or formula' for awarding damages under § 284, a district

court's 'discretion should be exercised in light of the considerations' underlying the grant of that discretion." *Id*. at 1932.

17.    "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. "[A] person is reckless if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Id*. "Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP*, 829 F.3d at 1341. "*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer'—can support an award of enhanced damages. 'The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 201 L. Ed. 2d 584 (2018), *and opinion reinstated in part*, 913 F.3d 1067 (Fed. Cir. 2019) (quoting *Halo*, 136 S.Ct. at 1930, 1933).

18.    "By its nature, the issue of willfulness in patent infringement hinges both on the fact finder's assessments of the credibility of witnesses and on the fact finder drawing inferences from the evidence presented to it." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 557 (D. Del. 2011). Thus, "[t]he drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that

observed the witnesses." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citations omitted).

**C.    Damages**

**1.    Issues of Law**

19.    The appropriate measures of damages as compensation to Sunoco for Defendants' infringement of any of the Asserted Claims.

20.    Whether Sunoco is entitled to lost profits damages for Defendants' infringement of one or more of the Asserted Claims, and if so, the amount of damages.

21.    Whether Sunoco is entitled to reasonable royalty damages for Defendants' infringement of one or more of the Asserted Claims, and if so, the amount of damages.

22.    The period of damages due and owing to Sunoco for Defendants' infringement of any of the Asserted Claims.

23.    Whether Sunoco can prove by a preponderance of the evidence that it has provided the notice required by 35 U.S.C. § 287 in order to recover pre-suit damages.

24.    Whether Sunoco is entitled to costs and, if so, the dollar amount of such costs.

25.    Whether Sunoco is entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Sunoco is entitled to an award of attorneys' fees.

26.    Whether Sunoco is entitled to an award of prejudgment and post-judgment interest and the dollar amount of such award.

27.    In the event Defendants are found to have willfully infringed any of the Asserted Patents, whether Sunoco is entitled to enhanced damages.

28.    Whether Sunoco is entitled to an injunction against Defendants.

29.    If Sunoco is not entitled to an injunction, the appropriate royalty to compensate Sunoco for Defendants' future infringement.

## 2.    Legal Authority

30.    Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003).  "[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996).  "The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996).

### a.    Lost Profits Damages

31.    "When a patentee proves it would have made additional sales but for a defendant's infringement, the patentee is entitled to be made whole for the profits it proves it lost." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017), *cert. dismissed*, 139 S. Ct. 44 (2018).  "The goal of lost profit damages is to place the patentee in the same position it would have occupied had there been no infringement." *Id*. at 1285.  "In this regard, lost profit patent damages are no different than breach of contract or general tort damages." *Id*.  Thus, "the fact finder's job is to determine what would the patent holder have made (what would his profits have been) if the infringer had not infringed." *Id*.

32.    "There is no particular required method to prove but for causation.  One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit* test

first articulated by the Sixth Circuit. *Mentor Graphics*, 851 F.3d at 1284 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978)). Under the *Panduit* test, "a patentee is entitled to lost profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Id*. at 1285 (quoting *Panduit*, 575 F.2d at 1156). "[W]hen the *Panduit* factors are met, they incorporate into their very analysis the value properly attributed to the patented feature." *Id*. at 1290. "The patent owner's burden of proof regarding these elements is one of 'reasonable probability.' When the patent holder would reasonably have made the sale, but for the infringement, the award of lost profits is proper." *Beatrice Foods Co. v. New England Printing & Litho. Co.*, 899 F.2d 1171, 1173 (Fed. Cir. 1990) (citations omitted). A patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; *or* he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Garretson v. Clark*, 11 U.S. 120, 121-122 (1884) (emphasis added). A patent owner need not apportion damages when the "patented feature … substantially creates the value of the component parts." *Power Integrations v. Fairchild Semiconductor*, 904 F.3d 965, 979 (Fed. Cir. 2018).

33.     "A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). "A patentee need not negate every possibility that the purchaser might not have purchased

9

a product other than its own, absent the infringement," and "need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Id*. "When the patentee establishes the reasonableness of this inference, e.g., by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales," and "[t]he burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales." *Id*.

34.    "[T]he first *Panduit* factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'" *DePuy*, 567 F.3d at 1330 (citations omitted). "The first factor . . . considers demand for the product as a whole." *Mentor Graphics*, 851 F.3d at 1285.

35.    Regarding the second *Panduit* factor, "[t]o be deemed *acceptable*, the alleged acceptable noninfringing substitute must not have a disparately higher price than or possess characteristics significantly different from the patented product." *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991). Further, "the mere existence of a competing device does not necessarily make the device an acceptable substitute," and "a 'product on the market which lacks the advantages of the patented product can hardly be termed a[n] [acceptable] substitute.'" *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir. 1996) (citations omitted); *see also Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) ("Accordingly, if purchasers are motivated to purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes."). In addition, "[t]he acceptable substitute element, though it is to be considered, must be viewed of limited

10

influence where the infringer knowingly made and sold the patented product for years while ignoring the substitute." *Stryker*, 96 F.3d at 1418 n.3 (citations omitted).

36.    Regarding the fourth *Panduit* factor, "[t]he requirement to determine actual damages is not diminished by difficulty of determination. . . . The determination of a damage award is not an exact science, and 'the amount need not be proven with unerring precision.' The trial court is required to approximate, if necessary, the amount to which the patent owner is entitled. 'In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) (citations omitted). "When the amount of the damages is not ascertainable with precision, reasonable doubt is appropriately resolved against the infringer." *Id.*; *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1243 (Fed. Cir. 2017) ("[Patentee's] lost profits calculation, including contract length, per-mile rate, and yearly miles of track to review, was based on sound economic proof confirmed by the historical record. As such, [patentee] 'made a prima facie showing of lost profits and the burden shifted to [accused infringer] to prove that a different rate would have been more reasonable.'") (citations omitted).

