

REDACTED

Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

November 27, 2021

Nitika Gupta Fiorella
Principal
fiorella@fr.com
+1 302 778 8461  direct

The Honorable Leonard P. Stark
United States District Court
 For the District of Delaware
844 King Street
Wilmington, Delaware 19801

Re:   *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC et al.*
       C.A. No. 17-1390-LPS-CJB (D. Del.)

Dear Judge Stark:

We write to request the Court strike the following exhibits that Sunoco served Monday evening: PTX-884 (Ex. 1), PTX-886 to PTX-895 (Ex. 2-11), and PTX-899 (Ex. 12).  These exhibits are not, as Sunoco claims, proper Fed. R. Evid. 1006 summaries, and are further inadmissible for a number of additional reasons, as outlined below.

**PTX-884: Untimely Supplemental Expert Report Analyzing Magellan Blend Data**

PTX-884 is a three-section, 35-page report that contains expert analysis from Dr. Kytomaa regarding different aspects of Defendants' blending practices, the vast majority of which was never previously disclosed during this four-year litigation.  *See* Ex. 1.  This Court should strike it as untimely.

**Section I.**  Section I of PTX-884 is titled a "Summary of RVP Measurements (Unblended Gasoline vs Blended Gasoline/Butane)" and contains 27 charts that do not appear anywhere in Dr. Kytomaa's reports.  (Ex. 1, PTX-884.3 to PTX-884.14.)  In this section, Dr. Kytomaa analyzes blending data for every line at every accused facility over the span of nearly a decade to calculate the percent of unblended gasoline measurements per year.  Dr. Kytomaa admits (PTX 884.3) that the only (partial) support for the new exhibit is contained in five paragraphs of his August 2019 reply report, where he used plots and charts to present data for just *two systems*—Allen (which is no longer accused of infringement) and PSL—and not even all lines at PSL, and for less than one year (August 2017 through December 2018).  The blending lines at Carthage, Chattanooga, Dupont, East Houston, Greensboro, Kansas City, OKC, and West Tulsa were not analyzed.  (*See* Ex. 13, Kytomaa Reply Rep., ¶¶ 26-31.)



The Honorable Leonard P. Stark
November 27, 2021

Dr. Kytomaa had the underlying blending data for all accused systems for the period 2013 to 2018 in advance of his August 2019 reply report and thus could have done the analysis in Section I of PTX-884 through that date. He chose not to do so then, so he should not be allowed to do so now, just days before trial. Further, Sunoco's apparent suggestion that this analysis is not "new" because Dr. Kytomaa provided some exemplary analysis on this issue in his report rings hollow. Indeed, it is unclear whether the analysis Dr. Kytomaa is doing now in PTX-884 is, in fact, the "same" as what he did with respect to Allen and certain lines of PSL in his report. At the time of his reply report, Dr. Kytomaa expressly explained *why* he did not perform the same analysis for a broader period of time for the terminals he chose, noting that, "[w]hile the full data range was broader for the terminals, one or more missing types of information in the data *prevented consistent examination beyond these dates*." (Ex. 13, Kytomaa Reply Rep. ¶ 31, n.6 (emphasis added).) Defendants have no way of understanding how Dr. Kytomaa is now able to provide such "consistent examination" for PSL (at a minimum) when he could not do so then. Dr. Kytomaa does not identify what missing information supposedly prevented his analysis before, nor whether he later obtained that missing information or how he might have obtained it. Moreover, even if the analysis were the exact same, with the same assumptions and methodology employed (which is also unclear), that still does not excuse Sunoco and Dr. Kytomaa from complying with their obligations under Rule 26 and timely presenting any and all expert analysis they intend to rely on at trial.[1]

**Section II.** Section II of PTX-884 is a "Summary of Length of Time for Blending Operations" that similarly bears no resemblance to anything disclosed in any of Dr. Kytomaa's expert reports. (Ex. 1, PTX-884 at 884.24.) In this section, Dr. Kytomaa provides three tables—███████████████████████████████—as well as an explanation of his "Data Analysis" used to create the tables. Dr. Kytomaa cites just six paragraphs of his rebuttal report on validity where he says he "summarized the QMS data showing the length of the blending operations for certain blending systems," but those paragraphs wholly fail to timely disclose the expert analysis contained in PTX-884.

As an initial matter, Defendants believe Sunoco intends to use this analysis in its case-in-chief (we asked, but they would not say), so it is improper for Sunoco to attempt to rely on paragraphs from Dr. Kytomaa's *rebuttal report on validity* (related to the differences

---

[1] Nor is it an answer that updated blending data for 2019-2020 was produced after Dr. Kytomaa's reply report. As explained, before serving PTX-884, Dr. Kytomaa never disclosed *any analysis* related to the percent of RVP measurements of unblended gasoline for ████ blending lines he includes now, so this is not a matter of simply updating previously disclosed analysis. And even if Dr. Kytomaa could attempt to supplement his expert report with this new analysis, he had a year to do so since being served with the updated the data. Less than a week before trial is simply too late.



