# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P., | § § § |
| Plaintiff, | § Civil Action No. 17-1390-RGA § § |
| v. | § JURY TRIAL REQUESTED § |
| POWDER SPRINGS LOGISTICS, LLC, AND MAGELLAN MIDSTREAM PARTNERS, L.P., | § § § § § |
| Defendants. | § § |

**PLAINTIFF SUNOCO PARTNERS MARKETING & TERMINALS L.P.'S
REPLY IN SUPPORT OF ITS OPPOSED MOTION FOR PERMANENT INJUNCTION
TO PREVENT INFRINGEMENT BY DEFENDANTS' POWDER SPRINGS SYSTEM**

Dated: December 22, 2021

                                                              John C. Phillips, Jr. (No. 110)
                                                              Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Plaintiff Sunoco Partners
Marketing & Terminals, L.P.*

Of Counsel:
John Keville
Michelle Replogle
Richard McCarty
Michael Krill
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, Texas 77002
(713) 651-2600 (phone)
(713) 651-2700 (fax)

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | The existence of a noninfringing alternative does not preclude an injunction. | 1 |
| | B. | Balancing a litigation strategy with witness safety during a pandemic does not give Defendants a free license to continue infringement. | 3 |
| | C. | Money damages are not sufficient to fully compensate Sunoco for Defendants' willful infringement. | 4 |
| | D. | Defendants' representation that they have ceased infringement is insufficient. | 8 |
| III. | CONCLUSION | | 10 |

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................................5

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   809 F.3d 633 (Fed. Cir. 2015)....................................................................................................1

*Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*,
   15-CV-152-RGA, 2019 WL 3322322 (D. Del. July 24, 2019), *vacated in part*,
   967 F.3d 1353 (Fed. Cir. 2020).............................................................................................2, 3

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020).............................................................................................3, 5

*Brooktrout, Inc. v. Eicon Networks Corp.*,
   203-CV-59, 2007 WL 1730112 (E.D. Tex. June 14, 2007).......................................................6

*Complex Sys., Inc. v. ABN AMBRO Bank N.V.*,
   08 CIV. 7497 KBF, 2014 WL 1055263 (S.D.N.Y. Mar. 13, 2014) .........................................8

*Douglas Dynamics, LLC v. Buyers Products Co.*,
   717 F.3d 1336 (Fed. Cir. 2013).............................................................................................2, 5

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
   CV 14-1250-RGA, 2017 WL 4004419 (D. Del. Sept. 12, 2017), *aff'd sub
   nom. E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed.
   Cir. 2019) ...............................................................................................................................7, 9

*Honeywell Intern., Inc. v. Universal Avionics Sys. Corp.*,
   397 F. Supp. 2d 537 (D. Del. 2005)..........................................................................................9

**Statutes**

35 U.S.C. § 284..............................................................................................................................7

**Other Authorities**

Federal Rule of Evidence 408........................................................................................................8

**I.      INTRODUCTION**

The principal value of a patent is its statutory right to exclude. Sunoco has sought to enforce that right against Defendants' infringement at Powder Springs since filing this litigation. In an admitted two-player market, where Sunoco's market share (at least with Colonial), revenues, and customers' revenues have all been harmed in ways that are undisputed and particularly difficult to quantify, a permanent injunction is well warranted.

**II.     ARGUMENT**

**A.      The existence of a noninfringing alternative does not preclude an injunction.**

Sunoco's motion demonstrated that continued infringement at the Powder Springs system will cause irreparable harm through direct competition in the same market, loss of downstream blending opportunities, and interference with Sunoco's licensees. D.I. 764 (Br.) at 5–9. Defendants' brief does not dispute that Sunoco suffered all of these harms. Instead, Defendants argue only that Sunoco cannot satisfy the "causal nexus" requirement because Defendants could manually blend (to avoid infringement) and still compete. Defendants are thus claiming that the existence of a noninfringing alternative precludes the issuance of a permanent injunction. That is not the law and Defendants notably fail to cite a single case in support of their novel proposition.

