IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS L.P.,<br><br>Plaintiff,<br><br>v.<br><br>POWDER SPRINGS LOGISTICS, LLC, and MAGELLAN MIDSTREAM PARTNERS, L.P.,<br><br>Defendants. | Civil Action No. 17-1390-RGA |

MEMORANDUM

Before me is Plaintiff's Post-Trial Motion for Enhanced Damages, Supplemental Damages, Pre-Judgment and Post-Judgment Interest, and Ongoing Royalties. (D.I. 797). The motion is fully briefed. (D.I. 798, 807, 826).

After a five-day liability trial (D.I. 817–821),[1] the jury found that Defendants literally infringed all asserted claims: claims 3, 16, and 17 of U.S. Patent No. 6,679,302 ("the '302 patent"); claims 18, 22, 31, and 32 of U.S. Patent No. 7,032,629 ("the '629 patent"); and claim 3 of U.S. Patent No. 9,207,686 ("the '686 patent").[2] (D.I. 743). The jury further found that Defendants willfully infringed all three patents and that Defendants failed to prove invalidity. (*Id.*).

---

[1] I cite to the trial transcript as "Trial Tr." The trial transcript is consecutively numbered.
[2] Defendant Powder Springs was only accused of—and only found liable for—infringing claim 3 of the '686 patent. (*See* D.I. 743).

1

After a separate damages trial (D.I. 822), the jury awarded Sunoco $12,200,958.44 in damages: $9,364,242.32 against Magellan and $2,836,716.12 against Magellan and Powder Springs for the Powder Springs System. (D.I. 752). Sunoco now requests enhanced damages, supplemental damages, pre-judgment and post-judgment interest, and ongoing royalties. (D.I. 797).

## I.     ENHANCED DAMAGES

"[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," which is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). Enhanced damages are "not to be meted out in a typical infringement case." *Id.* at 103. A jury's finding of willful infringement is a prerequisite to the enhancement of damages but is not by itself sufficient. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).

Although not required, the court may consider the non-exclusive *Read* factors as part of its analysis. *Id.* at 1382–83 (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. *Read*, 970 F.2d at 827.

For *Read* factor one, Sunoco argues that there is direct evidence of the opportunity to copy and circumstantial evidence that Magellan did copy. (D.I. 798 at 12–13). I disagree. The fact that Mr. Roles requested more information about Texon's systems does not show that Magellan copied these systems. Rather, Magellan presented evidence showing that it already had internal automated blending systems since 2001. (*See* Trial Tr. at 827:12–23 (Moyer)). Mr. Roles testified that he requested this additional information because he was determining whether to use Texon's or Magellan's systems at its Southeastern terminals. (Trial Tr. at 730:1–741:10 (Roles)). Thus, I find that factor one weighs against enhanced damages.

For *Read* factor two, Sunoco argues that Defendants had no good-faith belief of non-infringement or invalidity. (D.I. 798 at 9–10). Defendants respond that they did have a good-faith belief that their systems did not infringe because their systems (1) blended inline to a tank (not a rack), and (2) used feedback (not feedforward) control. (D.I. 807 at 7). In ruling on Defendants' motion for JMOL of no willful infringement, I found that there was substantial evidence supporting the jury's presumed finding that Defendants had no reasonable basis of non-infringement. (*See* D.I. 852 at 12–13). Thus, I find that factor two weighs in favor of enhanced damages.

For *Read* factor three, Sunoco argues that Defendants took litigation positions that were contrary to their pre-litigation positions. (D.I. 798 at 13–14). I disagree. I believe Defendants acted reasonably and in good faith in pursuing their defenses. Thus, I find that factor three weighs against enhanced damages.