### b.    Reasonable Royalty Damages

37.    "The [reasonable] royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) (citations omitted). "The determination of the amount of damages . . . is an issue of fact." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

38.    "An established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention because it removes the need to guess at the terms to which parties would

hypothetically agree.  When the patentee has consistently licensed others to engage in conduct comparable to the defendant's at a uniform royalty, that royalty is taken as established and indicates the terms upon which the patentee would have licensed the defendant's use of the invention."  *Monsanto Co. v. McFarling*, 488 F.3d 973, 978–79 (Fed. Cir. 2007).

39.    "A determination of the royalty stemming from a hypothetical negotiation is often made by assessing factors such as those set forth in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)."  *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008).  The *Georgia–Pacific* factors include:

> (1) royalties the patentee has received for licensing the patent to others; (2) rates paid by the licensee for the use of comparable patents; (3) the nature and scope of the license (exclusive or nonexclusive, restricted or nonrestricted by territory or product type); (4) any established policies or marketing programs by the licensor to maintain its patent monopoly by not licensing others to use the invention or granting licenses under special conditions to maintain the monopoly; (5) the commercial relationship between the licensor and licensee, such as whether they are competitors; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and license term; (8) the established profitability of the product made under the patent, including its commercial success and current popularity; (9) the utility and advantages of the patent property over old modes or devices; (10) the nature of the patented invention and the benefits to those who have used the invention; (11) the extent to which the infringer has used the invention and the value of that use; (12) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as opposed to its non-patented elements; (14) the opinion testimony of qualified experts; and (15) the results of a hypothetical negotiation between the licensor and licensee. Id.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (quoting *Georgia–Pacific*, 318 F. Supp. at 1120).

40.    "As we have recognized previously, any reasonable royalty analysis necessarily involves an element of approximation, and uncertainty."  *i4i Ltd. P'ship*, 598 F.3d at 857–58.  "The

determination of a damage award is not an exact science, and 'the amount need not be proven with unerring precision.'  The trial court is required to approximate, if necessary, the amount to which the patent owner is entitled.  'In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'"  *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) (citations omitted).  As with lost profits, a patent owner need not apportion damages when the "patented feature … substantially creates the value of the component parts."  *Power Integrations*, 904 F.3d at 979.  Otherwise, "a patentee is only entitled to a reasonable royalty attributable to the infringing features."  *Id*. at 977.

### c.  Pre-Suit Damages

41.     Section 287 of the Patent Act provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent . . . .  In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.  Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287; *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) ("The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice.").

42.     "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d

1350, 1366 (Fed. Cir. 2017).  "Compliance with § 287 is a question of fact."  *Id*.  "The patentee

bears the burden of proving compliance by a preponderance of evidence."  *Nike, Inc. v. Wal-Mart

Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).  "Constructive notice requires the record to

show that 'the patentee consistently marks substantially all of its patented products.'"  *SEB S.A. v.

Montgomery Ward & Co.*, 594 F.3d 1360, 1378 (Fed. Cir. 2010) (citations omitted).

43.    "[A]bsent marking, a patentee may not recover damages without proof that 'the

infringer was notified of the infringement.' . . . Actual notice requires the affirmative

communication of a specific charge of infringement by a specific accused product or device."

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186–887 (Fed. Cir. 1994) (citations

omitted).  "Although there are numerous possible variations in form and content, the purpose of

the actual notice requirement is met when the recipient is notified, with sufficient specificity, that

the patent holder believes that the recipient of the notice may be an infringer."  *SRI Int'l, Inc. v.

Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).  Further, "[i]f a patentee's initial

notice is sufficiently specific to accuse one product of infringement, 'ensuing discovery of other

models and related products may bring those products within the scope of the notice.'"  *K-TEC,

Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (citations omitted).

44.    "The law is clear that the notice provisions of § 287 do not apply where the patent

is directed to a process or method."  *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,

559 F.3d 1308, 1316 (Fed. Cir. 2009).  Further, the Federal Circuit has "held that 35 U.S.C.

§ 287(a) did not apply where the patentee only asserted the method claims of a patent which

included both method and apparatus claims."  *Id*.; *see also id*. at 1316–17 ("*Hanson* is factually

identical to this case, and we are therefore bound by the rule of *Hanson*. . . . In this case and

*Hanson*, the patentee only asserted method claims despite the fact that the patent contained both

method and apparatus claims.  In *American Medical*, in contrast, 'both apparatus and method claims of the '765 patent were asserted.'  Because [patentee] asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.") (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082–83 (Fed. Cir. 1983); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1539 (Fed. Cir. 1993)).

### d.    Costs, Prejudgment Interest, and Postjudgement Interest

45.    "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(l). Under 28 U.S.C. § 1920, the prevailing party may recover the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also* D. Del. L.R. 54.1.