The Honorable Leonard P. Stark
November 27, 2021

between refinery and terminal blending for non-obviousness) to help prove infringement. Beyond that, the information and analysis in PTX-884 is entirely different from what Dr. Kytomaa presented in his rebuttal report.  First, Dr. Kytomaa only analyzed data for *one* blending line ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in his rebuttal report, (Ex. 14, Kytomaa Rebuttal Rep., ¶ 70), while the tables in PTX-884 contain information from two *additional* lines ▮▮▮▮▮▮, (PTX-884.13-14).  Second, Dr. Kytomaa only analyzed *one month* (December 2017) for the one blending line ▮▮▮▮▮▮ in his rebuttal report, while the tables in PTX-884 appear to take into account multiple years of blending data at ▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. 1, PTX-884.20-21 (citing multiple years' worth of QMS data as "Source" information), PTX.884.22-23 (providing QMS data snippets from September 2017 as the example to show data analysis).)

Third, Dr. Kytomaa's analysis in PTX-884 appears to be completely distinct from what he did in his rebuttal report.  In his rebuttal report, Dr. Kytomaa provided plots indicating the blend percent, RVP, RVP setpoint, and flow rate of butane, while in PTX-884, Dr. Kytomaa provides tables indicating the "continuous blending time" and the "number of blending occurrences" during each time period, from which Dr. Kytomaa appears to calculate a "percentage of blending occurrences" for each time period.  Even a cursory review of the selection and presentation of data in Dr. Kytomaa's rebuttal report versus PTX-884 plainly shows these "data summaries" are not, as Dr. Kytomaa suggests, "the same":





The Honorable Leonard P. Stark
November 27, 2021



(Ex. 14, Kytomaa Rebuttal Rep., ¶ 70; Ex. 1, PTX-884.20.)  Simply put, Defendants did not have notice from the top plot that Dr. Kytomaa would be providing (and presumably drawing conclusions from) the analysis contained in the bottom table, nor that he would provide such an analysis for infringement purposes.

**Section III.**  Section III of PTX-884 suffers the same flaws as Section II.  In this section, Dr. Kytomaa provides multiple charts related to the "Available RVP Margins for the Accused Systems" that he never disclosed in his expert reports.  As noted in PTX-884, Dr. Kytomaa only provided such analysis "for certain blending systems at the West Tulsa and Allen facilities" in his *rebuttal report*, only for one month (June 2017), and only in a plot form like that shown above.  But in PTX-884, Dr. Kytomaa includes tables of data for *every line of every accused system* over *multiple* years and again provides an entirely different analysis of the data to calculate "percentage of blending occurrences" for various time periods.  (Ex. 1, PTX-884.25 to PTX-884.34.)  Dr. Kytomaa had the underlying QMS data at the time of his expert reports, and could have analyzed the same data in the same way that he did in all three sections of PTX-884 during that time.  Had he done so, Defendants would have been able to depose Dr. Kytomaa on the methodology and analysis contained in PTX-884 then, as well as question him on what conclusions he draws from this analysis and why.  Now, just two days before trial, is much too late.

Finally, and for many of the same reasons, Sunoco's claim that PTX-884 is a Fed. R. Evid. 1006 summary is simply incorrect.  Rule 1006 allows the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Courts have been clear, however, that a Rule 1006 summary must be just that—a summary—and cannot contain narratives, assumptions, and analysis that amount to opinion testimony.  *See U.S. v. Shulick*, No. 18-3305, 2021 WL 5298024, at *9 (3d Cir. Nov. 15, 2021) ("If a purported summary includes assumptions and



The Honorable Leonard P. Stark
November 27, 2021

inferences that represent opinion, rather than the underlying information, it is actually expert testimony subject to the rules governing opinion testimony") (internal quotations omitted); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (excluding proffered calculations that "went beyond the data they summarized" in including assumptions, inferences, and projections that amounted to opinion testimony and were not proper summaries under Rule 1006). Yet PTX-884 is replete with such information, including "General Overall Assumptions" (at 35) and explanations of the "Data Analysis" performed for each section (at 15-16, 19, 22-23, 34). Simply put, PTX-884 is an untimely disclosure of expert opinions of Dr. Kytomaa and thus goes well beyond a Rule 1006 summary. This Court should strike the exhibit for this additional reason.

**PTX-886 to PTX-895: Exhibits to Dr. Maness's Report Are Hearsay and an End-Run Around This Court's *Daubert* Ruling**

PTX-886 through PTX-895 (Exs. 2-11) are reproductions of exhibits that were attached to Dr. Maness's expert report on damages. They are hearsay, and, many of them further reflect the damages opinions of Dr. Ugone, which this Court has struck as unreliable. This Court should thus strike these exhibits as well.