The causal nexus requirement seeks only to "ensure that there is 'some connection' between the harm alleged and the infringing acts." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 640 (Fed. Cir. 2015). Here, the underlying "connection" is fairly straightforward. Defendants willfully infringed claim 3 of the '686 Patent by using an automated blending procedure to blend tens of millions of gallons of butane directly into the Colonial pipeline. D.I. 744 (Jury Verdict) at 5; Tr. 501:14–23 (Magellan's Huff); PTX 152. Those millions of gallons of pre-blended gasoline then flow downstream to terminals owned by Sunoco and its licensees, thereby harming Sunoco by reducing blend opportunity and interfering with its licensees. PTX

1

705; Tr. 227:11–24 (Colella); Tr. 314:14–22, 325:16–326:8, 360:3–361:24 (Maier); Tr. 361:25–362:9 (Legge). Contrary to Defendants' framing, this harm is not merely Sunoco's lost revenue. The harm is losing revenue, market share, and goodwill to a competitor who willfully misappropriated Sunoco's technology for its own benefit and to the detriment of Sunoco. *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). Defendants' infringing blending indisputably causes these harms, so the causal nexus requirement is satisfied.

Defendants cannot dispute infringement and do not dispute the harm caused. They only claim that they have a *noninfringing* alternative that would also compete with Sunoco in the blending market and cause similar harms. Perhaps they do, but Sunoco is not seeking to enjoin lawful competition, and the existence of a noninfringing alternative is not a bar to a permanent injunction. Rather, the Federal Circuit and this Court have found it *supports* granting one.

In *Douglas Dynamics*, the parties directly competed for sales of "snowplow assemblies for mounting on the front of a truck." 717 F.3d at 1339. The defendant—much like Defendants here—"represented to the district court that its new design around was ready for implementation." *Id.* at 1345. The Federal Circuit found this supported a permanent injunction under the balance of hardships factor since the defendant "should halt infringement and pursue a lawful course of market conduct." *Id.* at 1345. Similarly, in *Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*, the parties were "direct competitors in the market for products that perform genetic analysis on a droplet platform." 15-CV-152-RGA, 2019 WL 3322322, at *2 (D. Del. July 24, 2019), *vacated in part*, 967 F.3d 1353 (Fed. Cir. 2020). This Court granted an injunction in part because the defendant

2

had been "pursuing a design-around for some time" and—like here—believed it would "work as well" as the infringing product. *Id.* at *3.

Under Defendants' theory, the same evidence that the Federal Circuit has held supports an injunction under the balance of harm factor would somehow preclude an injunction under the irreparable harm factor since the noninfringing alternatives would necessarily also compete with the patented inventions. That is paradoxical. Indeed, on appeal of the permanent injunction in *Bio-Rad*, the Federal Circuit vacated the injunction as to two products that did not have a noninfringing alternative because the hardship to the defendant would be too great. *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1379 (Fed. Cir. 2020) ("In the absence of non-infringing alternatives for the Linked-Reads and CNV products, we conclude it was an abuse of discretion for the district court to enjoin sales of these two product lines."). It cannot be true that the mere existence of a noninfringing alternative bars a permanent injunction.

Not surprisingly, neither the Federal Circuit nor this Court has recognized Defendants' novel theory as it fundamentally misapprehends the nature of the irreparable harm—improperly competing against a patentee *by infringing* its patent. Defendants are free to lawfully compete under the proposed permanent injunction. What they should not be permitted to do is continue to irreparably harm Sunoco by willfully infringing the '686 Patent as they have done for years.

### B. Balancing a litigation strategy with witness safety during a pandemic does not give Defendants a free license to continue infringement.

Defendants also claim there is no harm by again pointing to difficult tradeoffs that had to be made because of the realities of litigating during a pandemic. While Defendants try to recharacterize and soften their position from their letter, their criticisms are effectively the same. Defendants' position is that their willful infringement should be allowed to continue because Sunoco preferred to have its witnesses appear live. As discussed in Sunoco's motion, that decision

was the correct one as borne out by the jury's rejection of Defendants' uncredible testimony and a verdict that answered every question in Sunoco's favor, including returning the maximum amount of damages Sunoco was able to request. D.I. 764 (Br.) at 10–11.

At bottom, Defendants' grievance is that there may have been situations where irreparable harm could not have been prevented because of other practical concerns like witness safety and judicial economy. While that may be a possibility, it is not reality. The reality is that Sunoco's patent rights have been willfully violated for more than four years and that those patent rights can now be protected for four months. The permanent injunction factors all support doing exactly that.