For *Read* factor four, Sunoco asserts that Powder Springs profited over $74 million and Magellan profited over $500 million from their infringement. (*Id.* at 10–11). The jury's damages award of $12 million amounts to only 2% of these profits, so Sunoco argues that

enhancement is proper to allow for the proper deterrence effect. (*Id.*). I do not think it is particularly relevant that the jury's damages award amounts to only 2% of Defendants' profits. But given Defendants' financial success, I do not think enhancement would jeopardize Defendants' financial well-being. *See Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 4346502, at *4 (D. Del. Sept. 12, 2019), *related appeal*, 981 F.3d 1030 (Fed. Cir. 2020). Thus, I find that factor four weighs in favor of enhanced damages.

For *Read* factor five, Sunoco argues that this case was not close because the jury returned a verdict finding all claims valid and willfully infringed within four hours.[3] (D.I. 798 at 11). I believe, however, that this case was relatively close. Defendants presented considerable evidence in support of their assertions of non-infringement and invalidity. *See Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, 2019 WL 3240521, at *9 (D. Del. July 18, 2019) ("Just because the jury found for Siemens on infringement, invalidity, damages, and willfulness with respect to the EOT patents does not mean that the evidence could not have supported a verdict for Westinghouse on each of these questions."). Thus, I find that factor five weighs against enhanced damages.

For *Read* factor six, Sunoco argues that Defendants continued to infringe after the patent examiner initially rejected their patent application in 2014, after this case was filed in 2017, and after the jury verdict in 2021. (D.I. 798 at 10). Because the infringement period was long and included post-litigation infringement, this factor weighs in favor of enhancement.

---

[3] I do not think the length of the jury's deliberations is a meaningful metric. *Vectura*, 2019 WL 4346502, at *4 n.3. Nonetheless, I think four hours of deliberations in a patent infringement case is probably pretty close to the median. Closing arguments and the verdict usually occur on the same day.

4

For *Read* factor seven, Sunoco argues that Defendants never took any remedial measures by switching to non-infringing systems. (*Id.*). But, as Mr. Huff testified, one of the reasons Magellan switched its systems from feedforward to feedback prior to this suit was to avoid infringement. (Trial Tr. at 492:9–495:5 (Huff)). Given this and the closeness of the case, I find this factor to be neutral.

For *Read* factor eight, Sunoco points to the fact that Sunoco and Magellan directly competed for the Colonial bid. (D.I. 798 at 11–12). Sunoco argues that Magellan only beat out Sunoco for this bid because it offered its infringing design. (*Id.*). The evidence, however, shows that Colonial went with Magellan because it had more experience blending on large pipelines. (Trial Tr. at 956:17–959:3 (McLean)). "[O]rdinary competition driven by a profit motive does not constitute the motivation to harm with which this *Read* factor is concerned." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 503 F. Supp. 3d 156, 180 (D. Del. 2020), *aff'd in part, vacated in part, rev'd in part on other grounds*, 30 F.4th 1109 (Fed. Cir. 2022). Thus, I find that factor eight weighs against enhanced damages.

For *Read* factor nine, Sunoco argues that Magellan never told Texon/Sunoco that it was using its own automated systems, despite the multiple discussions between the parties regarding Texon's patented systems. (D.I. 798 at 12). However, there is evidence that inventor Larry Mattingly knew Magellan had automated blending systems at the time he pitched the Texon systems to Magellan. (Trial Tr. at 409:16–410:21 (Mattingly)). In fact, Mattingly sent his own contractor to Magellan's terminal to examine Magellan's use of the Grabner online analyzer. (Trial Tr. at 397:25–403:14 (Mattingly)). This evidence refutes Sunoco's allegation of concealment.

Sunoco also argues that Magellan's request that its patent application not be published shows an attempt to conceal. (D.I. 798 at 12). I do not think this is persuasive evidence that Magellan was attempting to conceal its blending activities. Thus, I find that factor nine weighs against enhanced damages.

On balance, the *Read* factors weigh against enhanced damages. Sunoco's arguments do not persuade me that the facts of this case are egregious. Therefore, despite the jury's finding of willful infringement, I do not think enhanced damages are warranted.