46.    Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  "[T]he Supreme Court has held that 'prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award.'"  *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)).  Prejudgment interest is not a penalty but "serves to make the patent owner whole, for damages properly include the foregone

use of money of which the patentee was wrongly deprived." *Sensonics*, 81 F.3d at 1574. Thus, the Supreme Court established "that prejudgment interest is the rule, not the exception." *Id*. (citing *Gen. Motors Corp.*, 461 U.S. at 656–57). "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus.*, 847 F.2d at 800. "Postjudgment interest is awarded on monetary judgments recovered in all civil cases." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Postjudgment interest is governed by regional circuit law (*id*. at 1348), and begins to accrue on the date of the entry of judgment (*Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993)). Courts in this District routinely award prejudgment and postjudgment interest in patent infringement cases. *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

### e. Exceptional Case and Enhanced Damages

47.    Section 284 provides that upon a finding of patent infringement, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. assessed." 35 U.S.C. § 284. In determining whether to award enhanced damages, a Court should consider "the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995). Although there is no "rigid formula for awarding enhanced damages under § 284," the plaintiff must prove that enhanced damages are warranted by a "preponderance of the evidence standard." *Halo*, 136 S. Ct. at 1934. A patentee may obtain enhanced damages under 35 U.S.C. § 284 where it establishes that the defendant's infringement was "willful." *Id*. at 1932. Willfulness is not required for enhanced damages. *Id*. at 1931–33. "The subjective willfulness of a patent infringer, intentional or knowing,

may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1933. The factors considered in determining whether to enhance damages include:

> "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;" (4) "defendant's size and financial condition;" (5) "closeness of the case;" (6) "duration of defendant's misconduct;" (7) "remedial action by the defendant;" (8) "defendant's motivation for harm;" and (9) "whether defendant attempted to conceal its misconduct."

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citations omitted).

48.     Section 285 provides "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[F]or a party to be a *prevailing party*, that party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014) (Andrews, J.). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Further, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. In addition, the prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Id*. at 1758; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CV 11-1175-RGA, 2014 WL 4675002, at *1 (D. Del. Sept. 12, 2014) (Andrews, J.).

### f.     Injunctive Relief and Ongoing Royalties

49.     Under 35 U.S.C. § 283, courts "may grant injunctions . . . to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." "[T]he decision

whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

50.    Balancing the hardships between the parties "assesses the relative effect of granting or denying an injunction on the parties." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015) (citations omitted). Factors that may be considered include "the parties' sizes, products, and revenue sources." *i4i Ltd. P'ship*, 598 F.3d at 862. However, "[a] party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). Furthermore, the balance of the hardships does not favor the defendant when "[a]ny harms Defendants may suffer as a result of an injunction 'were almost entirely preventable and were the result of its own calculated risk to launch its product pre-judgment.'" *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, 821 F. Supp. 2d 681, 695 (D.N.J. 2011) (quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

51.     "Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007); *see also Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 628 (Fed. Cir. 1985) (upholding a 5% court-ordered royalty "for continuing operations").

### D.     Conception and Reduction to Practice

#### 1.     Issues of Law

52.     Whether the inventions claimed by the Asserted Patents were conceived of no later than August 1999.

53.     Whether the inventions claimed by the Asserted Patents were diligently reduced to practice no later than September 2000.

#### 2.     Legal Authority

54.     "Conception is defined as 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Stern v. Trustees of Columbia Univ. in City of New York*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) (citations omitted). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994).

55.     "[T]o establish an actual reduction to practice, [the party] must establish three things: '(1) construction of an embodiment or performance of a process that met all the limitations of the [claims]; (2) determination that the invention would work for its intended purpose; and (3) the existence of sufficient evidence to corroborate inventor testimony regarding these events.'" *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006). Reduction to practice "is a question of law based on underlying facts." *Henkel Corp. v. Procter & Gamble Co.*, 560 F.3d

1286, 1288 (Fed. Cir. 2009).  "[A]n inventor's testimony must be corroborated by independent evidence."  *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998).

## II.    ISSUES ON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF

### A.    Defense to Infringement Under 35 U.S.C. § 273

#### 1.    Issues of Law

56.    If the Court determines that Defendants are permitted to assert a defense to infringement under 35 U.S.C. § 273, and if Defendants have proven by clear and convincing evidence that the '686 patent is only entitled to a priority date of April 20, 2006, whether Defendants have proven by clear and convincing evidence that Defendants are entitled to a defense to infringement of the asserted claims of the '686 patent under 35 U.S.C. § 273 for Williams' alleged prior commercial use of its OKC-Reno System.

#### 2.    Legal Authority

57.    Under 35 U.S.C. § 273, a defendant is entitled to a non-infringement defense if the defendant shows by clear and convincing evidence that "(1) such person, acting in good faith, commercially used the subject matter in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use; and (2) such commercial use occurred at least 1 year before the earlier of either (A) the effective filing date of the claimed invention; or (B) the date on which the claimed invention was disclosed to the public in a manner that qualified for the exception from prior art under section 102(b)."  35 U.S.C. § 273(a)–(b).

58.    However, a § 273 defense is subject to several limitations and exceptions, including, for example:

(1) Personal defense.

(A) In general.  A defense under this section may be asserted only by the person who performed or directed the performance of the commercial use described in subsection (a), or by an entity that controls, is controlled by, or is under common control with such person. . . . .

(C) Restriction on sites.  A defense under this section, when acquired by a person as part of an assignment or transfer described in subparagraph (B), may only be asserted for uses at sites where the subject matter that would otherwise infringe a claimed invention is in use before the later of the effective filing date of the claimed invention or the date of the assignment or transfer of such enterprise or line of business. . . .

(3) Not a general license.  The defense asserted by a person under this section is not a general license under all claims of the patent at issue, but extends only to the specific subject matter for which it has been established that a commercial use that qualifies under this section occurred, except that the defense shall also extend to variations in the quantity or volume of use of the claimed subject matter, and to improvements in the claimed subject matter that do not infringe additional specifically claimed subject matter of the patent.

(4) Abandonment of use.  A person who has abandoned commercial use (that qualifies under this section) of subject matter may not rely on activities performed before the date of such abandonment in establishing a defense under this section with respect to actions taken on or after the date of such abandonment.

35 U.S.C. § 273(e).

59.    Further, if a § 273 defense "is pleaded by a person who is found to infringe the patent and who subsequently fails to demonstrate a reasonable basis for asserting the defense, the court shall find the case exceptional for the purpose of awarding attorney fees under section 285." 35 U.S.C. § 273(f).  In addition, "[a] patent shall not be deemed to be invalid under section 102 or 103 solely because a defense is raised or established under this section."  *Id*. at § 273(g).