Courts have consistently held that expert reports are hearsay and therefore not admissible. *See Hunt v. City of Portland*, 599 Fed. Appx. 620, 621 (9th Cir. 2013) ("With respect to the expert's written report, we conclude that the report is hearsay to which no hearsay exception applies."); *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553 at *3 (E.D. Tex. 2017) ("[N]either party has indicated that it intends to offer its expert's report into evidence, but just for clarity, the reports themselves are plainly hearsay and will not be admitted into evidence absent stipulation by the parties"); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("[E]xpert reports, such as those prepared by Dr. Cheng and Dr. McMillan prior to trial, are hearsay and, absent agreement to their admission, are inadmissible."); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("The cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403."). The same goes for these exhibits, which clearly reflect the decision-making and analysis of the experts, and thus are out-of-court statements presented for the truth of what they contain.

Beyond that, Exhibits PTX-887, PTX-889, PTX-890, and PTX-893 are in fact **Dr. Ugone's** damages schedules, which Dr. Maness simply included as exhibits in his rebuttal report:

- PTX-887 (Ex. 3): Dr. Ugone's Estimates of Sunoco and Affiliate Annual Butane Volume Sold
- PTX-889 (Ex. 5): Dr. Ugone's Accused Butane Usage by Terminal and Year
- PTX-890 (Ex. 6): Dr. Ugone's Accused Butane Usage by Terminal and Month



The Honorable Leonard P. Stark
November 27, 2021

- PTX-893 (Ex. 9): Summary of Dr. Ugone's Volumes Blended on Accused Systems by Terminal, Blending Type, and Flow Direction

This Court has already struck Dr. Ugone's damages opinions in their entirety and refused to allow Dr. Ugone to testify at all in the damages phase of this case. This Court went even further, and denied Sunoco's motion to allow Dr. Ugone to testify to Defendants' blend volumes, stating that "Dr. Ugone's opinions on accused blend volumes do not appear to be any more appropriately apportioned than the other aspects of his opinions that have been excluded" and that, while "'some other witness' may be able to testify about documents cited in Dr. Ugone's stricken reports, this possibility does not open the door to Dr. Ugone's testimony." (D.I. 639 at 3.) Simply put, Sunoco cannot use Dr. Maness's summaries of Dr. Ugone's stricken opinions as an end-run around the Court's order granting Defendants' *Daubert*.

To be clear, the fact that Dr. Maness included Dr. Ugone's schedules as exhibits to his report does not provide Sunoco with grounds to get around the Court's ruling. Dr. Maness never conceded that Dr. Ugone's summaries were correct, including properly apportioned; rather, he refers to them generally and only as a means for critiquing Dr. Ugone's methodology. (*See e.g.*, Ex. 15, Maness Rep., ¶ 233, ("While I disagree with the way in which Dr. Ugone has calculated the royalty base, assuming Dr. Ugone's accused volumes the per gallon reasonably royalty estimates are shown in the table below and in Exhibit 8."$^2$), ¶ 25 (using Dr. Ugone's estimate of accused volumes to calculate Defendants' maximum willingness to pay and critiquing Dr. Ugone's proposed royalty rates on that basis).) These exhibits are also not Rule 1006 summaries, as Sunoco suggested on the parties' meet and confer, and lack foundation for the same reason. There is no evidence that these exhibits are "accurate" summaries of the underlying data—a necessary requirement for Rule 1006—and Sunoco has no sponsoring witness to try to establish that – including Dr. Maness, who did not opine that Dr. Ugone's work was accurate or reliable.

These exhibits are hearsay, lack foundation, contain struck opinions, and are not proper Rule 1006 summaries, so this Court should strike them.

**PTX-899: Dr. Kytomaa's Analysis of Butane RVP**

This Court should further strike the narrative and opinion sections of PTX-899, (Ex. 12), as hearsay. PTX-899 contains a table of "butane RVP values measured at Magellan and Powder Springs terminals" and a "histogram of the butane RVP data for East Houston" that come

---

$^2$ Dr. Maness's Exhibit 8 is extrapolated from Exhibit 2.A, Dr. Ugone's Accused Butane Usage by Terminal and Year, Sunoco's PTX-889. (*See* Ex. 15, Maness Rep., Ex. 8.)



The Honorable Leonard P. Stark
November 27, 2021

from Dr. Kytomaa's opening expert report.  (*Compare* Ex. 12, PTX-899.1-2 (Table), with Ex. 16, Kytomaa Opening Rep., Table 2.)  But PTX-899 further includes discussion of how Dr. Kytomaa created the table and histogram, and Dr. Kytomaa's conclusions from the data.  Specifically, Dr. Kytomaa says in PTX-899, "[a]s can be seen, the vast majority of butane RVPs were determined to be between 50 and 55 psi." (PTX-899.1.)  That is directly from Dr. Kytomaa's expert report and is thus inadmissible hearsay.  Further, because PTX-889 goes beyond a summary of data, and instead contains analysis and expert opinion, it is not a proper Rule 1006.

Respectfully submitted,

*/s/ Nitika Gupta Fiorella*

Nitika Gupta Fiorella (No.5898)

cc:   Counsel of Record – by CM/ECF and e-mail