### C. Money damages are not sufficient to fully compensate Sunoco for Defendants' willful infringement.

Defendants' brief primarily focuses on evidence and findings in the earlier preliminary injunction stage, claiming that this proceeding, which took place without the benefit of discovery, somehow precludes a post-trial permanent injunction. D.I. 782 (Opp.) at 14–16. But a lot has changed since Sunoco moved for a preliminary injunction based on its *likelihood* of success. Most importantly, success has now been confirmed as Sunoco proved Defendants are willful infringers who harmed Sunoco and its licensees for years. D.I. 744 (Liability Verdict); D.I. 753 (Damages Verdict). As discussed in Sunoco's motion, that harm includes lost blending opportunity, lost market share, and lost goodwill from Sunoco's licensees, not to mention the fundamental harm a patentee suffers from having its market position usurped by someone who willfully exploits the patentee's technology. Money damages are not adequate to remedy these harms.[1]

---

[1] Defendants incorrectly claim that Sunoco argued "willfulness alone suggests that monetary damages are insufficient to remedy the harm." D.I. 792 (Opp.) at 17. Defendants' selective quotation misstates Sunoco's brief, which stated that Defendants' willful infringement had harmed Sunoco by "taking Sunoco's market share and harming its goodwill with licenses." D.I. 764 (Br.) at 12. It is this harm alone, caused by willful infringement, that shows monetary damages are insufficient. Sunoco's motion cited cases showing as much, including that willful infringement supports such a finding.

Defendants' opposition is noteworthy for what it chooses *not* to address. Sunoco's motion asserted that continued infringement would result in lost market share. D.I. 764 (Br.) at 5–6, 12. Defendants did not challenge that, nor did they argue that money damages could compensate for such harm. As this Court has recognized, damages are insufficient for such loss. *Bio-Rad*, 2019 WL 3322322, at *3. Unlike in *ActiveVideo Networks, Inc. v. Verizon Communications, Inc*, which Defendants rely upon (D.I. 782 (Opp.) at 13), Sunoco and Defendants are direct competitors. 694 F.3d 1312, 1341 (Fed. Cir. 2012) ("ActiveVideo and Verizon do not compete in the same market."). Sunoco invested millions into the patented technology and spent millions more to rapidly build systems that practice the patents. Tr. 165:19–166:11, 174:14–21, 181:3–185:13, 193:4–196:12, 207:2–211:1 (Colella); Tr. 317:3–23 (Maier); Tr. 344:14–346:4 (Legge); Tr. 368:13–22 (Parzanese); PTX 705. Defendants willfully infringed that technology to operate the largest butane blending facility in the world and make millions at Sunoco' expense. Tr. 498:17–592:17 (Magellan's Huff); Tr. 773:17–20 (Magellan's Roles); PTX 154. "[M]ere damages will not compensate for [Defendants'] increasing share of the market, a market which [Sunoco] competes in, and a market that [Sunoco] has in part created with its investment in patented technology." *Douglas Dynamics*, 717 F.3d at 1345.

Instead of attempting to disprove these harms, Defendants assert that money damages are adequate because Magistrate Judge Burke stated in a footnote, relying only on the preliminary injunction record, that "loss *could* be quantified and compensated accordingly." D.I. 782 (Opp.) at 7 (quoting D.I. 68 at 16 n.4). Importantly, this was based entirely on contractual language requiring equitable financial compensation for upstream blending (not for the willful infringement of anyone's patent). But further, that contract language does not specify how to quantify any such harm. And while Judge Burke thought it was likely such harm could be calculable, that is not the

5

story Defendants themselves told at trial. Defendant Magellan's former engineer, Nick Huff, testified that it was difficult to answer how much harm is done to Sunoco terminals:

> Q. And Sunoco and its customers' terminals downstream are having that done to them by Powder Springs; correct? They're blending butane upstream and taking away the margin?
>
> A. We are blending butane on the pipeline, on the pipeline.
>
> Q. And taking away the margin for downstream?
>
> A. It's not easy to say that because there's a lot of -- a lot of things in there depending on where the product goes and what's blended and what's not blended and what terminals it gets it actually hits. So it's kind of hard to – it's kind of hard to answer that question directly.