## II.   SUPPLEMENTAL DAMAGES

Sunoco asks this Court to award supplemental damages for Defendants' pre-verdict infringement from February 2019 through October 2021. (*Id.* at 15–17). "When the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 284. "The amount of supplemental damages following a jury verdict is a matter committed to the sound discretion of the district court." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1384 (Fed. Cir. 2013) (cleaned up). "Typically, supplemental damages are calculated based on the jury's damages verdict." *E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, 2017 WL 4004419, at *7 (D. Del. Sept. 12, 2017) (citation omitted), *aff'd*, 921 F.3d 1060 (Fed. Cir. 2019).

The jury's verdict only compensated Sunoco for Defendants' infringement through January 2019. During closing argument, Sunoco's counsel presented the jury with a total damages number of $12,200,958.44, which was calculated based on a royalty rate of $0.02/gallon multiplied by the infringing volumes in PTX 150 and PTX 152. (Trial Tr. at 1486:9–22, 1488:20–1489:11). Sunoco's counsel explained that the volumes in PTX 150 and PTX 152 "end in January 2019." (*Id.*). The jury awarded Sunoco's exact damages number.

(D.I. 752). Thus, I have no doubt that the jury only considered Defendants' infringement through January 2019 when assessing damages.

Yet, Defendants argue that Sunoco is not entitled to pre-verdict supplemental damages because Sunoco had Defendants' blending volumes through October 2021 before trial and failed to present these volumes to the jury. (D.I. 807 at 16–17). Sunoco argues, however, that it was unable to present these infringing volumes to the jury. (D.I. 798 at 16). Sunoco deposed Defendants' corporate witness Ms. Wheeler in May 2019, and she authenticated PTX 150 and PTX 152. (D.I. 302; Trial Tr. at 1364:8–1367:10 (Wheeler)). Sunoco received Defendants' updated blend volumes in April 2020, May 2021, and November 2021, after fact and expert discovery closed. (*See* D.I. 800, Exs. 1–7). The parties agree that there was no witness at trial or within subpoena range that Sunoco could have introduced these new volumes through. (*See* D.I. 807 at 17; D.I. 826 at 8). Defendants, however, fault Sunoco for not making any "attempts to remedy its authentication problem," such as by "ask[ing] Defendants to stipulate to the authenticity or admissibility of the updated data." (D.I. 807 at 17). But I am not sure these efforts would have been successful. (*See, e.g.*, D.I. 749 at 1–2 (Defendants objecting to the admission of PTX 150 and PTX 152)). I therefore agree with Sunoco that it had no practical means of presenting these new volumes to the jury.

Because the jury only compensated Sunoco for infringement through January 2019, I believe supplemental damages are necessary to properly compensate Sunoco for Defendants' infringement. The parties, however, dispute how these supplemental damages should be calculated. Sunoco contends that the supplemental damages should be calculated by multiplying the additional volumes by the $0.02/gallon royalty rate applied by the jury, removing 38% to account for the non-infringing volumes, as the jury did. (D.I. 798 at 17; D.I. 799, ¶¶ 3–

7). The 38% figure was the average percentage of non-infringing (outbound) volumes to total volumes from 2012–2019. (*See* Trial Tr. at 1437:23–1439:13 (Maness)). Defendants argue that the proper base for supplemental damages should instead be the actual percentage of infringing volumes from the relevant time period. (D.I. 807 at 18). I agree. Using the actual percentage of infringing volumes, rather than an average percentage of infringing volumes from an earlier time period, will properly compensate Sunoco for Defendants' actual infringement.

Thus, I will award Sunoco supplemental damages for the period from February 2019 through October 2021, based on the actual infringing volumes for that period and a $0.02/gallon royalty rate—i.e., a total of $6,479,508. (D.I. 808, ¶¶2–8; D.I. 808-1, Exs. 1–2).