### B.    Validity

#### 1.    Issues of Law

60.    Whether Defendants can prove by clear and convincing evidence that each reference asserted as invalidating the Asserted Claims qualifies "prior art" under 35 U.S.C. § 102 or § 103.

61.    Whether Defendants can prove by clear and convincing evidence that each of the Asserted Claims is invalid.

62.    Whether Defendants can prove by clear and convincing evidence that any Asserted Claims are invalid as anticipated under § 102.

63.    Whether Defendants can prove by clear and convincing evidence that any Asserted Claims are invalid as obvious under § 103 at the time of the invention in light of (1) the scope and content of the prior art; (2) the differences between such claim and the alleged prior art; (3) the level of ordinary skill in the art at the time of the invention; and (4) the objective evidence of nonobviousness.

64.    If Defendants prove invalidity by clear and convincing evidence of any Asserted Claim of the '686 patent based on any reference with a priority date after February 9, 2001, whether Sunoco has provided evidence sufficient to show that such Asserted Claim is entitled to the February 9, 2001 priority date.

65.    Whether Defendants can prove by clear and convincing evidence that claims 23–24 of the '302 patent are invalid under 35 U.S.C. § 112 as indefinite.

66.    Whether Defendants can prove by clear and convincing evidence that the claims of the '302 and '629 patents encompassing pipeline blending and/or adjusting blend ratios based on the measured vapor pressure of the blended gasoline are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

67.    Whether Defendants can prove by clear and convincing evidence that the Asserted Claims encompassing the use of assumed and/or representative volatility values to calculate blend ratios are invalid under 35 U.S.C. § 112 for lacking written description support and/or enablement.

68.    Whether Defendants can prove by clear and convincing evidence that any Asserted Claims are invalid for failure to comply with 35 U.S.C. § 101 as being directed to patent-ineligible abstract ideas.

### 2.    Legal Authority

#### a.    Presumption of Validity and Burden of Proof

69.    "A patent shall be presumed valid.  Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.  The burden of establishing invalidity . . . shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a); *see also Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid.").

70.    "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003); *see also Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).  "Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions [is] highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (citations omitted).

71.    Because of the presumption of validity, a patentee responding to a challenge to the patent's validity need only submit sufficient evidence to rebut any proof of invalidity offered by the challenger. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir.

1998).  "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue."  *Id*.  "[T]he burden of persuasion is and remains always upon the party asserting invalidity."  *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984), *abrogated by on other grounds by Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *see also Novo Nordisk*, 719 F.3d at 1352.  "It is not necessary that a district court declare a patent 'valid.'  In a proper case, it is necessary only to hold that the patent challenger failed to carry the burden assigned to it by 35 U.S.C. § 282."  *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984).

72.     "When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (citations omitted); *see also Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("[T]he challenger's 'burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application.'") (citations omitted).

### b.     Qualifying as Prior Art Under §§ 102(a) and (b)

73.     Prior art is defined by § 102.  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305–06 (Fed. Cir. 2006); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003) ("The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. § 102.").  Whether a reference qualifies as prior art is a question of law based on underlying facts.  *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1197 n.3 (Fed. Cir. 1994). Defendants bear the burden of proving, by clear and convincing evidence, that a reference qualifies

as prior art.  *Id*. at 1197 n.4 ("The party asserting the public use bar has the initial burden of showing by clear and convincing evidence facts which support the existence of a public use within the meaning of section 102(b)."); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996) ("[The alleged infringer] bore the burden of persuasion by clear and convincing evidence on all issues relating to the status of the [reference] as [§ 102(a)] prior art.").

74.     To qualify as prior art under § 102(a), a reference must be "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  35 U.S.C. § 102(a).  The "prior knowledge or use by others" must be "accessible to the public."  *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).  To be "known" under § 102(a), "the knowledge . . . must be sufficient to enable one with ordinary skill in the art to practice the invention."  *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (citations omitted).

75.     To qualify as prior art under § 102(b), a reference must be "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  When the prior use or sale is not that of the inventor but a third party, the standards are different.  For example, "an inventor's own prior commercial use, albeit kept secret, may constitute a public use or sale under § 102(b), barring him from obtaining a patent.  However, when an asserted prior use is not that of the [inventor], § 102(b) is not a bar when that prior use or knowledge is not available to the public."  *Woodland*, 148 F.3d at 1370–71 (citations omitted); *see also Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) ("[E]ven in the case of third-party uses, being 'accessible to the public' still requires public availability; secret or confidential third-party uses do not invalidate later-filed patents.") (collecting cases).

25

76.    Under §§ 102(a) and (b), prior knowledge or third-party uses must be "available to the public" to qualify as prior art.  *Woodland*, 148 F.3d at 1370–71; *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1381 (Fed. Cir. 2005) ("to qualify as 'public,' a use must occur without any 'limitation or restriction, or injunction of secrecy'").  In other words, "a court still must decide whether the 'claimed features of the patents [were placed] in the public's possession,'" and "if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features."  *Dey*, 715 F.3d at 1359 (citations omitted).  The Federal Circuit has "provided considerable guidance as to what it means to be 'accessible to the public,'" for example:

> We have explained that the policies underlying the public use bar inform its scope and that one such policy is "discouraging the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available."  In addition, we have set forth factors that may be helpful in analyzing the question of public use, including "'the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use.'"  And we have said that a public use may occur when "a completed invention is used in public, without restriction."  Such formulations are designed to capture the commonsense notion that whether an invention is "accessible to the public" or "reasonably ... believe[d] [to be] freely available" depends, at least in part, on the degree of confidentiality surrounding its use: "[A]n agreement of confidentiality, or circumstances creating a similar expectation of secrecy, may negate a 'public use' where there is not commercial exploitation."