Tr. 504:14–24. On cross examination of Sunoco's witness, John Legge, Defendants' counsel elicited testimony that Sunoco doesn't know which batches Defendants are blending into, and that there are other factors that can reduce blending at a terminal, such as equipment failures. Tr. 1349:21–1350:25 (Legge). The singular goal of Defendants' cross examination was apparently to show that Sunoco cannot easily quantify the harm Defendants cause due to how Defendants operate their system. Defendants' brief does not address this issue because they have no answer. Having argued through trial that damages are difficult to accurately calculate, they are now stuck with the reality that monetary damages are not sufficient to make Sunoco whole. *Brooktrout, Inc. v. Eicon Networks Corp.*, 203-CV-59, 2007 WL 1730112, at *1 (E.D. Tex. June 14, 2007).

Likewise, Defendants claim that the harm to Sunoco's licensees is insufficient simply because Magistrate Judge Burke found the preliminary judgment evidence insufficient four years ago. But the parties have now been through years of discovery and a two-part trial lasting six days. This is not a motion on a preliminary injunction record. Sunoco's current motion cited ample trial testimony in support of such harm and Defendants have come forward with nothing in rebuttal. Defendants' brief brings only criticism about what *other* evidence Sunoco might have included, sidestepping the record and ignoring that the trial was limited to fourteen hours per side.

6

Defendants also rely on a modification to the Perimeter contract that they assumed, but this is also inapposite. That contract modified a provision to allow for blending at Powder Springs in exchange for Sunoco receiving a greater share of revenue. Notably, that exchange was neither a tradeoff for Defendants' willful infringement nor did it condone Defendants' willful infringement, but rather it was an agreed contractual modification for an already licensed system. Furthermore, the structure of that agreement is nothing like the monetary relief Defendants seek to impose for any continued infringement at Powder Springs. There, the modified purchase price provision— calculated using a formula based on gasoline price, butane price, and other variables—altered the profit split by adjusting one of those variables (the butane factor). D.I. 26-1 (Ex. 1) at 8 § 5.1; *Id.* (Ex. 2) § 5.1. Defendants are not suggesting that this agreement (or any of Sunoco's butane supply agreements) be used to calculate the damages—only the $.02/gallon royalty they proposed. D.I. 782 (Opp.) at 13. Defendants' expert Dr. Maness admitted that the $.02 rate is not inclusive of the harm from customer losses. Tr. 1419:7–10; 1420:3–14. Moreover, Defendants' proposed rate that was allowed to be presented to the jury is *not* equivalent to making Sunoco whole. Rather, it is at best simply the minimum that Sunoco as a patentee is due for infringement. 35 U.S.C. § 284 (providing for damages "in no event less than a reasonable royalty for the use made of the invention by the infringer"). Sunoco's profits from its own blending (or shared profits from its licensees) is higher than the $.02 royalty. *See, e.g.*, Tr. 204:9–25, 205:24–206:12 (Colella) (over $90 million in profit); PTX 332–338, 343, 350, 692, 877; *cf.* D.I. 753 (awarding $12 million in royalties). Thus, even before the damages issue is addressed on appeal, Defendants' proposed royalty is on its face not adequate to make Sunoco whole for future infringement. *E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, CV 14-1250-RGA, 2017 WL 4004419, at *5 (D. Del. Sept. 12, 2017), *aff'd sub nom. E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed. Cir. 2019).

As a final effort, Defendants point again to the near settlement of this case as evidence that monetary damages are somehow sufficient. D.I. 782 (Opp.) at 15. Defendants claim this does not run afoul of Rule 408, but they are essentially using it to prove the "amount" of damages. Whether it is a technical violation or not, it clearly violates the spirit of the rule because Defendants' use of settlement discussions to prevent a permanent injunction would have a chilling effect on settlements in future litigations. As one litigant put it, garnering agreement from a district court, "It is hard to imagine a policy more destructive to the purpose of Rule 408 than one in which the request for injunctive relief is diminished—or, as ABN here argues, completely waived—the moment the parties even approach the subject of settlement." *Complex Sys., Inc. v. ABN AMBRO Bank N.V.*, 08 CIV. 7497 KBF, 2014 WL 1055263, at *4 (S.D.N.Y. Mar. 13, 2014). Furthermore, even considering the settlement agreement, the structure of it actually supports a finding that monetary damages are inadequate. The proposed agreement was not a simple cash payment. Instead, it included non-monetary terms, including a proposed agreement that was never able to be negotiated to completion and which was the subject of two motions filed by Defendants and decided by Judge Stark. D.I. 669; D.I. 686. This shows that, even when trying to settle the dispute, monetary damages alone were not sufficient.