Sunoco also asks for an accounting and supplemental damages for Defendants' pre-verdict and post-verdict infringement beyond October 2021, because Defendants have not produced these updated volumes. (D.I. 798 at 17). Sunoco contends that the proper accounting period is from November 1, 2021 to the date of entry of final judgment for Magellan, and from November 1, 2021 to December 16, 2021 for Powder Springs. (*Id.*).[4] Sunoco's proposed accounting period for Magellan, however, fails to account for the fact that the asserted patents have since expired. The '302 and '629 patents expired on February 8, 2022. (D.I. 773 at 3–4). The '686 patent expired on April 5, 2022. (D.I. 764 at 3 n.3). Thus, the proper accounting period for Magellan is from November 1, 2021 through the expiration date of the '686 patent, April 5, 2022.

Sunoco is entitled to compensation for Magellan's infringement between November 1, 2021 and April 5, 2022, and for Powder Springs' infringement between November 1, 2021 and

---

[4] Defendants do not appear to dispute this request. (*See* D.I. 807 at 13–18).

December 16, 2021.[5]  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts."); *Metso Mins., Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 347 (E.D.N.Y. 2011) ("Courts routinely grant motions for a further accounting where the jury did not consider certain periods of infringing activity *post*-verdict."). Thus, I grant Sunoco's request for an accounting and supplemental damages for this time period using the same method applied above.[6]

## III.   PRE-JUDGMENT INTEREST

Pre-judgment interest should be awarded "absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Plaintiff seeks pre-judgment interest at the prime rate, compounded quarterly. (D.I. 798 at 17–18; D.I. 799, ¶¶ 8–12). This Court has noted that the prime rate, compounded quarterly, best compensates a patentee. *Vectura*, 2019 WL 4346502, at *2.

Defendants argue that Sunoco should not be awarded pre-judgment interest for the eleven-month delay it caused by requesting a continuance of the trial. (D.I. 807 at 18–20). The Supreme Court has explained, "[I]t may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Gen. Motors Corp.*, 461 U.S. at 657. On July 2, 2020, the Court announced that, in light of the COVID-19 pandemic, all witnesses would testify remotely at the

---

[5] This is the date Defendants switched to a manual blending system at Powder Springs to avoid further infringement.   (D.I. 782 at 1; D.I. 782-2, Ex. 2 (Hitz Decl.)).
[6] Sunoco also requests ongoing royalties for Magellan's infringing systems.   (D.I. 798 at 19–20).   Because the asserted patents have expired, this request is now moot.   Given my award of post-verdict supplemental damages, Sunoco will be properly compensated for all infringement.

jury trial scheduled to begin on August 3, 2020. (D.I. 583). On July 10, 2020, Sunoco unilaterally requested a continuance until the trial could be held in person, raising "strong concerns regarding the ability to conduct a fair jury trial." (D.I. 590). The Court granted the continuance. (D.I. 593).

I think Sunoco's request for a continuance was perfectly reasonable given the COVID-19 pandemic and the inability to conduct an in-person jury trial. In fact, Defendants also expressed that they "do not believe they can receive a fair trial if all the witness examinations must be handled remotely." (D.I. 580 at 5). I therefore do not think Sunoco's requested continuance is a proper basis for denying pre-judgment interest.

Thus, I will award pre-judgment interest at the prime rate, compounded quarterly. (*See* D.I. 799, ¶¶ 8–12).[7]

## IV.   POST-JUDGMENT INTEREST

Post-judgment interest is governed by 28 U.S.C. § 1961. Section 1961(a) provides, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The interest is computed daily and compounded annually. 28 U.S.C. § 1961(b).

Thus, I will award Sunoco post-judgment interest at the Treasury bill rate as defined in § 1961(a), compounded annually. (*See* D.I. 799, Exs. 1–2).

---

[7] This amount shall include any pre-judgment interest for supplemental damages. *See Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1274 (Fed. Cir. 2020), *vacated on other grounds*, 141 S. Ct. 2298 (2021).

## V.   CONCLUSION

An appropriate order will issue.