*Id*. at 1355 (citations omitted).  Consistent with these principles, the Federal Circuit has "applied section 102(b) to invalidate a patent based on third-party use when the third party 'made no attempt to maintain confidentiality or to deliberately evade disclosure,' made no 'discernible effort to maintain the [invention] as confidential,' or 'made no efforts to conceal the device or keep anything about it secret.'"  *Id*. (citations omitted).

77.     To constitute a "printed publication" under § 102, a reference must be publically accessible. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194–95 (Fed. Cir. 2008); *Intellectual Ventures I, LLC v. Canon Inc.*, 143 F. Supp. 3d 143, 165 (D. Del. 2015). A reference is "'publicly accessible' upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *SRI Int'l*, 511 F.3d at 1194. "The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986). If an alleged piece of prior art must be located through abnormal means and "not by means of the customary research aids available in the library, the 'probability of public knowledge of the contents of the [prior art]' [is] virtually nil." *Application of Bayer*, 568 F.2d 1357, 1361 (C.C.P.A. 1978) (citations omitted).

### c.     Qualifying as Prior Art Under § 102(g)(2)

78.     Under § 102(g)(2), a prior invention can qualify as prior art if "the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other." 35 U.S.C. § 102(g)(2). The Federal Circuit "has interpreted § 102(g) to provide that 'priority of invention goes to [1] the first party to reduce an invention to practice unless [2] the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001). In the second scenario, "a showing

of diligence is necessary for a party who was first to conceive but second to reduce to practice," and "[t]he time period for which diligence must be shown by the party first to conceive is 'from a date just prior to the other party's conception to . . . [the date of] reduction to practice [by the party first to conceive].'" *Id*. at 1362–63 (citations omitted).

79.    "Conception is defined as 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Stern*, 434 F.3d at 1378 (citations omitted).  "While defendants bear the burden of persuasion to show that the [prior art] references are prior art to the [asserted] patent by clear and convincing evidence, the patentee nevertheless must meet its burden of production to demonstrate an earlier conception date." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014).  "It is well established that when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003).

80.    To be "made" under § 102(g), there must be "an actual reduction to practice." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007).  "[T]o establish an actual reduction to practice, [Defendants] must establish three things: '(1) construction of an embodiment or performance of a process that met all the limitations of the [claims]; (2) determination that the invention would work for its intended purpose; and (3) the existence of sufficient evidence to corroborate inventor testimony regarding these events.'" *Medichem*, 437 F.3d at 1169. Defendants bear "the burden of demonstrating by clear and convincing evidence that [the alleged prior invention] constituted an actual reduction to practice of the invention claimed in [the] patents." *Z4 Techs.*, 507 F.3d at 1352.  "Whether an invention has been reduced to practice is a question of law based on underlying facts." *Henkel*, 560 F.3d at 1288.  "[A]n inventor's testimony

must be corroborated by independent evidence." *Cooper*, 154 F.3d at 1330. "Sufficiency of corroboration is determined by using a 'rule of reason' analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony." *In re Garner*, 508 F.3d 1376, 1380 (Fed. Cir. 2007). "[C]orroboration of the existence of the device is not sufficient . . . to establish corroboration of reduction to practice. It is also necessary to corroborate that the device worked for its intended purpose." *Id*. at 1381.

81.    "The law regarding diligence is settled. The evidence must show that the alleged earlier inventor was diligent throughout the entire critical period." *Monsanto*, 261 F.3d at 1369. "The basic inquiry is whether, on all of the evidence, there was reasonably continuing activity to reduce the invention to practice." *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006); *see also ATI Techs. ULC v. Iancu*, 920 F.3d 1362, 1369 (Fed. Cir. 2019) ("the applicant must not only have conceived the invention before the reference date, but must have reasonably continued activity to reduce the invention to practice"). "[A]n inventor's testimony concerning his diligence be corroborated." *Brown*, 436 F.3d at 1380. "[E]vidence of constant effort is not required to establish reasonable diligence, but unexplained delays may indicate a lack of diligence. *Wiesner v. Weigert*, 666 F.2d 582, 589 (C.C.P.A. 1981). Further, efforts toward a solution of the problem at hand by different means than those represented by the patent claim is not credited as diligence. *Litchfield v. Eigen*, 535 F.2d 72, 76 (C.C.P.A. 1976).

82.    Case law "distinguishes between two types of abandonment, suppression, or concealment." *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001). "The first is implicated when an inventor actively abandons, suppresses, or conceals his invention from the public" (*id*.), which "refers to situations in which an inventor designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public"

(*Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1333 (Fed. Cir. 2005)).  "The second occurs when abandonment, suppression, or concealment may be inferred based upon the prior inventor's unreasonable delay in making the invention publicly known."  *Dow Chem.*, 267 F.3d at 1342. "The failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment."  *Id*.  "Even though there is no explicit disclosure requirement in § 102(g), the spirit and policy of the patent laws encourage an inventor to take steps to ensure that 'the public has gained knowledge of the invention which will insure its preservation in the public domain' or else run the risk of being dominated by the patent of another.  Absent a satisfactory explanation for the delay or the presence of other mitigating facts, a prior invention will therefore be deemed suppressed or concealed within the meaning of § 102(g) 'if, within a reasonable time after completion, no steps are taken to make the invention publicly known.'" *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1038–39 (Fed. Cir. 2001) (citations omitted); *see also Siemens Aktiengesellschaft v. United States*, 26 Cl. Ct. 980, 988 (1992) ("The public dissemination necessary to rebut an inference of suppression or concealment under [prior case law] clearly requires some affirmative action on the part of the inventor.").