### D. Defendants' representation that they have ceased infringement is insufficient.

Defendants finish their brief by arguing that their purported cessation of infringement does not automatically entitle Sunoco to an injunction. D.I. 782 (Opp.) at 18. This is strange, as Sunoco never claimed that alone justified an injunction. Indeed, Sunoco did not even know about Defendants' purported cessation until after Sunoco filed its motion, which Defendants had indicated they would vigorously oppose (thereby suggesting they did not intend to stop). Defendants recognize that their representation begs the question: why do Defendants continue to oppose an injunction with which they claim to be voluntarily complying? Their brief provides no

explanation. It claims that Defendants want to "close the issue." But of course agreeing to an injunction would also "close the issue," and appeals are forthcoming, so it is unclear why Defendants are adamant that there be no enforcement mechanism buttressing their representations.

Defendants seem to have included this discussion to suggest that Sunoco is somehow being unreasonable and that Defendants—willful infringers of Sunoco's patents—are somehow being unfairly harassed by being sued for that infringement. D.I. 782 (Opp.) at 2 (arguing that "Sunoco's response shows that the endless litigation that has characterized this case (4 years of litigation over a mere $12 million dollars) is just going to continue").[2] Defendants also imply that Sunoco is somehow being unreasonable by refusing to withdraw its motion for a permanent injunction in light of Defendants' naked promise to stop their willful infringement. *Id.* at 18 ("Despite Defendants informing Sunoco that they have stopped automated blending at Powder Springs, Sunoco has not agreed to withdraw its motion for a permanent injunction because it wants a Court order."). However, as Defendants concede, voluntarily ceasing infringement "is not a persuasive reason to deny the request for an injunction." *E.I. DuPont*, 2017 WL 4004419, at *5. If anything, it makes more sense to grant the injunction. *Honeywell Intern., Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 545 (D. Del. 2005) ("[I]f that defendant is honestly professing its future intentions, an injunction will do no harm; however, if the defendant is inaccurate about or misrepresents its future intentions, then the court should prevent future infringement.").

In addition to being entitled to an injunction based on the factors, Sunoco is also understandably reluctant to simply take Defendants at their word given their conduct (willful infringement) and their prior inaccurate representations. For example, Defendants always claimed

---

[2]  Defendants ignore that Sunoco fought until the end of the case for a different damages calculation and will cross-appeal on that issue, and do not explain why, if the issue is so small, they are opposing an injunction.

to have invented automated blending first, yet they could never produce any corroboration for that story and many others. Tr. 834:20–23, 840:19–25, 844:7–845:15, 848:1–849:1, 850:3–18 (Moyer); Tr. 892:8–894:13 (Howerton); Tr. 990:1–24, 995:10–996:17 (Mongold). Defendants claimed this was all a coincidence, even arguing to the jury that "you have to accept, if you believe that we are infringers and willful infringers, you have to accept that we have been lying to you throughout this case." Tr. 1258:15–18. The jury's verdict shows its acceptance of Defendants' premise and confirmation that they did not believe Defendants' explanations. Defendants' representations here bear a strikingly similarity. Ms. Hitz declares that Defendants have moved to a manual process that does not infringe, but her declaration omits corroborating details and documents that undoubtedly should exist. When Sunoco responded by requesting the Management of Change (MOC) and other easily providable details that should exist, Defendants went silent. They did not claim those details were irrelevant or somehow difficult to produce. Instead, they filed their opposition brief accusing Sunoco of engaging in "endless litigation" for daring to defend its patent rights against Defendants' willful infringement.

Defendants' infringement is not a product on a shelf that Sunoco can look at in stores to verify infringement has stopped. It occurs at Defendants' facility and they have sole control of the information. Given those circumstances, it is reasonable to ask for some basic verification to ensure Defendants actually comply with any injunction and cease their infringement. Accordingly, Sunoco requests that any permanent injunction include a verification requirement. Proposed requirements are attached as Exhibit 1 to this reply.

### III.   CONCLUSION

Any continued infringement by Defendants will irreparably harm Sunoco in a manner that cannot be adequately compensated for money damages. Because Defendants do not challenge the other two factors, a permanent injunction is warranted.

Dated: December 22, 2021

Respectfully submitted,

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Plaintiff Sunoco Partners Marketing & Terminals, L.P.*