83.    The Federal Circuit "interpret[ed] § 102(g) as requiring that once a challenger of a patent has proven by clear and convincing evidence that 'the invention was made in this country by another inventor,' the burden of production shifts to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor has suppressed or concealed the invention.  However, in accordance with the statutory presumption in 35 U.S.C. § 282, the ultimate burden of persuasion remains with the party challenging the validity of the patent. Once the patentee has satisfied its burden of production, the party alleging invalidity under

§ 102(g) must rebut any alleged suppression or concealment with clear and convincing evidence to the contrary." *Apotex*, 254 F.3d at 1037–38 (citations omitted).

### d.    Priority Date for a Continuation-in-Part Patent

84.    Under 35 U.S.C. § 120: "An application for patent for an invention disclosed in the manner provided by section 112(a) . . . in an application previously filed in the United States . . . shall have the same effect, as to such invention, as though filed on the date of the prior application . . . ." 35 U.S.C. § 120.  As the Federal Circuit has explained, "[p]rovided the criteria in § 120 are met, applications 'shall,' without exception, receive the benefit of the earlier filing date." *Loughlin v. Ling*, 684 F.3d 1289, 1293 (Fed. Cir. 2012) (citations omitted).  "To be entitled to the priority date of the earlier-filed [application], [the party] must show that [earlier-filed application] discloses what the [later] patent claims, according to the written description requirement of pre-AIA 35 U.S.C. § 112 ¶ 1." *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 (Fed. Cir. 2018). "[B]ased on 'an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art . . . the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.'" *Id*. (citations omitted).  "[T]he test for sufficiency is whether the disclosure of the [earlier] application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of that earlier filing date." *Id*. (citations omitted).  However, "a specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes." *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1341 (Fed. Cir. 2016)

85.    "The issue of whether a claimed invention satisfies the written description requirement is a question of fact," *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1365 (Fed. Cir. 2019), and "requires a showing by clear and convincing evidence," *Invitrogen Corp. v.*

*Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005). This Court has noted that "the written description inquiry is quintessentially a question of fact." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 381 (D. Del. 2014); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement [for purpose of establishing priority] is a question of fact . . . .").

86.    Regarding burdens, "the party asserting invalidity[] must still show by clear and convincing evidence that the asserted patent is invalid. Once it has established a *prima facie* case of invalidity and its burden is met, 'the party relying on validity is then obligated to come forward with evidence to the contrary,'" such as by showing that the asserted patent is entitled to an earlier priority date. *PowerOasis*, 522 F.3d at 1305–06 (citations omitted) ("Once [accused infringer] established by clear and convincing evidence that the [prior use] was § 102(b) prior art to the asserted claims of the [asserted] patents, the burden was on [patentee] to come forward with evidence to the contrary. The district court therefore correctly placed the burden on [patentee] to come forward with evidence to prove entitlement o claim priority to an earlier filing date.").

### e.    Anticipation

87.    "A patent claim is invalid due to anticipation if, within 'the four corners of a single, prior art document . . . every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.'" *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (citations omitted). Anticipation "is a question of fact." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).

88.    The prior art reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (citations omitted).

Thus, "it is not enough that the prior art reference discloses part of the claimed invention, which
an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct
teachings that the artisan might somehow combine to achieve the claimed invention." *Id*. at 1371.
"An anticipating reference must describe the patented subject matter with sufficient clarity and
detail to establish that the subject matter existed in the prior art and that such existence would be
recognized by persons of ordinary skill in the field of the invention." *Crown Operations Int'l, Ltd.
v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).

89.    In order to anticipate, the alleged prior art reference must disclose the invention
"without *any* need for picking, choosing, and combining various disclosures not directly related to
each other by the teachings of the cited reference.  Such picking and choosing may be entirely
proper in the making of a 103, obviousness rejection, where the applicant must be afforded an
opportunity to rebut with objective evidence any inference of obviousness which may arise from
the *similarity* of the subject matter which he claims to the prior art, but it has no place in the making
of a 102, anticipation rejection." *Application of Arkley*, 455 F.2d 586, 587–88 (C.C.P.A. 1972).
Further, "anticipation under § 102 can be found only when the reference discloses exactly what is
claimed." *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).

90.    "A claimed invention cannot be anticipated by a prior art reference if the allegedly
anticipatory disclosures cited as prior art are not enabled." *Elan Pharm., Inc. v. Mayo Found. for
Med. Educ. & Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (citations omitted).  "Enablement
of prior art requires that the reference teach a skilled artisan to make or carry out what it discloses
in relation to the claimed invention.  In other words, a prior art reference need not enable its full
disclosure; it only needs to enable the portions of its disclosure alleged to anticipate the claimed
invention." *In re Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012).  "If a patentee presents

evidence of nonenablement that a trial court finds persuasive, the trial court must then exclude that particular prior art patent in any anticipation inquiry, for then the presumption has been overcome." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

### f. Obviousness

91.   Section 103 of the Patent Act provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103.   To conclude whether a claim is obvious, the following factors must be determined: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of nonobviousness, termed "secondary considerations."   *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966).   All of these factors must be considered before a patent can be found invalid.   *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) ("Our precedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness.").

92.   "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."   *KSR*, 550 U.S. at 418.   "[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."   *Id*. at 418–19.   "[A] party seeking to invalidate a patent as obvious must 'demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the

skilled artisan would have had a reasonable expectation of success from doing so.'" *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012).

93.     The analysis takes place at the time of the invention and focuses on evidence existing before the time of the invention. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007). It is prohibited to use hindsight in the obviousness analysis. *KSR Int'l*, 550 U.S. at 421. "Obviousness 'cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention.'" *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) (citations omitted); *see also In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'") (citations omitted); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000) (using "the claimed invention itself as a blueprint for piecing together elements in the prior art to defeat the patentability of the claimed invention" is impermissible hindsight reasoning) (citation omitted).

94.     The Federal Circuit has explained: "Measuring a claimed invention against the standard established by section 103 requires the oft-difficult but critical step of casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field." *Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) (citations omitted). Further, courts "cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention." *Id.* The Federal Circuit has explained:

> Our case law makes clear that the best defense against hindsight-based obviousness analysis is the rigorous application of the requirement for a showing of a teaching or motivation to combine the prior art references.  "Combining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability—the essence of hindsight."

*Id.* at 1371–72 (citations omitted).

95.     Secondary considerations of nonobviousness include "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention."  *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016).  "[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record.  It may often establish that an invention appearing to have been obvious in light of the prior art was not.  It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art."  *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983).

96.     The Federal Circuit "has emphasized that consideration of the objective indicia is part of the whole obviousness analysis, not just an afterthought."  *Leo Pharm. Prod., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013).  "Objective indicia of nonobviousness play a critical role in the obviousness analysis.  They are 'not just a cumulative or confirmatory part of the obviousness calculus but constitute[] independent evidence of nonobviousness.'"  *Id*. at 1358 (citations omitted).  "Objective indicia 'can be the most probative evidence of nonobviousness in the record, and enables the court to avert the trap of hindsight.'"  *Id*. (citations omitted).  "The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight.  The rationale for giving weight to the so-called 'secondary considerations' is that they provide objective evidence of how the patented device is viewed in the marketplace, by those

directly interested in the product." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988).

97.    "For objective evidence . . . to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *Rambus Inc. v. Rea*, 731 F.3d 1248, 1256 (Fed. Cir. 2013) (citations omitted). "It is not necessary, however, that the patented invention be solely responsible for the commercial success, in order for this factor to be given weight appropriate to the evidence, along with other pertinent factors." *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1273–74 (Fed. Cir. 1991) (vacating and remanding summary judgment of obviousness in part due to the district court's error in concluding that the patented feature "alone" needed to account for the commercial success). "A requirement for proof of the negative of all imaginable contributing factors would be unfairly burdensome, and contrary to the ordinary rules of evidence." *Demaco*, 851 F.2d at 1394 ("By placing the burden on [the patent holder] to prove that commercial success was *not* due primarily to advertising or other factors such as technical service to licensees and the licensing of other products, the district court put the shoe on the wrong foot.").

98.    Further, the Federal Circuit "require[s] consideration of whether 'the marketed product embodies the claimed features.'" *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1222 (Fed. Cir. 2016) (citations omitted). "If a patent owner makes this showing, 'then a nexus is presumed and the burden shifts to the party asserting obviousness to present evidence to rebut the presumed nexus.'" *Id.* (citations omitted). Further, the Federal Circuit "do[es] not require a patentee to produce objective evidence of nonobviousness for every potential embodiment of the claim." *Id.* at 1221 (citations omitted); *see also In re Glatt Air Techniques, Inc.*, 630 F.3d 1026, 1030 (Fed. Cir. 2011) ("[W]e have consistently held that a patent applicant 'need not sell every conceivable

embodiment of the claims in order to rely upon evidence of commercial success.'") (citations omitted); *Demaco*, 851 F.2d at 1392 ("A prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent.").

### g.    Obviousness-Type Double Patenting

99.    "The double patenting doctrine is designed to prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are not patentably distinct from claims in the earlier filed patent.  In general, the obviousness analysis applies to double patenting, except for three distinctions.  First, statutory obviousness compares claimed subject matter to the prior art, while non-statutory double patenting compares claims in an earlier patent to claims in a later patent or application.  Second, double patenting does not require inquiry into a motivation to modify the prior art.  Finally, double patenting does not require inquiry into objective criteria suggesting non-obviousness." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (citations omitted).  "Obviousness-type double patenting is a question of law reviewed *de novo* by this court." *In re Berg*, 140 F.3d 1428, 1432 (Fed. Cir. 1998).

100.    "[O]bviousness-type double patenting can be overcome by filing a terminal disclaimer. . . . By disclaiming that portion of the second patent which would extend beyond the expiration of the first, the patentee gives up any extension of patent protection that might have resulted." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 940 (Fed. Cir. 1992) (citations omitted). "In legal principle, the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection." *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991).  "As a general rule, a terminal disclaimer filed to overcome an obviousness-type

double patenting rejection is effective only where the application and conflicting patent are commonly owned." *In re Hubbell*, 709 F.3d 1140, 1148 (Fed. Cir. 2013).

### h.    Indefiniteness Under 35 U.S.C. § 112

101.    Under 35 U.S.C. § 112, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112.  Definiteness requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id*.  Further, "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id*. (citations omitted).  As the Supreme Court has cautioned, "patents are 'not addressed to lawyers, or even to the public generally,' but to those skilled in the relevant art." *Id*. at 899 (citations omitted).  "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### i.    Written Description and Enablement Under 35 U.S.C. § 112

102.    Under 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112.  "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351

(Fed. Cir. 2010). "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id*. "When determining whether a specification contains adequate written description, one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Bos. Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (citations omitted). "The written description requirement does not require the applicant 'to describe exactly the subject matter claimed, [instead] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed.'" *Union Oil Co. of California v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000) (citations omitted).

103. "Enablement is determined as of the effective filing date of the patent's application." *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). "[E]nablement requires determination of whether a person skilled in the pertinent art, using the knowledge available to such a person and the disclosure in the patent document, could make and use the invention without undue experimentation. It is not fatal if some experimentation is needed, for the patent document is not intended to be a production specification." *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990). Further, "a patent need not teach, and preferably omits, what is well known in the art." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986). "Factors to be considered in determining whether a disclosure would require undue experimentation . . . include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill

of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the

claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (citations omitted).

### j.    Patentable Subject Matter Under 35 U.S.C. § 101

104.    Section 101 expressly provides four categories of patent-eligible subject matter:

processes, machines, manufactures, and compositions of matter.  35 U.S.C. § 101; *Alice Corp. Pty.*

*v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354–55 (2014); *Mayo Collaborative Servs. v. Prometheus*

*Labs., Inc.*, 566 U.S. 66, 70–72 (2012).  There is, however, "an important implicit exception:  Laws

of nature, natural phenomena, and abstract ideas are not patentable."  *Alice*, 134 S. Ct. at 2354.

105.    "Abstraction" is "an idea, having no particular concrete or tangible form."

*Ultramercial*, 772 F.3d at 715.  "A process is an act, or a mode of acting," and "[t]he mixing of

certain substances together, or the heating of a substance to a certain temperature, is a process."

*Tilghman v. Proctor*, 102 U.S. 707, 728 (1880).  "Process" is defined in § 100 as a "process, art,

or method, and includes a new use of a known process, machine, manufacture, composition of

matter, or material."  35 U.S.C. § 101(b); *In re Wang*, No. 2017-1827, 2018 WL 3045563, at *2

(Fed. Cir. June 20, 2018) ("A process 'consists of a series of acts or steps' and is something that

'has to be carried out or performed.'").  The Federal Circuit has "defined a 'machine' as 'a concrete

thing, consisting of parts, or of certain devices and combination of devices.  This includes every

mechanical device or combination of mechanical powers and devices to perform some function

and produce a certain effect or result.'"  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319,

1332 (Fed. Cir. 2010) (citations omitted).

106.    In *Alice* and *Mayo*, the Supreme Court set forth a two-step approach.  First, the

court "determine[s] whether the claims at issue are directed to one of those patent-ineligible

concepts," or towards a category of patent-eligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*,

772 F.3d 709, 714 (Fed. Cir. 2014).  If the claims fit within a patent-eligible category, then "the

claims pass muster under § 101," and the analysis stops. *Id.*; *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry."). If not, the court proceeds to step two and "must examine the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 714–15.

107.    In the first step, "the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citations omitted). The Federal Circuit has explained:

> The "directed to" inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world. Rather, the "directed to" inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether "their character as a whole is directed to excluded subject matter."

*Id.* (citations omitted) (emphasis in original). The Federal Circuit has cautioned that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id.* at 1337; *see also Diamond v. Diehr*, 450 U.S. 175, 187 (1981) ("[A] claim drawn to subject matter otherwise statutory does not become nonstatutory simply because it uses a mathematical formula, computer program, or digital computer."). "It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. . . . The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diehr*, 450 U.S.

at 188–89; *see also Evolved Wireless, LLC v. Apple Inc.*, 221 F. Supp. 3d 485, 494 (D. Del. 2016) ("Finally, defendants argue that the inventions disclose elements 'well-known' in the prior art. This may be true, but 'section 101 eligibility should not become a substitute for a patentability analysis related to prior art, adequate disclosure, or the other conditions and requirements of Title 35.'").

108.    In step two, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355.  Further, the Federal Circuit has explained: "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art.  As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  "At step two, more is required than 'well-understood, routine, conventional activity already engaged in by the scientific community,' which fails to transform the claim into 'significantly more than a patent upon the' ineligible concept itself." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016) (quoting *Mayo*, 132 S. Ct. at 1298, 1294).  "While the Supreme Court has held that the machine-or-transformation test is not the sole test governing § 101 analyses, that test can provide a 'useful clue' in the second step of the *Alice* framework." *Ultramercial*, 772 F.3d at 716.

### C.    Defendants' Equitable Estoppel Defense

#### 1.    Issues of Law

109.    Whether Defendants can prove that as a matter of equity, Sunoco should be estopped from asserting infringement of any one or more of the Asserted Claims of the '302 and '629 patents.

### 2.    Legal Authority

110.    "Equitable estoppel requires the defendant to prove by a preponderance of the evidence that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on this conduct; and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim." *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995).

111.    The first element requires "[t]he actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), *abrogated in part on other grounds by SCA Hygiene Prod. v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017). "[S]ilence alone will not create an estoppel unless there was a clear duty to speak, or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *Id.* at 1044. "[T]he alleged infringer must have knowledge of the patentee and its patent and must reasonably infer that the patentee acquiesced to the allegedly infringing activity for some time." *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir.), *opinion corrected*, 275 F.3d 1344 (Fed. Cir. 2001).

112.    Regarding the second element, proof of reliance on the patentee's conduct is "essential" to equitable estoppel. *Gasser Chair*, 60 F.3d at 776 (citations omitted). The party asserting estoppel must prove that, "in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Aukerman*, 960 F.2d at 1042–43. Indeed:

> An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls

> the infringer into a sense of security in going ahead with building the plant.

*Id*. at 1043; *see also Gasser Chair*, 60 F.3d at 776 ("[infringer] must show that it substantially relied on the misleading conduct of [patentee] in taking some action, such as building a plant for producing the infringing product").  "Reliance" is not established when "there is a total absence in the record of any showing by [the alleged infringer] that its activities were *in reliance upon* supposed actions of [the patentee], rather than a business judgment of its own—a judgment which subsequent events may well prove to have been faulty."  *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294–95 (Fed. Cir. 1992).

113.    Regarding the third element, "[t]he proper inquiry is whether there has been a '*change* in the economic position of the alleged infringer during the period of delay.'"  *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) (citations omitted).  "[C]ases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and development, were in any way related to actions taken by the patentee."  *Id*.